UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION, *et al*,<br><br>*Defendants*. | Case No. 26-cv-00532-JEB |

**DECLARATION OF DR. ASA RADIX IN SUPPORT OF WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH'S MOTION FOR PRELIMINARY INJUNCTION**

I, Asa Radix, declare as follows:

1. I am the President of the World Professional Association for Transgender Health ("WPATH"). If called upon to testify as to the facts set forth herein, I could and would testify competently thereto.

2. I have been the President of WPATH since October, 2024. As President, my responsibilities include, among other things, providing strategic leadership for the organization; working closely with the Executive Director, Executive Committee and Board of Directors to advance WPATH's mission and strategic priorities; representing WPATH in international clinical, academic, and policy forums; strengthening global partnerships and regional affiliates; and advocating for equitable access to high-quality, gender-affirming care worldwide.

3. I have been a member of WPATH since 2013 and served on the WPATH Board of Directors since 2019. During my tenure on the Board, I have held the positions of President, President-Elect, and Secretary.

4. I am an infectious disease/HIV specialist at the Callen-Lorde Community Health Center in NYC and Associate Professor of Clinical Epidemiology in the Department of Epidemiology at Columbia University. I also serve as the Director of the Online MS in Epidemiology program at the Mailman School of Public Health.

5. I became aware of the United States Federal Trade Commission's investigation into transgender healthcare in summer 2025.

6. I learned of the Civil Investigative Demand on January 17, 2026.

### WPATH's Standards of Care, Version 8

7. Before my tenure as President, I served as co-chair of the WPATH Standards of Care, Version 8 ("SOC8") Working Group.

8. WPATH's Standards of Care articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender people, and are periodically updated to ensure that the standards reflect current research and professional consensus. SOC8 is the most updated version of its Standards of Care.

9. SOC8 is intended to be clinical guidance for informed, doctor-patient decision making on transgender healthcare, which may include varying interventions based on individual patient needs. It consists of recommendation statements that we developed through the Delphi method, a well-established methodology for building expert consensus. These statements reflect what myself, WPATH, and its members believed was the best available scientific evidence and the collective professional judgment of experts in transgender health.

10. In-depth information about the methodology and process that we used in developing, editing, and revising SOC8, are available on WPATH's website.

11. When SOC8 was open for public comment, WPATH received feedback from 2688 professionals from many different professional backgrounds and with many different levels of expertise and varying perspectives.

12. The office of Admiral Rachel Levine, the Biden Administration's Assistant Secretary for Health submitted comments regarding the Admiral's feedback that specific ages should be taken out of SOC8's recommendations. Although WPATH received similar feedback from many other professionals and organizations, the SOC8 Committee's decision to replace age minimums for certain recommendation statements with strengthened criteria to ensure individualized assessment and medical care has been repeatedly mischaracterized, taken out of context, and editorialized by the individuals and organizations hostile to WPATH's mission, for example characterizing WPATH as "politically motivated" or unscientific.

13. The decision to remove age minimums was not based on one single contributor's feedback, but rather were the result of careful deliberations. I believe that the removal of the age minimums in SOC8 promotes individualized medical care between doctors and patients and reduces the likelihood of misapplication of these standards.

14. In *Boe v. Marshall*, No. 2:22-cv-00184 (M.D. Ala.), the district court permitted extensive, invasive third-party discovery into WPATH and SOC8, which led to the release and publication of certain internal communications, including those with Admiral Levine. The records released in *Boe* are frequently mischaracterized and viewed out of context to erroneously claim that SOC8 was drafted based on political considerations.

## **Threats, Harassment, and Impact of the FTC's Investigation on WPATH**

15.     Access to medically necessary health care—and even basic respect—for transgender people remains controversial in some circles. This is not new; World Professional Association for Transgender Health has faced opposition since its founding. However, in recent years, the intensity and visibility of that opposition have escalated.

16.     Despite threats, vitriol, and targeted attacks against the organization and its members, WPATH has remained steadfast in advancing its mission to promote evidence-based, ethical, and compassionate care for transgender and gender diverse people..

17.     WPATH has previously experienced the harmful effects of disclosures of sensitive, confidential, and internal information on our members' speech and participation. Before April 2025, we provided an online platform for WPATH members to discuss, debate, and brainstorm on topics such as evidence-informed healthcare, education, research, public policy, and respect for transgender individuals.

18.     Confidentiality of this forum was very important to members and for openness and free flowing discussion and debates, so members could speak without fearing that their conversations would be used against them or their patients.

19.     This forum was breached on two occasions. Internal WPATH communications were published, misrepresented, taken out of context, and used in an intentional campaign to distort WPATH's work.  Organizations opposed to WPATH's mission have since further decontextualized these communications and used them to manufacture support for their opposition to transgender healthcare.  From then on, WPATH members became understandably reluctant to engage openly on WPATH-provided platforms, undermining the very exchange of expertise that has made the organization so effective.

20. Since the start of President Trump's second term, WPATH and its members have been targeted and harassed by multiple state and federal investigations. This type of politically motivated scrutiny only hurts the scientific process and patient health and safety.

21. This CID has been a major focal point for discussions amongst WPATH leadership. It is consistently in the back of my mind when we are making decisions about WPATH's statements and next steps.

22. I fear that the FTC's scrutiny will deter members and other medical associations from collaborating with us.

23. This CID has also been a significant time sink. I have spent countless hours discussing and debating issues related to the CID, and meeting with WPATH's attorneys, that would be better used furthering WPATH's mission.

24. WPATH leadership decided to pause certain educational and certification programs, due to our fear that these activities would be targeted by the FTC or lead to greater risks for our members.

25. I am also afraid that the FTC's investigation will empower individuals and organizations that oppose us to target my colleagues and WPATH members with increased harassment and threats.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in on February 25, 2026.

_____

**DR. ASA RADIX**