UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION, *et al*,<br><br>*Defendants*. | Case No. 26-cv-00532-JEB |

**DECLARATION OF DR. LOREN SCHECHTER IN SUPPORT OF WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH'S MOTION FOR PRELIMINARY INJUNCTION**

I, Loren Schechter, declare as follows:

1. I am a member of the Board of Directors of the World Professional Association for Transgender Health ("WPATH") and the current President-Elect. If called upon to testify as to the facts set forth herein, I could and would testify competently thereto.

2. I am a board-certified plastic surgeon and have been performing gender affirming surgery since 2000 when I first began working as an attending surgeon in metropolitan Chicago.

3. I received my medical degree from the University of Chicago, Pritzker School of Medicine. I completed my residency and chief residency in plastic and reconstructive surgery and a fellowship in reconstructive microsurgery at the University of Chicago Hospitals.

4. I previously served as a Clinical Professor of Surgery at the University of Illinois at Chicago. In April 2022, I resigned from that position to become the Director of Gender Affirmation Surgery at Rush University Medical Center. I am also a Professor of Surgery and

Urology at Rush University Medical Center. I maintain a clinical practice in plastic surgery in Illinois where I treat patients from around the world.

5. I am currently on the Executive Committee and the Board of Directors for WPATH and have served on the Board since 2016. I am currently the President-Elect, and will begin my tenure as President in late 2026.

6. I also served as co-lead for the Standard of Care 8th edition ("SOC8") Surgery and Post-Operative Care chapter, which was published in September 2022.

7. I have been performing gender-affirming surgery for over 26 years as an attending physician. My primary clinical focus is on chest surgery, breast surgery, and genital surgery. My goal is to help people live a life where their body is congruent with their identity.

8. Care is provided in a multidisciplinary manner, and I work collaboratively with colleagues and professionals in mental health, primary care, endocrinology, and other medical and surgical specialties. In caring for patients, a treatment plan that is appropriate for a given person includes meeting and speaking with the person, learning from them, and learning about their goals and expectations. Not all individuals are candidates for surgery, and the decision to proceed with surgery is not a foregone conclusion. The Standards of Care acknowledge this.

9. WPATH and SOC8 recognize the reality, complexity, and nuance of clinical care. The SOC8 guidelines identify processes by which individuals can engage in a patient-centered, shared decision-making approach that respects patient autonomy as well as the principles of beneficence, non-maleficence, and justice.

10. Surgery on adolescents is a small part of the field. In multiple discussions with experts in child and adolescent development, including pediatrics, psychology, and psychiatry,

there is no one reason to universally explain how a young person comes to understand their gender care needs.

11. The ability and necessity of physicians to communicate freely, openly, and confidentially with their patients is a foundational principle of the patient-physician relationship.

12. So too is the need for physicians to engage in dialogue and educational opportunities with their colleagues.

13. Removing the ability of physicians to communicate and exchange ideas in a private manner during professional medical meetings would inhibit communication and exchange of information. This would hamper physicians from providing care to their patients as well as advancing medical knowledge.

14. I have personally experienced threats to my own health and safety, including harassment, and personal and antisemitic attacks. I have also seen the threats and attacks directed at WPATH.

15. As a result of these threats, I have withdrawn from speaking engagements and educational opportunities, increased security protocols and personnel at my office and medical center, and sought private security services for myself and my family to monitor threats and provide physical security if necessary.

16. I learned about the FTC's Civil Investigative Demand ("CID") on January 17, 2026.

17. Since I learned about the CID, I have feared that my statements to my colleagues will be misrepresented and distorted like they have in the past if WPATH is forced to disclose internal discussions and information to the FTC.

18. The CID and the FTC's broader investigation is a frequent topic of conversation among my WPATH colleagues, and before making decisions or statements, we have considered the fact that what we say or do could be disclosed to the FTC as a result of this CID.

19. In Executive Committee meetings, the FTC's investigation and the CID have been considered in our planning for future events, statements, and activities.

20. I have spent countless hours carefully choosing my words and consulting with attorneys, because I fear that the FTC's plan is to go after WPATH leadership and members next.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 24, 2026.

*Loren Schechter*
_____

**DR. LOREN SCHECHTER**