# Exhibit 11

**The New York Times**

https://www.nytimes.com/2026/02/24/opinion/fcc-ftc-free-speech-trump.html

## THE EDITORIAL BOARD

# Legally Creative, Democratically Dangerous: Trump's Plan to Twist the News

Feb. 24, 2026

 **Listen to this article · 7:42 min**   Learn more

**By The Editorial Board**
The editorial board is a group of opinion journalists whose views are informed by expertise, research, debate and certain longstanding values. It is separate from the newsroom.

The Federal Trade Commission and the Federal Communications Commission were designed to be independent stewards of the public interest — guardians against monopolies, fraud and the misuse of public airwaves. Congress created the agencies in the first half of the 20th century, and they are led by commissioners serving fixed terms to insulate them from the political whims of the White House.

The Trump administration has ruined that independence. President Trump's appointees have weaponized the agencies and transformed them into instruments of ideological enforcement. The changes not only threaten their core responsibility to ensure a fair business playing field but also directly undermine the First Amendment.

The latest evidence is a quiet but radical distortion of consumer protection law by the F.T.C. The agency recently sent a warning letter to Apple, alleging potential bias in how Apple News curates articles. The letter cited a study by Media

Case 1:26-cv-00532-JEB   Document 3-18   Filed 02/25/26   Page 3 of 6

Research Center, a conservative group, suggesting that Apple was treating conservative sources unfairly.

Separately, the commission is investigating Media Matters, a liberal group, for its work arguing that the social platform X has allowed hate speech to spread. Together, the two cases betray the agency's politicization. A conservative media watchdog criticized Apple, and the F.T.C. used that work to justify a warning letter to the company. A liberal media watchdog criticized X, and the F.T.C. responded by investigating the watchdog.

**The premise of** the Apple warning is legally creative and democratically dangerous. The F.T.C.'s chairman, Andrew Ferguson, appears to be testing a novel theory: that editorial judgment can be regulated as a deceptive trade practice. In this view, a news organization's slogan — such as "fair and balanced" or "without fear or favor" — is no longer a statement of mission but a marketing claim subject to federal prosecution if the government decides the outlet has failed to live up to it. (Tellingly, the agency is not investigating Newsmax, a Trump-friendly outlet, for its claim to publish "diverse viewpoints.")

> **Sign up for the Opinion Today newsletter**  Get expert analysis of the news and a guide to the big ideas shaping the world every weekday morning. Get it sent to your inbox.

This approach obliterates the traditional line between consumer fraud and protected speech. Historically, the First Amendment has limited the reach of consumer law to commercial speech or clear-cut fraud. By treating political bias as a defect in a commercial product, the F.T.C. is claiming the authority to police journalism itself. Even if these investigations eventually fail in court — and a federal judge has so far blocked the inquiry into Media Matters — they do damage.

The investigation becomes the punishment, forcing media companies to spend millions on legal defenses and deterring them from publishing material that the Trump administration does not like.

**The situation is** even more volatile at the F.C.C., which is supposed to ensure open, efficient communication but has abandoned the pretense of neutrality. Its chairman, Brendan Carr, recently told the Senate Commerce Committee that "formally speaking, the F.C.C. isn't independent." The agency has since removed the word "independent" from its mission page, signaling that it now views itself as an extension of presidential power.

Mr. Carr has acted on this vision. In September, he suggested the agency would consider revoking the broadcast licenses of ABC stations after the late-night host Jimmy Kimmel made a comment in poor taste about the killing of Charlie Kirk. The threat was not empty rhetoric; two station owners, Sinclair and Nexstar, briefly suspended the show, and ABC temporarily pulled it from the air.

Mr. Carr is also manipulating technical regulations to silence opposition. He has signaled plans to tighten the "equal time" rule, which requires broadcasters to provide similar treatment to all candidates in an election. The F.C.C. has long granted an exemption for interviews on news programs, allowing broadcasters to make editorial judgments. But in a memo issued last month, the F.C.C. warned that broadcasters might violate the rule if they aired interviews "motivated by partisan purposes."

In practice, this would allow the F.C.C. to determine which candidates get airtime, and it is already having a chilling effect. Stephen Colbert said last week that CBS had refused to allow him to run an interview with James Talarico, a Democratic candidate seeking to represent Texas in the U.S. Senate, and that the network cited the equal-time rule as the reason.

This approach threatens to turn back the clock to the mid-20th century, when the government imposed a wide range of rules on broadcasters. Both Democratic and Republican administrations weaponized these rules to suppress critical coverage of their agendas. Under President Ronald Reagan, the F.C.C. ended most of those requirements because it recognized that it was inhibiting the public discourse it had intended to encourage. It concluded that rules regulating content were inhibiting free speech. The Reagan administration was right.

In another intrusive step, Mr. Trump's F.C.C. is leveraging its merger review power to dictate newsroom operations. As Skydance and Paramount were seeking approval for their merger last year, the agency coerced a concession at CBS, which is part of the joint company. Skydance agreed to install a news ombudsman at the network to monitor for bias, and CBS hired the former president of a conservative think tank for the job. This is breathtaking. The federal government is effectively mandating that a private news organization install a political commissar to ensure its reporting meets state-approved standards of neutrality.

The F.C.C. also is moving to clear the way for Nexstar, a large owner of local television stations, to acquire Tegna, a competitor. This month, Mr. Trump urged the F.C.C. to approve the deal. "We need more competition against THE ENEMY, the Fake News National TV Networks," he wrote on social media. "GET THAT DEAL DONE!" He did not mention that the merger blatantly violates the F.C.C.'s rules. A broadcaster is not allowed to own stations that together reach more than 39 percent of U.S. households; the new company would reach more than 80 percent.

To get around this problem, the F.C.C. has begun the process of changing the rules. Mr. Carr has described the ownership limits as "arcane" and "artificial." In fact, they are vital protections against monopoly power.

**The actions of** the two agencies are a pincer movement. The F.T.C. is twisting consumer protection statutes to penalize speech it dislikes, while the F.C.C. is weaponizing the "public interest" standard to bully broadcasters into submission.

This regulatory assault is occurring while the Supreme Court appears poised to allow Mr. Trump go further. In December, the justices heard arguments in a case about whether F.T.C. commissioners and other semi-independent appointees are safe from being fired at the president's whim. If the court rules that the president may remove them at will — as the administration's solicitor general urged — the Oval Office will have more leeway to pressure the media.

The American public should recognize these maneuvers for what they are. When regulators treat editorial decisions as fraud and condition business mergers on the content of news broadcasts, they are not protecting consumers. They are engaged in a hostile takeover of the marketplace of ideas.

*The Times is committed to publishing a diversity of letters to the editor. We'd like to hear what you think about this or any of our articles. Here are some tips. And here's our email: letters@nytimes.com.*

*Follow the New York Times Opinion section on Facebook, Instagram, TikTok, Bluesky, WhatsApp and Threads.*

The editorial board is a group of opinion journalists whose views are informed by expertise, research, debate and certain longstanding values. It is separate from the newsroom.