**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, <br><br> *Plaintiff*, <br><br> *v.* <br><br> FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON, in his official capacity as Chairman of the Federal Trade Commission; MARK R. MEADOR, in his official capacity as Commissioner of the Federal Trade Commission; and JOHN DOES 1–3, in their official capacities as Commissioners of the Federal Trade Commission, <br><br> *Defendants*. | Civil Action No. 1:26-cv-00532-JEB <br><br> **Hearing Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY REGARDING POTENTIAL VIOLATIONS OF THE PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.      This Court's Preliminary Injunction .......................................................................... 2

    II.    DOJ Issues Grand Jury Subpoenas from the Northern District of Texas ............... 3

    III.   The FTC Files Suit in the Northern District of Texas ........................................... 3

ARGUMENT......................................................................................................................... 5

    I.      The Court Should Grant Discovery Regarding Potential Violation of Its
         Injunction ................................................................................................................. 5

CONCLUSION ................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**

*Blockowicz v. Williams*,
   630 F.3d 563 (7th Cir. 2010)............................................................................................... 7

*Cal. Dep't of Social Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008)............................................................................................. 5

*\*Damus v. Nielsen*,
   328 F.R.D. 1 (D.D.C. 2018) ......................................................................................... 1, 5, 9

*N.Y. Times Co. v. Dep't of Def.*,
   No. 25-cv-04218, 2026 WL 962252 (D.D.C. Apr. 9, 2026) ....................................... 6

*Palmer v. Rice*,
   231 F.R.D. 21 (D.D.C. 2005)............................................................................................... 5

*United States v. Robinson*,
   83 F.4th 868, 885 (11th Cir. 2023)..................................................................................... 6

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
   776 F.3d 1, 9 (D.C. Cir. 2015) ............................................................................................ 7

**Rules**

Fed. R. Civ. P. 65............................................................................................................... 5, 7

**INTRODUCTION**

On May 7, 2026, the Court entered a preliminary injunction prohibiting the Federal Trade Commission ("FTC") "from implementing or enforcing" the sweeping Civil Investigative Demand ("CID") it served on the World Professional Association for Transgender Health ("WPATH") in January 2026. Subsequent events raise "significant questions" about whether the FTC has attempted to circumvent the Court's preliminary injunction by partnering with the U.S. Department of Justice ("DOJ") to obtain the same information by other means. *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018). The Court should thus permit WPATH to take limited discovery to determine whether the FTC has violated the preliminary injunction.

Over the past two months, DOJ has served at least three grand jury subpoenas from the Northern District of Texas that seek information concerning WPATH that falls within the scope of the FTC's enjoined CID. Had the FTC sought that information directly, it would have violated the preliminary injunction. Publicly available information raises significant questions about whether DOJ's activities are attributable to the FTC under Federal Rule of Civil Procedure 65(d)(2). DOJ attorneys represent the FTC in this case. In July 2025, DOJ described itself as cooperating closely with the FTC on investigations of transgender health. The FTC cannot use its partnership with DOJ to accomplish indirectly what the preliminary injunction bars it from doing directly.

In analogous circumstances, the Court has not hesitated to order discovery concerning compliance with its preliminary injunctions. *See Damus*, 328 F.R.D. at 3 (ordering discovery in response to "significant questions of noncompliance"). Here, the available evidence raises significant questions about whether a violation has occurred. WPATH cannot determine whether it has without limited discovery of information in the government's sole possession. The preliminary injunction seeks to protect WPATH's First Amendment rights. The Court should not

1

permit the FTC to hide any violations of WPATH's rights by using a proxy.  It should authorize WPATH to take discovery to confirm that the FTC has complied with the preliminary injunction.

**BACKGROUND**

This motion arises from the same facts as WPATH's companion motion for a temporary restraining order and antisuit injunction.  ECF 45.  The background section of that motion is hereby incorporated by reference.  *Id.* at 2-11.

