# Exhibit 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

FEDERAL TRADE COMMISSION, *et al.*,

  Plaintiffs,

    v.

WORLD PROFESSIONAL ASSOCIATION FOR
TRANSGENDER HEALTH, INC., a Texas
corporation, *et al.*,

  Defendants

Case No. 4:26-cv-00748-O

**MEMORANDUM IN SUPPORT OF
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

# Table of Contents

INTRODUCTION ............................................................................................................................... 3

BACKGROUND ................................................................................................................................ 5

ARGUMENT ...................................................................................................................................... 7

    I.    The Movants Are Likely to Succeed on the Merits. ............................................................. 8

    II.   The Movants Will Suffer Irreparable Harm Absent Relief............................................... 20

    III.  The Equities Favor Relief................................................................................................... 22

CONCLUSION................................................................................................................................. 23

**INTRODUCTION**

The Federal Trade Commission—along with Alaska, Iowa, Nebraska, and Texas—has brought this suit against certain organizations for prolifically violating federal and state consumer-protection laws in promoting medical-transition services to minors. One of those organizations—the Texas-incorporated World Professional Association for Transgender Health, Inc. ("WPATH-TX")—has now run to a federal district court in Washington, D.C., asking it to effectively strip this Court of jurisdiction, and pretermit this action. That is lawless: A district judge in Washington, D.C. has no power to commandeer a district judge's courthouse in Texas. Nor is this Court powerless to do anything about it: As this Court has recognized before, it may take action to safeguard its jurisdiction against such brazen gamesmanship. It should do the same here, and do so immediately.

WPATH-TX has asked D.D.C. to issue an injunction barring the FTC and Plaintiff States from "pursuing the Texas litigation." That request is as remarkable as it is indefensible. WPATH-TX's main argument is that this enforcement action overlaps with a prior suit that it filed in D.D.C., where WPATH-TX obtained a limited[1] preliminary injunction barring the FTC from enforcing one specific administrative subpoena (known as a Civil Investigative Demand ("CID")). But that makes no sense, in no small part because the FTC has *withdrawn* that CID, and it was never enforced at all. WPATH-TX's suit involved a challenge to an FTC administrative *investigation*. This suit, by contrast, is a totally separate *enforcement* action by multiple governments—including four States enforcing their own state laws—that has been properly filed before this Court. To the

---

[1] As discussed further below, the District of Columbia court did not enjoin the FTC from continuing its investigation into WPATH-TX or bringing this action. *See World Pro. Ass'n for Transgender Health v. FTC*, No. 1:26-cv-532, 2026 WL 1257321, at *5, *10–*11 (D.D.C. May 7, 2026).

extent WPATH-TX has any legal gripe with this enforcement action, it is free to raise it before this forum. And should it disagree with this Court's resolution of those gripes, the proper course is an appeal to the Fifth Circuit or the Supreme Court. What it cannot do is what it has tried to do here: ask a district judge across the country to superintend this Court's proceedings.

WPATH-TX has made no secret about why it is attempting this gambit—and it is not because it thinks its far-fetched (and in fact, oft-rejected) legal theories have any merit. It is because it does not trust the Northern District of Texas to handle this matter fairly. In its D.D.C. filing, WPATH-TX made the extraordinary claim that this District is an outlier on these issues and mischaracterized it as essentially a rubber-stamp for the government, unbounded by law. This Court should not countenance an effort premised on that offensive and baseless theory. There is no doubt that district judges in the Northern District of Texas will apply the law as fairly and impartially as district judges anywhere else.

Accordingly, this Court should protect its own jurisdiction and enjoin WPATH-TX's attempt to "circumvent the authority of this Court and the Fifth Circuit" through collateral proceedings. *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-0006 (N.D. Tex. May 18, 2026), ECF No. 26 at 6. This Court should grant the Federal Trade Commission, Texas, and Iowa's ("Movants'") Motion as swiftly as practicable.[2] Given this highly irregular and improper course of action by WPATH-TX, this Court should take steps to protect its jurisdiction by enjoining the Defendants in this case from seeking relief regarding this proceeding in any court other than this Court, the Fifth Circuit or the Supreme Court. Such injunctions are appropriate when a party seeks

---

[2] As explained herein, the District Court in the District of Columbia has set a hearing on WPATH-TX's improper motion for this Thursday, July 9. Accordingly, the FTC requests that this Court order WPATH-TX to oppose this motion no later than 3 PM CST on Monday, July 6, and hear argument, if appropriate, on Tuesday, July 7, in Fort Worth. The FTC will waive any reply brief, but asks for leave to address WPATH-TX's arguments during the hearing.

to "circumvent the authority of this Court and the Fifth Circuit" through collateral proceedings. *Id.* (ordering similar relief). This is such a case, and this Court should accordingly grant the Motion.[3]

## BACKGROUND

This case is an enforcement action by the FTC and the States of Alaska, Iowa, Nebraska, and Texas. In their 123-page complaint—along with 16 attached sworn declarations from victims and witnesses—Plaintiffs detail Defendants' serial violations of the FTC Act and of several state consumer protection statutes. In brief, the complaint alleges that WPATH-TX and two of its affiliates (collectively, "WPATH") provide the means for medical practitioners to make false and unsubstantiated claims to sell pediatric transition services to consumers whose children express dissatisfaction with, or distress about, their sex-linked biological characteristics. ECF No. 1 ¶¶ 6–26. WPATH's statements mislead parents and children about the medical consensus and medical necessity, as well as the safety and effectiveness of those services, which include drugs, surgeries, and other medical interventions. *Id.* As detailed in the complaint, venue is appropriate in this District and WPATH-TX is incorporated in Texas. ECF No. 1 ¶¶ 6, 28. The State of Texas is also a Plaintiff, enforcing Texas law against a Texas corporation.