## I.    This Court's Preliminary Injunction

On January 16, 2026, the FTC served a CID on WPATH.  The CID contained fifteen interrogatories and thirteen document requests, broadly calling for WPATH to produce records relating to all aspects of its work and operations.  *See* ECF 3-8.  It also sought production of six types of "Covered Statement[s]" that WPATH has made about "Pediatric Gender Dysphoria Treatment."  *Id.* at 7.  On February 25, 2026, WPATH moved for a preliminary injunction barring the FTC from implementing or enforcing the CID and from taking any further actions to interfere with or retaliate against WPATH's exercise of First Amendment rights.  ECF 3.

On May 7, 2026, the Court granted WPATH's motion "in large part and preliminarily enjoin[ed] the FTC from implementing or enforcing its issued CID."  ECF 41 at 11.  It found WPATH likely to succeed on its First Amendment retaliation claim.  It found that the FTC did not contest that WPATH had engaged in protected speech, that the CID had a "chilling effect" on that protected speech, and that the FTC's "articulated hostility towards proponents of gender-affirming care" established a causal link between WPATH's protected speech and the CID.  *Id.* at 6-7.  The Court went on to explain that the FTC's "attempted demonstration of a legitimate purpose" for the CID fell "flat."  *Id.* at 8.  The FTC "failed to offer a logical justification connecting WPATH to commercial representations and the supposed violators" of laws the FTC has authority to enforce.  *Id.*  The Court then concluded that the "extensive evidence of animus" outweighed the FTC's

2

"wafer-thin justifications lacking evidentiary support" and established WPATH's entitlement to a preliminary injunction.  *Id.* at 9-10.

## II.    DOJ Issues Grand Jury Subpoenas from the Northern District of Texas

On May 6, 2026, one day before this Court entered its injunction, DOJ caused an unknown number of grand jury subpoenas to be issued from the Northern District of Texas.  *See* Declaration of Caleb Hayes-Deats dated June 30, 2026 ("Hayes-Deats Decl.") ¶¶ 2-3 & Ex. 1.[1]  Those grand jury subpoenas seek all "communications" with WPATH "or any of its members relating to Sex-Rejecting Procedures," SOC8, and "billing guidance."  Ex. 1.  On June 16, over a month after the Court issued its injunction, DOJ caused a grand jury subpoena from the Northern District of Texas to be served on a WPATH member.  Hayes-Deats Decl. ¶ 10; Ex. 6.  That subpoena seeks "all communications with any WPATH member," all "documents and communications related to any WPATH publication," including SOC8, and other documents concerning transgender healthcare from "**January 1, 2020, through the present**."  Ex. 6.  Those requests seek many of the same documents at the FTC's CID but cover a broader time period.  *Compare id. with* ECF 3-8.

## III.    The FTC Files Suit in the Northern District of Texas

With the lawsuit in this Court still pending and the preliminary injunction in place, on June 17, 2026, the FTC (bringing with it Alaska, Iowa, Nebraska, and Texas) sued WPATH in the Northern District of Texas.  *See FTC v. WPATH*, 4:26-cv-748, ECF 1 (N.D. Tex. June 17, 2026); Ex. 7.  The FTC's complaint alleges that WPATH's statements in SOC8 have "deceived many consumers into believing that its treatment guidelines are based on strong evidence derived from scientific methods."  Ex. 7 ¶ 10.  According to the FTC, "[m]edical professionals have also been duped."  *Id.* ¶ 11.  The FTC alleges that it received hundreds of consumer complaints in response

---

[1] Unless otherwise noted, exhibits cited in this motion are attached to the Hayes-Deats Declaration.

to the request for public comment it issued following its 2025 workshop. *Id.* ¶ 22; *but see* ECF 1 ¶ 111.