Prior to bringing this case, the FTC investigated potential violations of the FTC Act by WPATH and others. The investigation involved numerous steps, including a public workshop, a public comment period, and the issuance of several civil investigative demands (CIDs)—that is,

---

[3] As this Court has explained, "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Weatherford Indep. Sch. Dist. v. K.L. by & through S.H.*, No. 4:26-CV-00108-O, 2026 WL 710176, at *1 (N.D. Tex. Mar. 13, 2026). Thus, although the FTC is seeking both a TRO and a preliminary injunction, it will refer to the preliminary injunction factors as such throughout.

administrative subpoenas issued pursuant to 15 U.S.C. § 57b-1. One of those CIDs was directed to WPATH-TX.

On February 18, 2026, WPATH-TX filed suit in the U.S. District Court for the District of Columbia, claiming that the FTC's investigation constituted retaliation in violation of its First Amendment rights. See *World Pro. Ass'n for Transgender Health v. FTC*, No. 1:26-cv-0532 (D.D.C. Feb. 18, 2026), ECF No.1 ("CID Action"). The focus of the complaint was the CID. *E.g.*, *id.* ¶¶ 3–4, 113–26, 132, 139, 147, 152.

WPATH-TX then moved for a preliminary injunction, again focusing on the CID. *E.g.*, CID Action, ECF No. 3 at 7–8, 20–23. The district court granted the request only in part. *World Pro. Ass'n for Transgender Health*, 2026 WL 1257321, at \*5. Importantly, although the court enjoined the FTC from "implementing or enforcing its issued CID," it "den[ied] the Motion to the extent it seeks further relief." *Id.* In particular, the court did not otherwise enjoin the Commission from investigating WPATH-TX—despite that organization requesting "a broader injunction." *Id.* Indeed, the court explicitly noted that the FTC "remains free to deploy other investigative tools." *Id*. Accordingly, the district court made pellucid that, notwithstanding WPATH-TX's contrary request, the Commission remained free to continue investigating WPATH-TX—and to pursue relief against WPATH-TX under the FTC Act if appropriate.

And that it did. After the Commission tabled efforts to enforce the CID, the FTC was nevertheless able to gather sufficient information to bring this enforcement action. It did so, along with the State Plaintiffs, on June 17, 2026. Shortly thereafter, the FTC withdrew the WPATH CID, explaining that, in light of the filing of this suit, "the Commission no longer regards compliance with the CID issued to WPATH as necessary to its investigation." *See* CID Action, ECF No. 43 at 1 (notice of withdrawal of CID); ECF 43-1 (letter formally withdrawing CID). As a result, the

object of the D.D.C.'s preliminary injunction—the CID—no longer exists; the Commission has withdrawn it and no longer seeks to obtain information by means of the CID, or to enforce it.

Two weeks after this action was filed, on June 30, and despite ignoring the FTC's multiple requests to confer on other issues, see ECF No. 29 at 2–3, WPATH-TX sought a temporary restraining order and an antisuit injunction in the CID Action in D.D.C., which it filed after giving the FTC only minutes of notice. See CID Action, ECF No. 45.[4] The motion seeks a TRO and a preliminary injunction "barring the FTC and anyone in active concert with it from pursuing the Texas litigation." Attachment 2 at 13. Although that motion's request may be styled as an injunction against the FTC and perhaps the State Plaintiffs (who are not a party to the CID action, and whom WPATH-TX has not tried to serve or implead), it "in effect [seeks] to restrain [this Court] and therefore represents an interference with the jurisdiction of [this] tribunal." *Air Line Pilots Ass'n, Int'l v. Dep't of Transp.*, 880 F.2d 491, 503 n.8 (D.C. Cir. 1989) (Silberman, J.) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2942 at 377–78 (1973)).

## ARGUMENT

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Motion satisfies all four factors.

---

[4] The FTC has attached as Exhibit 1 the Declaration of R. Cooper Vaughan, which includes WPATH-TX's motion for a TRO and antisuit injunction and its memorandum of law in support of that motion in the CID Action as Attachments 1 and 2, respectively. The FTC will cite these documents as "Attachment 1" and "Attachment 2."