A comparison of the "core deceptive statements" alleged in the Texas litigation shows they are the same "Covered Statements" about which its CID sought information:

| "Core Deceptive Statement," Ex. 7 ¶ 378 | "Covered Statement," ECF 3-8 |
|---|---|
| Transition "medically necessary to prevent suicide" (¶ 378(1)) | "PGDTs reduce incidence of suicide" D-3(d) |
| Transition "effective at preventing suicide" (¶ 378(2)) | "PGDTs reduce incidence of suicide" D-3(d) |
| "Puberty blockers are fully reversible" (¶ 378(3)) | "PGDTs are fully or partly reversible" D-3(e) |
| "Cross-sex hormones improve mental health" (¶ 378(4)) | "PGDTs improve mental health" D-3(c) |
| Mastectomy "safe, effective" (¶ 378(5)) | "PGDTs are safe," "proven effective" D-3(a)-(b) |
| SOC8 "result of unbiased, evidence-based expert conclusions" (¶ 378(6)) | "PGDTs are supported by evidence-based science" D-3(b) |
| "Pediatric medical transition" is the "standard of care" (¶ 378(7)) | "PGDTs are supported by evidence-based science" D-3(b) |
| SOC8 does not disclose "side effects of puberty blockers" (¶ 378(8)) | "PGDTs have few side effects" D-3(f) |
| SOC8 does not disclose "side effects of cross-sex hormones" (¶ 378(9)) | "PGDTs have few side effects" D-3(f) |
| SOC8 does not disclose "side effects" of mastectomy (¶ 378(10)) | "PGDTs have few side effects" D-3(f) |

The same day the FTC filed suit in the Northern District of Texas, it notified WPATH of its intention to withdraw the CID. ECF 43-1. The FTC stated that, "[d]ue to the filing of [its] complaint. the Commission no longer views compliance with the CID as necessary to its investigation." *Id.* Counsel for WPATH asked the FTC whether it intended to seek the same

information requested by the CID through discovery in the Northern District of Texas. Hayes-Deats Decl. ¶ 18. The FTC declined to offer any assurances that it would not do so. *Id.*

## ARGUMENT

### I.    The Court Should Grant Discovery Regarding Potential Violation of Its Injunction

This Court has "'inherent power to enforce its judgments.'" *Damus*, 328 F.R.D. at 3 (quoting *Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033-34 (9th Cir. 2008)). When a party raises "significant questions regarding noncompliance" with a court order, "it is clear that appropriate discovery should be granted." *Id.* (internal quotation marks omitted). The need for discovery is even more compelling where a plaintiff otherwise "will not be able to determine whether the government has complied with the court's injunctions." *Palmer v. Rice*, 231 F.R.D. 21, 25 (D.D.C. 2005). Such discovery need not await a conference under Federal Rule of Civil Procedure 26(f), because the "discovery sought goes to compliance, as opposed to the merits, the typical subject of the Rule 26(f) conference." *Damus*, 328 F.R.D. at 4.

WPATH has raised "significant questions" regarding the FTC's "noncompliance" with the Court's preliminary injunction. *Id.* at 3. The Court barred the FTC from "implementing or enforcing" the CID against WPATH. ECF 40; ECF 41 at 11. That injunction applies not only to the FTC, but also to its "attorneys" and any "other persons" working in "active concert" with the FTC who had "actual notice" of the injunction's prohibitions. Fed. R. Civ. P. 65(d)(2)(B) & (C). During the FTC's 2025 workshop, DOJ stated that it is working "very, very closely" with the FTC on issues relating to transgender healthcare for minors. ECF 3-28 at 50. One day before the Court entered its injunction, DOJ issued grand jury subpoenas to hospitals from the Northern District of Texas seeking "[a]ll communications" with WPATH or any of its members relating to "Sex-Rejecting Procedures." Hayes-Deats Decl. ¶ 6 & Ex. 1 at 8. On June 16, 2026, over a month after

5

the Court entered its injunction, DOJ issued a grand jury subpoena from the Northern District of Texas to at least one WPATH member, and potentially more, seeking "all communications" with other WPATH members and "all documents and communications" related to SOC8, among other WPATH publications.  *Id.* ¶ 10.