**I.    The Movants Are Likely to Succeed on the Merits.**

The FTC and multiple States (including Texas and Iowa) have sued WPATH-TX in the Northern District of Texas (the State where WPATH-TX is incorporated). These Plaintiffs are entitled to litigate that case in this Court. And whether its suit succeeds depends on the orders of this Court, the Fifth Circuit, and the Supreme Court. WPATH-TX's effort to circumvent that chain of command and have the D.D.C. oversee this Court's proceedings is lawless.

A.    One federal district court lacks the power to superintend the proceedings of another federal district court. The federal judiciary exists in a "vertical hierarchy," *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (Easterbrook, J.), and only courts of appeals exercise "general supervisory authority" over the district courts in their respective regions, *Air Line Pilots*, 880 F.2d at 503. Thus, "the structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction." *In re McBryde*, 117 F.3d 208, 225 (5th Cir. 1997); *see W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985) ("[F]ederal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."); Wright & Miller, *Federal Practice & Procedure*, § 2942 n.44 (3d ed.) (similar); *see also Verogna v. Johnstone*, 583 F. Supp. 3d 331, 336–37 (D.N.H. 2022).

WPATH-TX is seeking just that. It has filed an action in D.D.C. to restrain the Commission and perhaps the State Plaintiffs in this suit from "pursuing the Texas litigation"—an effective command to either dismiss this action or simply muzzle Plaintiffs in this forum. That effort is nothing but an attempt to have "another district judge" effectively "deny" this Court its "lawful jurisdiction." *McBryde*, 117 F.3d at 225.

As this Court has recognized before, it is not powerless in the face of such a collateral attack and has the authority to defend its jurisdiction. *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-0006, ECF No. 26 at 6. It should do so here.[5] To the extent there is any legal defect in this suit, WPATH-TX should raise its arguments to this Court—and if needed, the Fifth Circuit or Supreme Court. But WPATH-TX cannot just run to another court across the country to command

---

[5] In analogous contexts, the Fifth Circuit has held that federal courts have authority to enjoin parties from pursuing parallel litigation that would undermine or divest the jurisdiction of a federal court over a case properly before it. *E.g.*, *Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) (addressing foreign jurisdictions). The Fifth Circuit's analysis in these limited circumstances turns on considerations unique to antisuit relief, which focus on the harms arising from the parallel foreign proceeding itself. In such cases, an anti-suit injunction is proper "(1) that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation; (2) that at least one harm from the foreign litigation—referred to as *Unterweser* threats—be identified; and (3) that any *Unterweser* threats found be weighed against the need to defer to principles of international comity." *Bayerische Motoren Werke Aktiengesellschaft v. Onesta, LLC*, 821 F. Supp. 3d 686, 690 (W.D. Tex. 2026) (citing *Kaepa*, 76 F.3d at 626–28). It has articulated the following four "disjunctive factors" to inform this analysis: "An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles." *Id*.

In the event this Court applies a similar test, each of these requirements is satisfied here. *First*, each of the parties in the CID Action is also a party before this court. To the extent there are any remaining issues in the CID Action following the FTC's withdrawal of its CID (and other than WPATH-TX's request to interfere with this Court's jurisdiction over federal and state enforcement actions and the related and newly filed discovery motion, there are not, infra), this Court can resolve those issues. *Second*, were the CID Action to move forward and WPATH-TX to obtain the relief requested, it would not only unlawfully strip this Court of its rightful jurisdiction but also prevent plaintiffs here from litigating in their selected forum—one in which WPATH-TX chose to be incorporated—prejudicing the FTC. The existence of the State Plaintiffs further counsels in favor of an injunction under this standard; without it, under WPATH-TX's theory, the State Plaintiffs would not get their day in court to bring an enforcement action under laws wholly unrelated to those involved in the CID Action. And under that same theory, Texas would apparently be barred from bringing an action to enforce its own laws in this District. Each plaintiff would suffer substantial prejudice. *Third*, these cognizable harms to both this Court and plaintiffs here greatly outweigh any interest in allowing the CID Action to proceed; WPATH-TX has had its day in D.D.C., obtained a narrow injunction inapplicable to any other investigation or enforcement action against them, including this one, and that litigation is now moot due to the FTC's withdrawal of that CID. Thus, there is no issue of "comity" that outweighs the harms described above.

this suit be effectively dismissed or transferred. That is, if WPATH-TX really thinks D.D.C. is the correct forum for this action, it must file a motion to transfer with this Court under 28 U.S.C. § 1404; it cannot seek to conscript another district judge to direct that this Court halt its proceedings so that WPATH-TX can litigate its arguments in the other district.

B.  Before D.D.C., WPATH-TX's main argument is that this suit overlaps with the CID Action in which the district court enjoined the use of only one particular investigative tool. *See* Attachment 2 at 15–20. But again, for starters, if there is any issue with the federal and state enforcement action currently pending before this Court, the first forum in which to raise that issue is this Court—not another district court hundreds of miles away. At any rate, WPATH-TX's arguments are baseless. This is a naked attempt to have another district court in D.C. superintend this one.