Had the FTC sought the information covered by DOJ's grand jury subpoenas, it would have violated the Court's injunction.  The Court barred the FTC from "implementing" the CID to WPATH.  ECF 40; ECF 41 at 11.  "Implement" generally means to "take steps to put into practice." *Implement*, Merriam-Webster, https://www.merriam-webster.com/dictionary/implement (last visited June 30, 2026).  DOJ's subpoenas will put the FTC's CID "into practice."  The FTC's CID sought all "Communications with other organizations," including hospitals, "regarding the development and publication of SOC 8."  ECF 1-1 at 6.  DOJ's grand jury subpoenas to hospitals seek their "communications" with WPATH regarding "Standards of Care 8."  Hayes-Deats Decl. Ex. 1 at 8.  The FTC's CID sought any documents "referencing the Covered Statements" about transgender healthcare for minors.  ECF 1-1 at 6.  DOJ's grand jury subpoena to a WPATH member seeks "all communications with any WPATH member" and "all documents and communications related to any WPATH publication, including WPATH SOC 8."  Ex. 6.  And it seeks those documents "**through the present**."  *Id.* (emphasis in original).  DOJ's grand jury subpoenas thus seek many of the exact same documents that this Court's injunction barred the FTC from seeking through the CID.  That DOJ uses "new words" does not matter, so long as its subpoenas attempt to "do the same thing" and thereby "circumvent a lawful order of the Court." *N.Y. Times Co. v. Dep't of Def.*, No. 25-cv-04218 (PLF), 2026 WL 962252, at *5 (D.D.C. Apr. 9, 2026).  The Court need not play "whack-a-mole" to address "post-injunction craftiness." *United States v. Robinson*, 83 F.4th 868, 885 (11th Cir. 2023).

6

The CID and the grand jury subpoenas also both chill the speech of WPATH and its members.  This Court held that the CID had a "chilling effect" on WPATH's "protected speech."  ECF 41 at 6.  It created "fear among staff and members" that "specific members will become targets" and that "academic professionals will not openly discuss their ideas given the possibility" that documents would be turned over to the government.  *Id.*  That the CID sought even "future communications" made the "chilling effect readily discernible."  *Id.* at 7.  Grand jury subpoenas, purportedly issuing from a *criminal* investigation, have an even greater chilling effect than *civil* investigative demands.  And the grand jury subpoena to a WPATH member also seeks documents "**through the present**," Ex. 6 (emphasis in original), which picks up where the original CID left off and makes the "chilling effect readily discernible," ECF 41 at 7.

The publicly available evidence raises significant questions regarding whether DOJ is acting as the FTC's "attorneys" and working in "active concert" with the FTC, bringing it within the scope of the Court's injunction under Rule 65(d)(2)(B) & (C).  "Rule 65(d)(2) incorporates the common-law principle that an injunction 'not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control.'"  *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).  Parties are in "active concert" when one "aids or abets" the other in violating an injunction.  *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010).  The administration has made clear it is tasking various agencies to be part of its attacks on those with whom it disagrees, including medical organizations and professionals.  *See Endocrine Soc'y v. FTC*, No. 26-cv-512 (JEB), 2026 WL 1257289, at *1 (D.D.C. May 7, 2026) ("Agencies including the FTC have taken up the President's call to go after proponents of gender-affirming care by rescinding grants and opening investigations.").  There are no longer walls separating agencies and their actions.  DOJ