1.  In D.D.C., WPATH-TX has claimed that this enforcement action is "duplicative" of the CID Action, such that the court there should issue an injunction to prevent the same claim from being litigated in two forums. *See* Attachment 2 at 15. That argument is laughable. The CID Action concerned a single CID issued by the FTC that the Commission has since withdrawn. This suit is an entirely distinct governmental enforcement action, brought by not only the FTC but also a number of separate sovereigns pursuing claims under their own laws. The dispute in the CID Action was whether the FTC's investigation into WPATH (primarily the CID directed to WPATH) was proper. Meanwhile, the dispute in this case is whether WPATH violated the FTC Act and several State consumer protection statutes by making false, misleading, or unsubstantiated representations that it knew would provide medical practitioners with the means to mislead consumers. ECF No. 1 ¶¶ 378–79. Those issues are fundamentally different.

Realizing this, WPATH-TX has argued that this enforcement action should have been filed as a *compulsory counterclaim* to the CID Action per Federal Rule of Civil Procedure 13(a)—*i.e.*, that the FTC was required to bring an entire enforcement action as a *counterclaim* to a separate proceeding challenging a pre-enforcement investigative tool. *See* Attachment 2 at 15. This argument is somehow worse than the first. Multiple courts—including the D.C. Circuit and two D.C. district courts—have declared the notion that the FTC "was required to file [an] enforcement proceeding as a counterclaim to [a] preenforcement action" to be "totally without merit." *FTC v. Carter*, 464 F. Supp. 633, 639 (D.D.C. 1979), *aff'd*, 636 F.2d 781 (D.C. Cir. 1980); *see, e.g.*, *A. O. Smith v. FTC*, 417 F. Supp. 1068, 1088 (D. Del. 1976) (same); *In re FTC Corp. Patterns Rep. Litig.*, 432 F. Supp. 274, 284 (D.D.C. 1977) (noting that movant cited "no cases in which a court has treated an enforcement action as a compulsory counterclaim"), *aff'd*, 595 F.2d 685 (D.C. Cir. 1978). And of course that is right: a pre-enforcement suit challenging one of the FTC's investigative tools cannot cabin the available fora (or timing) for any downstream enforcement action carried out by the agency.[6]

Especially so here, for at least three reasons. *First*, the Plaintiffs in this suit include four separate States that are each enforcing their own consumer-protection law. It is impossible to say that *nonparties* to the CID Action—to say nothing of *States* looking to enforce *State law*—were

---

[6] Indeed, Congress has given the agency considerable discretion regarding where to file such enforcement actions. *See* 28 U.S.C. § 1391(c)(2) (providing that entities are deemed to "reside" in any judicial district in which they are subject to personal jurisdiction); 15 U.S.C. § 53(b)(2) (providing that the FTC can sue entities anywhere that they "reside"). If WPATH-TX is correct, then almost any FTC defendant could try to perform an end run around those provisions by filing an independent action to contest some aspect of the FTC's investigation in the venue of its choice, and then later demand that the FTC bring any subsequent enforcement action in that defendant-chosen forum as a purported compulsory counterclaim. This is not the law. *See A. O. Smith*, 417 F. Supp. at 1088 (rejecting the argument "that any enforcement proceeding must be asserted as a compulsory counterclaim under Fed. R. Civ. P. 13(a)" in part because it "would invariably guarantee . . . the complainant's choice of forum").

required to file their enforcement actions as *counterclaims* in a case challenging one of the FTC's CIDs, issued to investigate potential violations of the FTC Act. And even limiting that argument to the FTC, an examination of the complaint makes crystal clear that this suit is not duplicative of WPATH's challenge to the CID.[7] The enforcement actions before this Court include three counts raising claims under the FTC Act and four counts raising claims under four separate state consumer protection statutes. ECF No. 1 ¶¶ 409–53. But WPATH-TX's CID Action complaint does not address the FTC Act or state law claims at issue here at all. *See* CID Action, ECF No. 1. Unsurprisingly, then, the parties' allegations and arguments in the CID Action, as well as that court's preliminary injunction decision, did not address the merits of the claims raised in *this* litigation in any way. And to gild the lily, as the FTC intends to argue in a motion to dismiss the CID Action, that case became moot when the Commission withdrew the CID that prompted the suit in the first place, particularly because the Commission has no intention of obtaining information pursuant to the CID or enforcing it going forward.

*Second*, WPATH's argument would lead to absurd results. The FTC has authority to issue a CID when it has "reason to believe" that the recipient "may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to" a violation of the laws that the FTC enforces. 15 U.S.C. § 57b-1(c). By contrast, the FTC cannot bring an enforcement action unless it has "reason to believe that" a defendant has in fact *violated a law* that the FTC enforces. 15 U.S.C. § 45(a). The FTC therefore typically must investigate potential misconduct before filing a claim—as the district court in the CID Action recognized in

---

[7] Notably, counterclaims are only compulsory when they involve the same "transaction or occurrence." Fed. R. Civ. P. 13(a). The relevant "transaction or occurrence" is "the one circumstance without which neither party would have found it necessary to seek relief." *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926). In the CID Action, that circumstance is the since-withdrawn CID.