7

attorneys represent the FTC in this case.  ECF 19; ECF 23.  The agencies are working "very, very closely" with each other on issues relating to transgender healthcare for minors.  ECF 3-28 at 50. DOJ recently "strategized to concentrate legal actions related to gender-affirming medical care" in the "Northern District of Texas," despite the apparent absence of any connection between that district and the legal actions at issue.  Ex. 5 at 10:19-23.  The FTC has also filed a lawsuit in the Northern District of Texas.  *See FTC v. WPATH*, 4:26-cv-748-O, ECF 1 (N.D. Tex. June 17, 2026). Indeed, DOJ issued its grand jury subpoena to a WPATH member from the Northern District of Texas **one day** before the FTC filed its suit in that District.  *Compare* Hayes-Deats Decl. ¶ 10, *with* Ex. 6.  The agencies' coordination, the similarity of their strategies, and their timing all raise questions about whether they have intentionally coordinated to obtain information from WPATH that this Court's injunction barred the FTC from requesting under the CID.

There is a strong inference from where the FTC filed its case and when it did so that the FTC's lawsuit in Texas has no purpose other than to circumvent the Court's preliminary injunction. When entering the injunction, this Court found that the FTC had only "wafer-thin justifications" for seeking information from WPATH.  ECF 41 at 9.  A month later, the FTC filed a lawsuit against WPATH based on the same unfounded claims of deceptive statements to patients it alleged justified its CID, even though WPATH does not treat patients.  ECF 3-2 ¶ 17.  Having lacked a basis to even issue a CID in May, it is highly unlikely that the FTC had a meritorious basis for a lawsuit in June.  The FTC instead appears to have initiated the Texas litigation in the hope of obtaining through discovery the information that this Court's preliminary injunction denied it through the CID.  Why else would the FTC immediately withdrew the CID after filing the lawsuit, characterizing the CID as "no longer . . . necessary to its investigation"?  ECF 43-1.  It further explains why the FTC, when asked, declined to offer any assurance that it would not request the

8

same information through discovery in the Texas litigation that it had sought through the CID. Hayes-Deats Decl. ¶ 18.

Given the significant questions regarding whether the FTC has worked with DOJ to evade the Court's preliminary injunction, the Court should authorize WPATH to take limited discovery necessary to determine whether a violation has occurred. WPATH seeks three forms of discovery. First, the FTC and DOJ should produce documents from January 20, 2025, to June 17, 2026, that reflect any agreement between the two agencies to cooperate on or coordinate about investigations relating to transgender healthcare for minors. Second, the FTC should produce communications with DOJ (other than DOJ attorneys who have appeared in this case) between May 1, 2026, to June 17, 2026, discussing WPATH, particularly regarding whether to investigate WPATH in the Northern District of Texas. Third, the Court should permit WPATH to depose Assistant United States Attorney Ethan Womble, the DOJ attorney who issued the grand jury subpoenas seeking information relating to WPATH, so that WPATH can inquire about the extent to which Mr. Womble coordinated with the FTC. Such "discovery is narrowly tailored to the compliance question, bounded both in temporal scope and substance." *Damus*, 328 F.R.D. at 5. It is wholly appropriate in light of the significant questions about whether a violation has occurred.

9

## CONCLUSION

For the foregoing reasons, the Court should grant WPATH's motion for discovery concerning whether the FTC has complied with the preliminary injunction.


Dated: June 30, 2026                                     Respectfully Submitted,

                                                         /s/ Caleb Hayes-Deats
                                                         Abbe David Lowell [Bar No. 358651]
                                                         Caleb Hayes-Deats [Bar No. 1643213]
                                                         Schuyler J. Standley [admitted pro hac vice]
                                                         LOWELL & ASSOCIATES, PLLC
                                                         1250 H Street, N.W., Suite 250
                                                         Washington, DC 20005
                                                         T: (202) 964-6110
                                                         F: (202) 964-6116
                                                         ALowellpublicoutreach@lowellandassociates.com
                                                         CHayes-Deats@lowellandassociates.com
                                                         SStandley@lowellandassociates.com
                                                         Attorneys for WPATH

10