its opinion enjoining enforcement of the CID. See *World Pro. Ass'n for Transgender Health*, 2026 WL 1257321, at *5 (explaining that the FTC "remains free to deploy other investigative tools" notwithstanding the injunction). WPATH's claims in D.D.C. could not have triggered an obligation to file an enforcement action because the FTC would not necessarily have had the required "reason to believe" that the law had been violated during a challenge to the CID. Indeed, a CID is one of the most important tools for determining whether the FTC has reason to believe that the law has been violated. If WPATH were correct, then federal law-enforcement agencies would have a mandatory obligation to file enforcement actions every single time a party challenged a subpoena. And if they lacked the necessary evidence to do so, then those agencies would be estopped from ever bringing those claims. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993) ("A counterclaim which is compulsory but is not brought is thereafter barred." (quotation omitted)).  This cannot be the law.

*Third*, on WPATH's theory, every *State* in the Union which could bring an enforcement action even related to information that could have been obtained through a challenged *federal* CID would be required to file those actions as counterclaims to a private party's challenge to a federal administrative subpoena. This absurd rule is not the law; Congress did not make targets of investigation the decision maker over whether, when, and where the federal and State governments file enforcement actions.

2.      Relatedly, WPATH-TX also contends that this litigation somehow evades the D.D.C.'s preliminary injunction. Attachment 2 at 21–23. That is not a good argument. As noted, the D.D.C. order was expressly limited to "further action regarding the CID." *World Pro. Ass'n for Transgender Health*, 2026 WL 1257321, at *5. And it expressly *denied* WPATH-TX's request for further relief, including an injunction on the FTC continuing to investigate that organization

13

through other means. *Compare* CID Action, ECF No. 3-39 (proposed order seeking a broad injunction against multiple investigative tools, including "another CID" or "a voluntary access letter") *with* CID Action, ECF No. 40 at 1 (court order only enjoining the FTC "from implementing or enforcing its previously issued [CID]"). In that court's words, the FTC "remains free to deploy other investigative tools." *World Pro. Ass'n for Transgender Health*, 2026 WL 1257321, at *5.

Nothing about this suit conflicts with that order. As for enforcing the CID—the one action that the order enjoins—WPATH-TX has received all it wanted and more. Beyond simply declining to implement or enforce the CID during the pendency of D.D.C. litigation, the FTC has withdrawn it entirely. Far from evading the D.D.C.'s preliminary injunction, the FTC has exceeded its single command. And aside from that, the FTC has acted consistently with the preliminary injunction's declaration that the FTC is free to continue its investigations and use the tools it otherwise has at its disposal to enforce the FTC Act as it deems appropriate.

WPATH-TX seems to argue that because the preliminary injunction stalled a specific CID, the FTC is somehow barred from doing anything that might ever uncover the information that was sought by that CID (such as through discovery in this suit). But again, that just goes beyond what the D.D.C. order actually says: that court enjoined the enforcement of a discrete governmental action; it expressly declined to go any further; and indeed, it reaffirmed that the FTC could employ its other investigative tools—unbounded by any subject-matter limitations. The fact that this suit might concern similar subject matter as the CID is routine in enforcement actions, not remarkable. And the notion that the FTC is violating the D.D.C. order by doing exactly what that order allows for is baseless. To the extent WPATH-TX has an issue with any discovery requested in this case, it may file a motion with this Court (or appeal); it may not seek to upend the ordinary course of litigation by seeking relief in a court more than a thousand miles away.

14

3.      WPATH-TX is candid about why it is attempting this far-fetched gambit: It does not trust this Court to apply the law faithfully. In its filing in D.D.C., WPATH-TX essentially accused this Court of being a reflexive vote for the government when it comes to these issues, echoing a New York judge in claiming that this Court is the "only jurisdiction" in the country that would ever indulge the notion WPATH-TX has done anything wrong. Attachment 2 at 1, 17. Indeed, with little subtlety, WPATH-TX critiqued this Court's conduct in a separate case involving DOJ, as part of arguing that D.D.C. must strip this Court of jurisdiction, because it could not be entrusted with fairly resolving the case and controversy lawfully before it. *See, e.g.*, *id.* at 22 ("When DOJ sought to enforce an administrative subpoena in the Northern District of Texas—the same administrative subpoena that *eight* other courts had refused to enforce. . .—that court enforced the subpoena *ex parte*, without hearing from the hospital that had received the subpoena, and subsequently denied the hospital's request for a stay."); *id.* at 5 ("The only court to permit DOJ to enforce a subpoena, the Northern District of Texas, did so within only "a few hours" of receiving DOJ's motion, without any response from the targeted entity."). Indeed, WPATH goes so far as to question whether this Court will even apply the First Amendment faithfully. *See id.* at 22 ("And there is no guarantee that the Northern District of Texas will apply the First Amendment to the FTC's requests in the same manner that [D.D.C.] has.").

That argument is insulting—both to this Court, and to the structure of our judicial system more broadly. Each federal judge has sworn an oath to apply the law without fear or favor and do their level best to resolve the case before them as the law neutrally dictates. To the extent a judge makes a mistake, or commits an error, the proper course is an appeal. What is improper is to rush across the country to obtain an injunction from a forum in Washington, D.C. they believe will be

15

more favorable to their interests, commanding a court in Texas effectively to stop its work. This Court should not countenance that tactic.

C.    For many of the same reasons, the Motion satisfies the requirements for enjoining WPATH-TX from litigating in D.D.C. pursuant to the first-filed rule, which allows district courts to prevent subsequent filings of related lawsuits in other federal courts.

"A United States District Court hearing a particular case may, in its discretion, enjoin the filing of related lawsuits in other federal courts." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, __ (1952)); see also *id.* at 654 (noting that the Fifth Circuit *favors* district courts' exercise of "their discretion to avoid duplication of proceedings"). That authority is "designed to prevent" the "abuse[]" that occurs when one district court "act[s] as a super appellate court" over another. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999).

Plainly, Plaintiffs' enforcement action in this Court is the first-filed suit. "The relevant benchmark for determining which suit was first filed is the date of filing." *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 923 n.7 (M.D. La. 2016). This case is the first suit filed as to *this* enforcement action. WPATH's motion for an antisuit injunction in D.D.C. to stop this enforcement action came nearly two weeks later. See Attachment 1. This Court therefore may properly determine whether WPATH-TX may proceed on its attempt to undercut this Court's jurisdiction.

In determining whether to apply the first-filed rule, the "crucial inquiry is one of 'substantial overlap.'" *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citation omitted). As explained *infra*, the substance of WPATH-TX's D.D.C. lawsuit, which presents only questions about the Commission's exercise of its *investigative* authority, does not

16

substantially overlap with the federal and State *enforcement* action filed in this Court. Nevertheless, WPATH-TX's request for a preliminary injunction in D.D.C. improperly smuggles in a challenge to Plaintiffs' enforcement action in this Court by asking D.D.C. to interfere with this Court's proceedings. That motion—unrelated as it is to the complaint that launched the underlying action—generates substantial overlap for purposes of the first-filed rule.

In cases like this one, where "the overlap between two suits is less than complete," the decision whether to enjoin the prosecution of the second-filed case turns on "such factors as the extent of the overlap, the likelihood of the conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951. Here, the FTC and States' requested injunction would enjoin only those aspects of WPATH-TX's litigation that overlap with this Court's jurisdiction over the enforcement action—those aspects for which conflict is certain unless this Court issues the requested injunction.

Furthermore, this Court has both the comparative advantage and a significant interest in resolving the dispute. WPATH-TX has been incorporated in Texas for nearly five decades. The State of Texas is a plaintiff to this action, enforcing its laws against injuries inflicted by a Texas corporation against Texas citizens. Two of the witnesses on which the FTC and States rely are residents of Texas. The FTC maintains a major regional office in Texas. And the FTC enjoys statutory authority to choose among multiple proper venues for an enforcement action, 15 U.S.C. § 53(b), reinforcing the well-established principle that "the plaintiff's choice of forum should rarely be disturbed." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987).

Enjoining WPATH-TX from litigating in D.D.C. would manifestly serve the purposes of the first-filed rule. As the Fifth Circuit has explained, the objectives of the rule are "to avoid the waste of duplication, to avoid rulings which may encroach upon the authority of sister courts, and

17

to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Maritime Ass'n*, 751 F.2d at 728. All of those objectives favor issuing an injunction here. Litigating the merits of the FTC's and States' enforcement actions in this Court and only this Court avoids wasting judicial or party resources on duplicative litigation. The requested injunction is tailored specifically to "avoid rulings which may trench upon the authority of sister courts," *ibid.*—that is, it would prevent WPATH-TX from seeking relief that would preclude this Court from resolving claims over which it has acquired jurisdiction, while preserving WPATH-TX's ability to litigate questions relating to the claims it filed in D.D.C., including compliance with the injunction. And proceeding in this Court in the normal course—motions practice, discovery, and ultimately a trial, if necessary— "avoid[s] piecemeal resolution" of the issues relevant to the merits of the FTC's and States' enforcement actions. *Ibid.*

The propriety of an injunction here is only strengthened by the All Writs Act, which empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Given that WPATH-TX's primary request in their otherwise moot D.D.C. litigation over the FTC's investigative authority asks that court to interfere with this Court's jurisdiction over federal and state enforcement actions, Plaintiffs' requested injunction is necessary and appropriate to protect this Court's jurisdiction.

That WPATH has styled its request for an antisuit injunction as a "motion" in an existing case does not make it the first-filed suit for purposes of the Fifth Circuit's rule. WPATH's original suit was all but concluded when WPATH filed its motion. It had no pending motion for relief (and since then it has added only a newly filed request for discovery regarding compliance with the preliminary injunction, which the FTC and State Plaintiffs do not ask this Court to enjoin). The subject matter of WPATH-TX's complaint ceased to exist nearly two weeks before they filed their

18

"motion" because the Commission has withdrawn the CID and has no plans to enforce it. See *supra*, Background. Thus, although its antisuit "motion" bears the same docket number as its challenge to the CID, it is in fact a new lawsuit wearing the skin of a now-mooted lawsuit for an injunction against a nonexistent CID.

WPATH's own antisuit injunction papers confirm this. The D.C. Circuit also applies a first-filed rule to determine whether one district court may enjoin the ongoing proceedings of another. See *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (per curiam) ("The usual rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." (cleaned up)).  Tellingly, however, WPATH does not invoke this rule in its motion for an antisuit injunction, nor could it have. The D.C. Circuit's first-filed rule applies "only when 'two cases between the same parties [and] on the same cause of action are commenced in two different Federal courts.'" *Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 138 (D.D.C. 2017) (Jackson, J.) (quoting *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980)). The point of the rule is to prevent "the same plaintiff" from getting "multiple bites at the apple." *En Fuego Tobacco Shop LLC v. U.S. Food & Drug Admin.*, 356 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting *Ragonese*, 617 F.2d at 830).

The FTC and Plaintiff States have never gotten a bite at the apple until they filed their enforcement actions in this Court. WPATH-TX's original suit in D.D.C. and Plaintiffs' suit before this Court do not involve the same cause of action, nor do they substantially overlap. The CID Action raised a First Amendment challenge to a single CID. Plaintiffs' enforcement actions in this Court allege years-long violations of federal and state consumer protection laws. The Fifth

Circuit's first-filed rule applies to whichever court obtains "jurisdiction over the *common subject matter*" of both suits. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (emphasis added). D.D.C. has never obtained jurisdiction over the subject matter of this enforcement action: violations of federal and State consumer-protection laws. WPATH tries to evade this incongruity by arguing that Plaintiffs should have filed its enforcement actions as counterclaims to WPATH's challenge to the CID. Attachment 2 at 17. But as we explain above, the federal and state enforcement actions before this Court could not have been counterclaims to WPATH's constitutional challenge in D.D.C. See *supra* I.B.1.

To be sure, WPATH's motion for an antisuit injunction substantially overlaps with the enforcement action before this Court. But WPATH's shoehorning of a new lawsuit onto an existing docket by means of artful pleading does not make its lawsuit the "first-filed" lawsuit for purposes of this rule. The complaint and preliminary-injunction motion that commenced WPATH's suit in D.D.C. do not involve the same issues as Plaintiffs' enforcement actions in this Court. This Court should therefore apply the first-filed rule to enjoin WPATH's attempt to file a new claim for an antisuit injunction and require WPATH to litigate its defenses in the forum that Plaintiffs have properly chosen.

## II.    The Movants Will Suffer Irreparable Harm Absent Relief.

The FTC and the State Plaintiffs will suffer irreparable harm unless this Court acts. The Plaintiffs have chosen this forum to litigate their claims that WPATH is engaged in serious violations of both federal and state consumer protection laws. Those violations, as alleged in the 123-page complaint and demonstrated by 16 attached sworn declarations from victims and witnesses, have caused significant and irreparable harm to children throughout the United States and especially in the States that have filed this action, including Texas. WPATH-TX's transparent

attempt to stall the Plaintiffs from pursuing these claims would cause irreparable harm by depriving the Plaintiffs of their properly chosen forum without litigating that issue in this Court. *See Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (concluding that a party suffers "irreparable harm" when it is "deprived of its bargained-for choice of forum"). That harm is compounded by the fact Congress afforded the FTC broad discretion in selecting a forum for its enforcement actions—discretion that WPATH-TX seeks to commandeer. 15 U.S.C. § 53(b)(2).[8]

WPATH-TX's maneuver will also cause irreparable harm to the State Plaintiffs. WPATH-TX's motion seeks a TRO and a preliminary injunction "barring the FTC and anyone in active concert with it from pursuing the Texas litigation." Attachment 2 at 25. In other words, WPATH-TX apparently seeks to bar the State Plaintiffs from pursuing their State-law claims even though the States are not parties and their claims are not at issue in the CID Action. On WPATH-TX's apparent theory, even Texas would be prohibited from litigating in a Texas district court against a Texas-incorporated party for injuries inflicted on Texas citizens.[9] When a State is forestalled from enforcing its own law, that is a quintessential form of irreparable harm. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The same is true for the FTC: when the Federal Government is impaired in enforcing its

---

[8] In general, agencies suffer irreparable harm when denied the ability to exercise a statutory prerogative. *Cf. Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1307 (1976) (Rehnquist, J., in chambers) (explaining that "the Government will suffer irreparable harm if [a motor vehicle safety regulation] is not permitted to remain in effect during the pendency of the litigation on the merits," because "the goals of the federal motor vehicle safety program will have been dealt a serious setback").

[9] The FTC and States do not concede that an injunction against the FTC and anyone acting "in concert" with the FTC would apply to the Plaintiff States.

own law, that too is classic irreparable harm. *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025) ("[T]he Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the [courts'] authority."); *Trump v. Slaughter*, 609 U. S. ____, slip op. at 26–27 (2026) (explaining that the FTC's "'discretionary power to seek judicial relief' lies at the very core of executive authority" (quoting *Buckley v. Valeo*, 424 U.S. 1, 138 (1976)).

WPATH-TX's maneuver here is nothing but a delay tactic, designed to stall the enforcement of federal and state law in the forum that those sovereigns have properly selected. This Court should act immediately to prevent a cloud of procedural uncertainty from forming over this case, causing further (and unnecessary) motions practice and protracted litigation. So long as that delay endures, and resources are expended combatting it, the FTC, the States, and the victims of WPATH-TX's deception whom Plaintiffs are acting to protect, will suffer harms they could not redress later—as WPATH-TX continues to violate the law.

### III.    The Equities Favor Relief.

The remaining preliminary injunction factors favor granting the Motion. First, the balance of the equities tips strongly in the FTC's favor. The FTC and the State Plaintiffs are entrusted with enforcing federal and state consumer-protection laws on behalf of the American people. *Slaughter*, 609 U. S. ____, slip op. at 26–27; *United States v. Texas*, 599 U.S. 670, 684 (2023) (explaining that "the Executive's Article II authority to enforce federal law [is] deeply rooted history of enforcement discretion in American law."). They have filed this suit to redress WPATH-TX's prolific violations of those laws. And they have properly selected Texas as the forum within which to do so. The equities compel this enforcement action to proceed in the ordinary course, consistent with the constitutional structure of our judicial system. Granting the FTC's motion will accomplish that, protecting the rule of law and the reliance interests of all parties by reinforcing "the principle

of comity" between "courts of coordinate jurisdiction and equal rank." *W. Gulf Mar. Ass'n*, 751 F.2d at 728.

On the other side of the ledger, WPATH-TX's core claim to harm is that it prefers how (it assumes) D.D.C. will review this case, as opposed to how this Court (it assumes) will approach these issues. As we explain above, that is an illegitimate consideration. Federal fora exist on equal footing; each district judge is equally capable of resolving the case before him. WPATH-TX's claim that it will suffer harm by having to litigate in Texas—the State of its incorporation for nearly fifty years—is based purely on its prediction about how this Court will resolve the merits of the Plaintiffs' claims and WPATH-TX's defenses. That is obviously deficient; were it legitimate, Congress's design of 93 equal judicial districts would collapse overnight.

Second, an injunction is in the public interest. "As a practical matter, if a plaintiff demonstrates both likelihood of success on the merits and irreparable injury," as the Movants have done above, "it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, 107 F.4th at 139 (quotation omitted). Further, the public interest lies in allowing this matter to proceed by enjoining WPATH-TX's collateral efforts to defeat it. The FTC Act and the State Plaintiffs' consumer protection laws require that entities like WPATH do not mislead consumers, including by making statements which lack adequate substantiation. "Facilitating the proper enforcement of" such laws by allowing the Plaintiffs to litigate their claims on the merits, rather than permitting WPATH to block those claims in unrelated proceedings, "is all to the good." *Id*.

## CONCLUSION

The United States District Court for the District of Columbia has scheduled a hearing on WPATH-TX's meritless request to enjoin this Court's proceedings for Thursday, July 9. The

government is available to argue this urgent motion on Tuesday, July 7, in Fort Worth. Accordingly, the government asks that this Court to set an argument, if appropriate, on July 7 and request that WPATH-TX provide any opposition by 3 PM CST on Monday, July 6. The government will waive any reply but asks for leave to address issues WPATH-TX raises orally.

Subsequently, for the reasons stated herein, this Court should grant the Motion and enjoin the Defendants in this case from seeking relief regarding this proceeding in any court other than this Court, the Fifth Circuit, or the Supreme Court. *See In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-0006, ECF No. 26 at 6.

Dated: July 2, 2026

Respectfully submitted,

*Of Counsel*

Jonathan Cohen
  *Chief Litigation Counsel*
District of Columbia Bar No. 483454*

*/s/ Michael Dingman*
*Senior Counsel to the Director*
  District of Columbia Bar No. 90001474*
R. Cooper Vaughan
  *Senior Counsel to the Director*
  Virginia State Bar No. 92580
Glenna Goldis
  *Assistant Director for Special Projects*
  New York Reg. No. 4868600*
Hans Clausen
  *Attorney*
  Georgia Bar No. 153250*

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: MDingman@FTC.gov

*Admitted *pro hac vice*

24

**FOR THE STATE OF TEXAS:**

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Johnathan Stone**
Chief, Consumer Protection Division

**David Bizar**
Assistant Attorney General
Texas State Bar No.: 24110737
**Office Of The Attorney General Of Texas**
Consumer Protection Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2185
Fax: (512) 473-8301
David.Bizar@oag.texas.gov

**FOR THE STATE OF IOWA:**

BRENNA BIRD
Attorney General of Iowa

Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
Counsel for State of Iowa

25

## CERTIFICATE OF SERVICE

I, Michael Dingman, hereby certify that on July 2, 2026, I electronically filed this motion

with the Court using the CM/ECF system, a copy of which will be mailed and emailed to

Defendants' counsel.

*/s/ Michael Dingman*
Michael Dingman
