**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON, in his official capacity as Chairman of the Federal Trade Commission; MARK R. MEADOR, in his official capacity as Commissioner of the Federal Trade Commission; and JOHN DOES 1–3, in their official capacities as Commissioners of the Federal Trade Commission,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00532-JEB<br><br>**Hearing Scheduled for July 9 at 2:30 p.m. ET** |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND ANTISUIT INJUNCTION**</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.       The Court Should Enjoin the Texas Litigation as Duplicative .............................. 3

        A.      The FTC Mischaracterizes Both Suits ............................................. 3

        B.      An Injunction Is Necessary to Prevent Duplicative Proceedings ..................... 7

        C.      The FTC Must Follow the Same Rules as Other Litigants ........................... 13

        D.      WPATH Does Not Ask This Court to Superintend Texas Proceedings ......... 17

    II.     An Injunction Is Necessary to Prevent Evasion of This Court's Injunction ......... 19

    III.    WPATH Has Been, and Will Continue to Be, Irreparably Harmed by the FTC's Actions ................................................................................................ 20

    IV.    The Balance of the Equities and Public Interest Favor WPATH .......................... 21

CONCLUSION ............................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*A.O. Smith v. FTC*,
  417 F. Supp. 1068 (D. Del. 1976) ........................................................................................ 15

*Almaqrami v. Pompeo*,
  933 F.3d 774 (D.C. Cir. 2019) ............................................................................................... 9

*\*American Horse Protection Association v. Lyng*,
  690 F. Supp. 40 (D.D.C. 1988) .....................................................................................*passim*

*Boe v. Marshall*,
  No. 2:22-cv-0184 (M.D. Ala. Oct. 9, 2025)........................................................................... 6

*Cal. Dental Ass'n v. FTC*,
  526 U.S. 756 (1999) ............................................................................................................... 4

*\*Columbia Plaza Corp. v. Sec. Nat'l Bank*,
  525 F.2d 620 (D.C. Cir. 1975) ......................................................................................*passim*

*Congress Credit Corp. v. AJC Int'l, Inc.*,
  42 F.3d 686 (1st Cir. 1994) ................................................................................................. 13

*EEOC v. Univ. of Pa.*,
  850 F.2d 969 (3d Cir. 1988)................................................................................................ 17

*Endocrine Soc'y v. FTC*,
  No. 26-cv-512 (JEB), 2026 WL 1257289 (D.D.C. May 7, 2026).....................................*passim*

*F.D.I.C. v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008)............................................................................................... 13

*FTC v. Carter*,
  464 F. Supp. 633 (D.D.C. 1979) ........................................................................................ 15

*In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*,
  No. 1:26-mc-0007-MSM-AEM, 2026 WL 1392565 (D.R.I. May 14, 2026) ................ 2, 11, 18

*In re FTC Corp. Patterns Rep. Litig.*,
  432 F. Supp. 274 (D.D.C. 1977) ........................................................................................ 15

*In re Kaiser Grp. Int'l Inc.*,
  399 F.3d 558 (3d Cir. 2005)................................................................................................ 16

*Konah v. District of Columbia*,
  971 F. Supp. 2d 74 (D.D.C. 2013) ....................................................................................... 6

*Lindland v. U.S. Wrestling Ass'n, Inc.*,
227 F.3d 1000 (7th Cir. 2000) ................................................................................. 16

*Mattingly v. United States*,
939 F.2d 816 (9th Cir. 1991) .................................................................................... 14

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) ................................................................................ 22

*Mills v. District of Columbia*,
571 F.3d 1304 (D.C. Cir. 2009); ECF 41 ................................................................ 20

*Moore v. N.Y. Cotton Exch.*,
270 U.S. 593 (1926) ................................................................................................. 15

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ................................................................................................... 5

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
25 F.4th 998 (Fed. Cir. 2022) .................................................................................. 21

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
989 F.2d 1002 (8th Cir. 1993) ....................................................................... 2, 14, 18

*POM Wonderful, LLC v. FTC*,
777 F.3d 478 (D.C. Cir. 2015) ................................................................................... 5

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*,
48 F.4th 603 (5th Cir. 2022) .................................................................................... 17

*Pulsifer v. United States*,
601 U.S. 124 (2024) ................................................................................................. 19

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
831 F.3d 500 (D.C. Cir. 2016) ................................................................................. 22

*Rich v. Butowsky*,
No. 18-cv-681 (RJL), 2020 WL 7016436 (D.D.C. Mar. 31, 2020) .................................. *passim*

*SAS Inst., Inc. v. World Programming Ltd.*,
952 F.3d 513 (4th Cir. 2020) ............................................................................. 19, 20

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997) ................................................................................... 18

*Smith v. SEC*,
129 F.3d 356 (6th Cir. 1997) ............................................................................. 13, 14

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023) ..................................................................................................... 14

*United States v. Eastport S. S. Corp.*,
   255 F.2d 795 (2d Cir. 1958) ......................................................................................... 14

*Voe v. Mansfield*,
   No. 1:23-cv-864 (M.D.N.C. Oct. 11, 2024) ................................................................... 6

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) .......................................................................................... 3

*Z.A. v. Blanche*,
   No. 26-cv-04998-PCP, 2026 WL 1907181 (N.D. Cal. July 2, 2026) ................................ 11, 18

## Statutes

15 U.S.C. § 44 .................................................................................................................. 1, 4, 9

15 U.S.C. § 45 ...................................................................................................................... 16

15 U.S.C. § 49 ...................................................................................................................... 15

15 U.S.C. § 53 ...................................................................................................................... 11

28 U.S.C. § 1404 .................................................................................................................... 9

28 U.S.C. § 1651 .................................................................................................................. 19

## Rules

Federal Rule of Civil Procedure 65 ...................................................................................... 16

Federal Rule of Civil Procedure 12 ...................................................................................... 10

Federal Rule of Civil Procedure 13 ................................................................................ 14, 15, 16

**INTRODUCTION**

This Court previously found that "WPATH has made it apparent that its constitutional rights are violated." ECF 41 at 10 (cleaned up). The FTC had offered "no record evidence" showing a "logical basis for an investigative demand." *Id.* at 8. WPATH, in contrast, had presented "extensive evidence" of the "range and depth of animus displayed by . . . agency leadership toward gender-affirming care." *Id.* at 2, 9. The Court thus concluded that, on a preliminary record, the FTC had acted based on a "retaliatory motive," in violation of WPATH's First Amendment rights.

The FTC treats this Court's preliminary injunction as little more than an instruction to try again. It characterizes the injunction as "limited to barring the FTC from 'implementing or enforcing its issued CID,'" ECF 53 ("Opp.") at 27, entirely ignoring the reasoning that explained why the Court imposed that bar. In the FTC's telling, if it brings an enforcement action for the same "retaliatory motive" the Court previously found, and based on the same evidence the Court rejected as insufficient to "evinc[e] a legitimate purpose" to even investigate, ECF 41 at 8-9, then it has "followed this Court's order and more," Opp. at 27. The First Amendment, the FTC Act, and this Court's preliminary injunction are not so easily circumvented.

The Court should enjoin the FTC from evading the preliminary injunction and prosecuting a duplicative action in Texas. This suit and the Texas litigation both concern the same WPATH statements, the same questions about the FTC's jurisdiction, and the same First Amendment rights this Court previously held barred enforcement of the CID. The FTC responds primarily by mischaracterizing both suits. WPATH's suit, it claims, "concerned a single CID issued by the FTC that the Commission has since withdrawn." Opp. 14. False. WPATH's complaint, among other things, seeks a declaration that WPATH is "not a 'corporation' as defined by . . . 15 U.S.C. § 44." Such a declaration would provide a complete defense to the Texas litigation. The FTC

1

further asserts that it "uncovered substantial evidence" of violations.  Opp. 6.  Wrong again.  The FTC cites the same evidence this Court already considered and found insufficient to show a "legitimate purpose" to even investigate.  ECF 41 at 9.  *Of course* the FTC has not identified newly discovered evidence.  The preliminary injunction issued only two months ago.

The Texas action also threatens to evade the Court's injunction.  The FTC does not deny that the "same information sought in the CID may come up through discovery in [the Texas] case." Opp. 27.  The FTC insists that such documents would not be produced in response to the CID.  But it never explains why obtaining the same documents and imposing the same "chilling effect" that this Court found would violate the First Amendment would not fall within and be a not-so-clever way to circumvent the injunction's prohibition on "implementing" the CID.  ECF 41 at 6-7, 11.

The FTC's remaining objections challenge the propriety of antisuit relief in general.  But the "discretionary power of the federal court in which the first-filed action is pending to enjoin the *parties* from proceeding with a later-filed action in another federal court is firmly established." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993) (emphasis added); *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 628 (D.C. Cir. 1975).  WPATH does not ask the Court to superintend proceedings in the Northern District of Texas, but instead to restrain the FTC's forum shopping.  That forum shopping continues.  After *agreeing* to a schedule under which WPATH would file its reply brief on July 8 and present argument on July 9, ECF 48, and then *agreeing* to this Court imposing that schedule, the FTC ran to the Northern District of Texas to request an order that would *bar* WPATH from complying with that schedule, ECF 50.  Courts have recently disapproved of similar "subterfuge." *In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, No. 1:26-mc-0007-MSM-AEM, 2026 WL 1392565, at *2 (D.R.I. May 14, 2026)

2

(finding DOJ delayed communications to "prevent [opposing counsel] from realizing that DOJ had decided to go to Texas for an order").

## ARGUMENT

### I.    The Court Should Enjoin the Texas Litigation as Duplicative

WPATH's opening brief explained that this case and the Texas litigation both concern the "same statements" from SOC8, the same jurisdictional "question of whether WPATH is a 'corporation' or engages in commerce," and the "same First Amendment rights."  ECF 45-1 ("Mot.") at 16-17.  Litigating those issues in two separate cases would cause "wasteful expenditure of energy and money" and create "the risk of inconsistent adjudications and races to obtain judgments."  *Columbia Plaza*, 525 F.2d at 626.  The FTC "agrees that the parties need not continue to expend resources to litigate in two separate forums."  Opp. 30.  But it wrongly contends that the Texas litigation, as the second filed, should take precedence.  That contention flouts settled law, which favors the "first-filed action" absent "countervailing equitable considerations."  *Columbia Plaza*, 525 F.2d at 627; *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) ("This circuit has recognized and applied these comity principles that underlie the first-filed rule.").

### A.  The FTC Mischaracterizes Both Suits

The FTC misstates the nature of both this case and the Texas litigation to downplay the similarities between them.  It labels WPATH's suit the "CID Action" and asserts that it "concerned a single CID issued by the FTC that the Commission has since withdrawn."  Opp. 14.  That is demonstrably false.  Only one of WPATH's six requests for the relief even mentions the CID.  ECF 1 at 44.  Its suit specifically alleges that the FTC "lacks jurisdiction to investigate *or bring a Section 5 action* against WPATH, as WPATH is not a 'corporation,' nor does it engage in commercial speech."  *Id.* ¶ 136 (emphasis added); *see id.* ¶ 29.  It requests a declaratory judgment

3

that "WPATH is not a 'corporation' as defined by . . . 15 U.S.C. § 44." *Id.* at 44 ¶ e. Such a declaration would be a complete defense to the FTC's claims in the Texas lawsuit, which all assert violations of Section 5. *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 766 (1999) ("[T]he FTC Act does not cover all membership organizations of profit-making corporations without more, and an organization devoted solely to professional education may lie outside the FTC Act's jurisdictional reach."); ECF 47-7 ¶¶ 412-420. That is why the FTC alleges in Texas that WPATH "acts for the profit of its members." ECF 47-7 ¶ 252 (citing *Cal. Dental*, 526 U.S. at 767-68). WPATH's motion explained that both suits "revolve around the same question of whether WPATH is a 'corporation' or engages in commerce." Mot. 17. The FTC *does not respond*. The FTC cannot characterize this case as a "pre-enforcement suit against a subpoena," Opp. 2, while ignoring the broader relief it seeks.

This case does not just raise the question of whether WPATH falls within the scope of the FTC's enforcement authority; the Court's preliminary injunction decision has already addressed it. In *Endocrine Society v. FTC*, the Court faulted the FTC for providing "no answers" to the question of why "the Society and other nonprofit organizations [such as WPATH] that sell no products and engage in no advertising [are] the current investigative targets[.]" No. 26-cv-512 (JEB), 2026 WL 1257289, at *12-13 (D.D.C. May 7, 2026); ECF 41 at 1 (incorporating *Endocrine Society* by reference). While the FTC offered an "unsupported assertion" that some members of the nonprofit organizations "'may have a financial interest' in pediatric-gender-dysphoria treatment," this Court explained that only when "nonprofit entities exhibit signs of capture by a particular industry or are rife with conflicts of interest that steer them from a noncommercial posture" can the FTC "exercise authority over them." *Endocrine Soc'y*, 2026 WL 1257289, at *13 (citing *Cal. Dental*, 526 U.S. at 767). The FTC identified "no evidence, however, that any such

4

conflict is at play here and has declined to give . . . any theory upon which it expects to uncover concrete evidence of a third-party violator." *Id.*; ECF 41 at 9 (expressing "concern" about FTC's "tenuous path to uncovering violations"). Those concerns about the FTC's authority to *investigate* apply *a fortiori* to its authority to *initiate* an enforcement action. *Endocrine Soc'y*, 2026 WL 1257289, at *12 (expressing "some sympathy" for argument that FTC must investigate to "uncover violations").

WPATH's First Amendment claims recognized by this Court also provide defenses to the FTC's enforcement action. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024); *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 502 (D.C. Cir. 2015) (applying First Amendment protections for commercial speech to FTC substantiation requirements). WPATH here seeks an injunction against any "action to hinder, interfere with, intimidate, or restrain WPATH's exercise of its constitutional rights." ECF 1 at 44, ¶ f. While the FTC asserts that the Court declined to enter a preliminary injunction against actions other than the CID, Opp. 27, WPATH's additional and broader claims remain part of this case and can be proved based on either evidence uncovered through discovery or subsequent developments, which could (and do) show that the Court's rationale applies equally to these other actions. That is what litigation after a preliminary injunction is meant to do.

The FTC further misstates the nature of its claims in Texas. The FTC asserts that, "[a]fter the Court preliminarily enjoined enforcement of the CID," the FTC "used its 'other investigative tools' to investigate WPATH" and "uncovered substantial evidence that WPATH has made false, misleading, or unsubstantiated statements." Opp. 5-6. That is nonsense. The evidence the FTC supposedly "uncovered" is precisely the same evidence that this Court previously considered and rejected as insufficient to support even an *investigation*, much less show a violation. ECF 41 at 8-

5

9. As a threshold matter, the FTC does not cite evidence, but instead the allegations in its Texas complaint. *See Konah v. District of Columbia*, 971 F. Supp. 2d 74, 81 (D.D.C. 2013) ("[A]llegations are not evidence."). The sources from which the FTC derived those allegations are essentially the same ones previously presented to the Court. For example, the FTC asserts that WPATH "declared virtually every transition service its members provide as 'medically necessary'" to "obtain insurance coverage." Opp. 8. But this Court considered evidence of WPATH's discussions of "medical necessity" and "insurance coverage" (obviously not "new") and found they did not support the "FTC's investigative actions." ECF 41 at 8-9. The FTC cites the "example" of a "Texas girl." Opp. 9. But that girl is Soren Aldaco, who spoke at the FTC's 2025 workshop (without mentioning WPATH), and was plainly known to the FTC throughout the last 12 months. ECF 3-28 at 51-52. Indeed, five of the declarations attached to the Texas complaint come from witnesses who spoke at the workshop, Mot. 11, and WPATH would have submitted further connections to the workshop if the FTC had not filed other parts of its complaint under seal.

Nearly all the FTC's remaining evidence derives from sources that have already been before this court, including the dockets in *Boe v. Marshall*, No. 2:22-cv-0184 (M.D. Ala. Oct. 9, 2025), or *Voe v. Mansfield*, No. 1:23-cv-864 (M.D.N.C. Oct. 11, 2024), both of which were previously cited to this Court. ECF 32 at 8. For example, the FTC quotes a document from *Boe* stating that "WPATH leaders privately admitted they 'struggled to find any sound evidence-based argument(s) underpinning' the removal of age limitations for these services in the most recent SOC." Opp. 7; *see Boe*, No. 2:22-cv-0184, ECF 700-16 at 107. But that quote does not refer to SOC8, but instead the *American Academy of Pediatrics' comments* to SOC8. *Boe*, No. 2:22-cv-

0184, ECF 700-16 at 107.  Under the prior administration, the United States reviewed the same evidence the FTC now cites and reached the *opposite* conclusion from the FTC.  *See* ECF 34-3.

It makes perfect sense that the FTC has not identified significant newly discovered evidence.  The Court entered its preliminary injunction less than six weeks before the FTC filed the Texas litigation.  The FTC admits that it "typically investigates potential misconduct *well before* filing a claim."  Opp. 16.  It further admits that it does "not yet have the evidence it needs to" assert an enforcement action when it issues a CID "(hence the CID)."  *Id.*  Those admissions lay bare the real reason for the FTC's lawsuit.  The FTC did not have the evidence to initiate an enforcement action when it issued the CID, and it did not acquire that evidence between when the Court entered its injunction and when the FTC filed the Texas litigation.  Instead, the FTC filed the Texas litigation based on the same "retaliatory motive" this Court held was fatal to the CID.  ECF 41 at 9.

### B.  An Injunction Is Necessary to Prevent Duplicative Proceedings

A correct understanding of this case and the Texas litigation underscore how duplicative they are.  The FTC does not dispute that *Columbia Plaza*, *American Horse Protection Association v. Lyng*, 690 F. Supp. 40 (D.D.C. 1988), and *Rich v. Butowsky*, No. 18-cv-681 (RJL), 2020 WL 7016436 (D.D.C. Mar. 31, 2020), all permit antisuit injunctions against duplicative litigation, but instead contends only that the suits here not "genuinely duplicative."  Opp. 18-19.  A review of the factors those cases considered shows the FTC is wrong.

1. *Identity of the Parties*.  Both cases involve the FTC, on one hand, and WPATH, on the other, rendering the parties "substantially identical."  *Butowsky*, 2020 WL 7016436, at *2.  The FTC asserts that the Texas litigation includes "two parties affiliated with WPATH."  Opp. 20.  But as WPATH explained, the FTC's complaint alleges that all three operate as a "common enterprise" and refers to them as a single entity.  Mot. 16 (quoting ECF 47-7 ¶¶ 38-49).  The FTC does not

7

respond, much less explain why its choice to sue WPATH under three names defeats identity of parties. Equally misplaced is the FTC's reliance on the addition of States as plaintiffs. A rule that would permit vexatious litigants to initiate duplicative suits simply by persuading others to join their cause would invite gamesmanship (and it has here). In *Butowsky*, the enjoined party sued the "attorneys representing" the plaintiff in D.D.C. 2020 WL 7016436, at *2. That superficial difference between parties did not weigh against an antisuit injunction. Nor should the differences here.

2. *Risk of Inconsistent Adjudications*. The risk of inconsistent adjudications is acute. This Court has already issued a preliminary ruling that the FTC has acted from an improper "retaliatory motive," ECF 41 at 8, and exceeded its statutory authority, *Endocrine Soc'y*, 2026 WL 1257289, at *13. To pursue its claims in Texas, the FTC will need to ask the Northern District of Texas to reach a contrary result. Moreover, any discovery the FTC seeks from WPATH in Texas will necessarily fall within the scope of the "vast" CID that the Court enjoined the FTC from "implementing." ECF 41 at 7, 11. The FTC does not disagree, asserting only that this Court cannot "start effectively adjudicating discovery disputes in the Northern District of Texas." Opp. 27. But that is the point. This Court cannot address the significant risk that "discovery disputes" in Texas will conflict with its injunction unless it enjoins the duplicative litigation that creates that risk.

The FTC asserts that any adjudications will not be inconsistent because WPATH's defenses in Texas will challenge "*different* governmental action, the propriety of which will be measured against a different record and under different standards." Opp. at 21. But less than six weeks passed between when this Court issued the preliminary injunction and when the FTC filed its complaint in Texas. The FTC did not discover new evidence in that time. *See* pp. 5-7, *supra*.

8

Nor did the First Amendment and the reach of the FTC Act change. This Court found that WPATH made a "clear showing" that the FTC violated its First Amendment rights and had only a "tenuous path to uncovering violations." ECF 41 at 4, 7-9. Those findings cannot be reconciled with a determination that the FTC has a proper basis for asserting violations just weeks later. And the further proceedings in this case will create a risk of inconsistent adjudications at *every* procedural phase. While the FTC contends it will "argue in an upcoming motion" that this case is "moot," Opp. 21, the Court cannot prejudge that unmade motion now. Even if it could, this case plainly is not moot, because "assuming [WPATH] prevails," it is not "impossible" to grant it "any effectual relief whatever." *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019). If WPATH prevails on its request for a declaratory judgment that it is "not a 'corporation'" under 15 U.S.C. § 44, ECF 1 at 44 ¶ e, that judgment will defeat the FTC's claims in Texas.

3. *Location of Counsel Familiar with the Litigation*. The "location of counsel weighs in favor of enjoining the Texas Litigation." *Butowsky*, 2020 WL 7016436, at *2. The FTC cannot deny that all five of its attorneys in this case filed more than a thousand miles away from their offices, rather than proceed in the District where the FTC has its headquarters and where the injunction preventing their action was entered. The FTC attempts to downplay this factor as the "least significant," citing cases concerning the 28 U.S.C. § 1404 venue transfer analysis. Opp. 24-25. But *Columbia Plaza* recognized that it is "unfair" to require a party to retain additional counsel for a duplicative litigation in another forum. 525 F.3d at 628. That unfairness counsels in favor of an antisuit injunction here.

4. *How Far Advanced Each Action Is*. The relative stages of the two cases also weigh in favor of an antisuit injunction. *Butowsky*, 2020 WL 7016436, at *2. This Court has already heard a motion for a preliminary injunction and issued preliminary rulings that have substantial

9

implications for the FTC's authority to *investigate* WPATH, much less bring an enforcement action.  ECF 41 at 9-11; *Endocrine Soc'y*, 2026 WL 1257289, at *13.  The FTC urges that the preliminary injunction did not address the "ultimate issue of liability under the FTC Act."  Opp. 24.  Wrong again.  The Court held that the FTC's "wafer-thin justifications lacking evidentiary support" showed only a "tenuous path to uncovering violations."  ECF 41 at 9.  If the FTC's proof did not show a "path to uncovering violations," then it plainly does not show a basis for "liability under the FTC Act."

The FTC further contends that the "next step" in both cases is "a responsive pleading under Federal Rule of Civil Procedure 12(a)."  Opp. 24.  But the FTC has not filed a responsive pleading here, after five months of litigation, only because it sought (and WPATH did not oppose) three extensions.  ECF 18, 42 (invoking the "unusually demanding obligations of counsel's schedule over the coming weeks"), 44.  It should now be clear that the FTC used that extra time to sue WPATH in the Northern District of Texas (and thereby created the "demanding obligations" it invoked without telling WPATH or this Court its real purpose).  This Court should not ignore that the FTC delayed the progress of this case in an effort to file a duplicative suit in another forum.

5.  *Equitable Considerations*.  Finally, "equitable considerations, such as the conservation of judicial resources and deterrence of forum shopping, weigh in favor of enjoining the Texas Litigation."  *Butowsky*, 2020 WL 7016436, at *2.  It "would be a complete waste of judicial resources to allow two cases confronting the same exact issues to proceed simultaneously."  *Id.*

The FTC's "Texas Litigation 'has more than a faint semblance of forum shopping aimed at evading' this Court's adjudication" of WPATH's claims.  *Butowsky*, 2020 WL 7016436, at *2 (quoting *Am. Horse*, 690 F. Supp. at 43).  The FTC contends that the Northern District of Texas "was the natural forum in which to bring the Enforcement Action."  Opp. 10.  It asserts that

WPATH is a "Texas domestic corporation." *Id.* But WPATH has had its headquarters in Illinois since 2017. ECF 47-7 ¶ 34; ECF 1 ¶ 10. WPATH's motion explained that the Texas entity the FTC purported to serve is in "Austin, which is in the Western District of Texas," Mot. 20, not the Northern District where FTC filed. The FTC does not respond. If the FTC wanted to sue WPATH where it believed it "resides," 15 U.S.C. § 53(b), then the "natural" choice would have been the Northern District of Illinois or even the Western District of Texas, not the Northern District of Texas. The FTC asserts that it "maintains a major regional office in Texas." Opp. 10. But not a single attorney from that regional office represents the FTC in the Texas litigation. Finally, the FTC asserts that "two" declarants are Texas residents. Opp. 10. But it does not respond to WPATH's observation that, like many of the FTC's other witnesses, both traveled to D.C. to speak at the FTC's 2025 workshop (without mentioning WPATH). Mot. 19 (citing ECF 3-28 at 51, 61).

These exceedingly weak connections to Texas cannot overcome the extensive evidence of forum shopping. The other executive agency targeting transgender healthcare has also centered its investigations in the Northern District of Texas, in the same Fort Worth Division, in the same two-month period as the FTC. The Southern District of New York recently found that DOJ "strategized to concentrate legal actions related to gender-affirming medical care" in the "Northern District of Texas." ECF 47-5 at 10:19-23. After WPATH filed its motion, the Northern District of California found the same. *See Z.A. v. Blanche*, No. 26-cv-04998-PCP, 2026 WL 1907181, at *17 (N.D. Cal. July 2, 2026) ("The unavoidable conclusion is that DOJ issued its grand jury subpoena to avoid another loss and force Packard and its patients to pursue any challenge to DOJ's demands in a forum that DOJ deems friendlier. This is hardly DOJ's first such ploy."); *see also In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, 2026 WL 1392565, at *1 (finding "obvious effort to shield [DOJ's] recent investigative tactics—previously rejected by every other

11

court to review them—from this Court's review, in favor of a distant forum that DOJ deems friendly to its political positions"). The FTC asserts that DOJ is "not a party to this suit." Opp. 28. But it has no response to DOJ's prior statement that it works "very, very closely" with the FTC on issues relating to transgender healthcare for minors. ECF 3-28 at 50. Nor can it escape the obvious inference that arises from the fact that both agencies have shifted their legal actions related to gender-affirming medical care to the Northern District of Texas at exactly the same time. Those shifts are not a coincidence. They are a concerted effort to avoid scrutiny from courts, including this Court, that have found that both agencies' investigations lacked a "legitimate purpose." ECF 41 at 9; *Endocrine Soc'y*, 2026 WL 1257289, at *14.

The location of "witnesses" also weighs in favor of enjoining the Texas litigation. *Columbia Plaza*, 525 F.2d at 628. The FTC asserts that WPATH has not identified any witness in D.C. Opp. 22. Once again wrong. Leo Lewis, WPATH's Executive Director and one of its original declarants, resides here. ECF 3-2; ECF 47 ¶ 20. One of the FTC's anonymous witnesses also asserts that they "live near Baltimore and Washington." *FTC v. WPATH*, 4:26-cv-748, ECF 1-14 (N.D. Tex. June 17, 2026). While the remaining witnesses are located across the country, the FTC has already caused many to attend its 2025 workshop in D.C. ECF 3-28.

*    *    *

Not one factor weighs in favor of allowing the FTC to prosecute duplicative claims in Texas, rather than before this Court. The FTC's claims involve the same parties, raise the same issues, and have far less connection to Texas than Washington, D.C., where the FTC conducted its investigation and where its attorneys reside. And lurking behind each factor is a policy consideration the FTC refuses to address. WPATH's motion explained that, if the FTC can circumvent unfavorable decisions by filing separate cases in a district it regards as favorable,

12

different districts will repeatedly find themselves in irreconcilable conflicts.  Mot. 20.  The FTC

offers no response.  It never confronts the appearance that it has engaged in precisely the type of

collateral attack on this Court's proceedings that antisuit injunctions are designed to prevent.

### C.  The FTC Must Follow the Same Rules as Other Litigants

The FTC challenges the idea that an enforcement proceeding can ever be duplicative of a

pre-enforcement lawsuit filed by another party.  But that makes no sense.  In civil litigation, a

"federal agency plays by the same rules as private litigants, albeit with strictures upon its litigation

goals located in its statutory authority—its mission."  *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581

(5th Cir. 2008).  If the FTC's litigation is "duplicative" under the factors courts in this Circuit

consider, *see* pp. 7-12, *supra*, then the FTC must face the same consequences as other litigants.

The Sixth Circuit's decision in *Smith v. SEC* is not to the contrary.  129 F.3d 356 (6th Cir.

1997) (en banc).  The Sixth Circuit observed that suits are "duplicative" when a " 'determination

in one action leaves little or nothing to be determined in the other.' "  *Id.* at 361 (quoting *Congress*

*Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 689 (1st Cir. 1994)).  That was not true in *Smith*

because the first suit raised only the question of whether the agency had obtained certain evidence

in violation of the Wiretap Act, *not* the "ultimate issue of liability" for insider trading.  *Id.*  Here,

in contrast, a decision by this Court could leave "little or nothing to be determined" in Texas.  *Id.*

If the Court declares that WPATH is not a "corporation" under the FTC Act, does not engage in

commercial activities, or that the FTC is retaliating against WPATH for protected speech, ECF 1

at 44, ¶¶ a, d, e, then the FTC cannot prevail on its claims in Texas.  The Sixth Circuit also noted

that SEC actions could not be " 'consolidated or coordinated' with another suit not brought by the

SEC" except on "consent."  *Smith*, 129 F.3d at 361.  The FTC cites no similar statutory provision

for its actions.  The existence of such a provision, in the case of the SEC, is inconsistent with the

broad rule the FTC asserts.  If enforcement actions could never duplicate other suits, such a

13

provision would be unnecessary. Finally, the plaintiff in *Smith* had been *criminally convicted*, rendering the SEC's suit a formality that could not interfere with Wiretap Act claims. *Id.* at 362. That is far from true here.

Nor is the FTC correct to assert that enforcement actions are exempt from Federal Rule of Civil Procedure 13(a). As a threshold matter, whether a second-filed suit asserts mandatory counterclaims under Rule 13(a) is simply one factor that courts in the D.C. Circuit consider when determining whether to issue an antisuit injunction and is not alone dispositive. *Butowsky*, 2020 WL 7016436, at *1 (not mentioning Rule 13(a)); *Am. Horse*, 690 F. Supp. at 42-43 (same); *see also Nw. Airlines*, 989 F.2d at 1004 (antisuit injunctions advance "general federal policy against multiplicity of litigation embodied" in Rule 13(a)).

Regardless, the FTC has no exemption from Rule 13(a). "The Federal Rules are the default rules in civil litigation," and courts do not "lightly infer" that Congress has created any exceptions. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). "[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant." *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991). Courts have thus not hesitated to dismiss claims that the United States government fails to plead as required under Rule 13(a). *United States v. Eastport S. S. Corp.*, 255 F.2d 795, 804 (2d Cir. 1958).

The FTC denies that its claims arise from the same "transaction or occurrence" under Rule 13(a). But that argument simply rehashes the FTC's misstatements about the nature of each action. *See* pp. 3-7, *supra*. The FTC's and WPATH's claims arise from the same FTC investigation, concern the same statements in SOC8, and require consideration of the same jurisdictional issues and First Amendment rights. *See* pp. 8-9, *supra*. Those parallels easily establish the "logical

14

relationship" between claims necessary to satisfy the "flexible meaning" of "transaction." *Columbia Plaza*, 525 F.2d at 625 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The Court should thus enjoin the "wasteful expenditure of energy and money incidental to separate litigation of identical issues." *Id.* at 626.

The FTC's citations are not to the contrary. Those cases recognized that "Rule 13(a) applies generally to the United States and its agencies." *In re FTC Corp. Patterns Rep. Litig.*, 432 F. Supp. 274, 283 n.15 (D.D.C. 1977). But each involved only a "summary procedure" through which the FTC could seek "summary enforcement of its subpoena orders," which the court explicitly distinguished from a "civil suit." *Id.* at 280-81. Requiring that "summary procedure" to be implemented through a mandatory counterclaim would delay the FTC from obtaining records and interfere with its "assertion of rights under a Congressionally mandated enforcement scheme[.]" *Id.* at 284; *see also FTC v. Carter*, 464 F. Supp. 633, 639 (D.D.C. 1979) (noting "limited" role of court in proceeding to enforce an administrative subpoena); *A.O. Smith v. FTC*, 417 F. Supp. 1068, 1088 (D. Del. 1976) (application of Rule 13(a) would "eviscerate" 15 U.S.C. § 49). That rationale has no application here, where the FTC has indisputably commenced a "civil suit." The FTC engages in sleight of hand, attempting to turn a narrow exception for summary proceedings enforcing *subpoenas* into a broad exemption from Rule 13(a) for *any lawsuit* it may file. This case would be a particularly bad vehicle for recognizing such an exemption because the FTC has been enjoined from filing a summary enforcement proceeding for its CID. ECF 41 at 11. This Court should not infer a broad ability for the FTC to sue wherever it pleases when it has already found that even a narrower exercise of the FTC's statutory authority would violate WPATH's First Amendment rights.

15

Nor would treating the FTC's enforcement action as a mandatory counterclaim violate "Rule 13(a)'s maturity rule." Opp. 15. The FTC contends that a counterclaim must exist "at the time of [the Complaint's] service." *Id.* (quoting *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 568 (3d Cir. 2005)). But Rule 13(a) requires that a "pleading must state as a counterclaim any claim that— at the time of its service—the pleader has against an opposing party." Fed. R. Civ. P. 13(a). That plainly refers to the "service" of the "pleading" asserting counterclaims, not the service of the initial complaint. *Kaiser*, the decision the FTC cites, makes that clear. It quotes an earlier version of Rule 13(a) that stated that a " 'pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party.' " *Kaiser*, 399 F.3d at 568 (quoting Fed. R. Civ. P. 13(a) (2005)); *see* Fed. R. Civ. P. 13 Advisory Committee Notes (describing 2007 amendment as "intended to be stylistic only"). The FTC plainly believes that its Texas claims have matured. It has asserted them before its deadline for filing counterclaims in this suit. It has even requested extensions in order to assert those claims before its answer is due here. ECF 18, 42, 44.

The FTC next asserts that treating its claims as counterclaims would require adding the State Plaintiffs as parties in violation of Rule 13(a)(1)(B). Opp. 19. Not so. The States are not proper plaintiffs, much less necessary plaintiffs, for the FTC's claims under the FTC Act. *See* 15 U.S.C. § 45 (empowering "Commission" to take certain actions). The States are "enforcing their own consumer-protection laws." Opp. 19. WPATH does not argue that those separate claims are mandatory counterclaims and does not seek any antisuit relief against the State Plaintiffs except to the extent they are in "active concert" with the FTC. Fed. R. Civ. P. 65(d)(2)(C); *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1006 (7th Cir. 2000) ("The 'active concert or participation' clause is designed to prevent . . . the addressee of an injunction, eager to avoid its obligations,

16

[from] persuad[ing] a friendly third party to take steps that frustrate the injunction's effectiveness."). If the States wish to continue litigating with the FTC, they can do so. Mot. 17 n.2. But if they wish to proceed independently elsewhere, they can do that as well.[1]

Finally, to the extent the FTC is concerned that defendants (copying the agency's forum-shopping tactic) will race to file declaratory judgment actions to deprive it of its forum of choice, Opp. 17, the test for antisuit injunctions already provides the answer. Courts already consider "deterrence of forum shopping" when deciding whether to award antisuit injunctions. *Butowsky*, 2020 WL 7016436, at \*2; *see also Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (listing "forum-shopping" as compelling circumstance warranting departure from first-filed rule); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (declining to enforce first-filed rule where defendant knew enforcement action was "imminent" and attempted to preempt it in a favorable jurisdiction). The trouble for the FTC here, however, is that "deterrence of forum shopping" weighs heavily in favor of an antisuit injunction. WPATH filed this suit in the District where the FTC is headquartered, when no enforcement action was imminent. Only one month after this Court issued unfavorable decisions did the FTC run to another district with minimal connections to this dispute.

### D. WPATH Does Not Ask This Court to Superintend Texas Proceedings

The FTC next attacks the very idea of an antisuit injunction, asserting that "one district cannot sit in judgment of another—or superintend their proceedings as if it were some magistrate." Opp. 12. But WPATH's motion sought no such thing. It asked this Court to enjoin *the FTC* from

---

[1] WPATH, of course, disputes that any suit the State Plaintiffs might independently file would have merit, and it expressly reserves all defenses and objections to jurisdictional and other defects in the State Plaintiffs' claims it might have against such a suit. It simply acknowledges that an independent lawsuit by the State Plaintiffs would not violate an antisuit injunction entered against the FTC.

prosecuting a duplicative lawsuit. "The discretionary power of the federal court in which the first-filed action is pending to enjoin the *parties* from proceeding with a later-filed action in another federal court is firmly established." *Nw. Airlines*, 989 F.2d at 1004 (emphasis added); *see* 6 Wright & Miller Fed. Prac. & Proc. Civ. § 1418 (3d ed.) ("[I]t is within the judicial discretion of the federal court in which the first action is pending to enjoin the *parties* from proceeding with the second suit." (emphasis added)). Fifth Circuit precedent governing the action the FTC brought in Texas also provides that "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The FTC cannot seriously contend that this Court will "superintend" Texas proceedings on an issue that the Fifth Circuit explicitly commits to this Court, as the court with the first-filed action.

The FTC accuses WPATH of "outward contempt for the Northern District of Texas." Opp. 29. Nothing could be further from the truth. WPATH's brief quoted *other courts'* criticisms of *executive agencies'* efforts to forum shop based on the *perceived* favorability of the Northern District of Texas. Mot. 10, 19-20; *see also Z.A.*, 2026 WL 1907181, at *5, *17; *In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, 2026 WL 1392565, at *1. Such judicial criticisms are highly relevant to the issues presented by WPATH's motion. This Court should not "blind itself" to the federal government's retreat to a "hand-picked faraway jurisdiction in order to minimize judicial review of constitutional infirmities." *Z.A.*, 2026 WL 1907181, at *5. Nor should it permit the FTC to invoke "comity, equity, and the basic structure of the federal courts," Opp. 13, when any "risk of conflicting court orders or interference" has been "manufactured" by the FTC. *Id.*

18

**II.    An Injunction Is Necessary to Prevent Evasion of This Court's Injunction**

The Court should issue an antisuit injunction to prevent frustration of its prior orders.  The FTC does not dispute that the Court has such authority under the All Writs Act.  28 U.S.C. § 1651(a); *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 521 (4th Cir. 2020).  Nor does it deny that every discovery request the FTC serves in the Texas litigation will likely fall within the "vast swath" of documents covered by the CID, causing the same "chilling effect" this Court found "readily discernible," for the same "retaliatory motive" this Court condemned.  ECF 41 at 6-7.  The All Writs Act authorizes this Court to prevent that result and "protect its outstanding" injunction.  *SAS Inst.*, 952 F.3d at 524; *see also Am. Horse*, 690 F. Supp. at 44 (finding litigation in another district attempts "to divest this Court of the jurisdiction that it clearly has over the issues raised").

The FTC contends that discovery in Texas could *never* violate the injunction because it has withdrawn the CID the Court enjoined it from "implementing or enforcing."  Opp. 27.  That is another wrong argument for two, related reasons.  First, "implementing" means something different from "enforcing."  *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("[D]ifferent terms usually have different meanings.").  "Implement" generally means to "take steps to put into practice."  *Implement*, Merriam-Webster, https://www.merriam-webster.com/dictionary/implement (last visited July 8, 2026).  The FTC's acquisition of the same documents requested in the CID, through discovery in Texas, will put the CID "into practice" and thus violate the bar on "implementing" the CID.  Second, the FTC entirely ignores the Court's reasoning.  The Court barred the FTC from "implementing or enforcing the CID" because the FTC acted based on a "retaliatory motive" that had a "chilling effect" on WPATH's First Amendment rights.  ECF 41 at 6-7.  Discovery in Texas, mere weeks or months later, will be based on the same "retaliatory motive" and have the same "chilling effect," reinforcing that it has the effect of "implementing"

19

the CID. If the FTC is permitted to obtain the same documents, for the same motive, with the same outcome, it will render the preliminary injunction meaningless.

The Fourth Circuit's decision in *SAS Institute* decisively rebuts the FTC's argument. 952 F.3d at 524. In *SAS*, the defendant sought a foreign order that would allow it to "clawback" the punitive portion of a U.S. money judgment. *Id.* The defendant argued that it did not "relitigate, attack, or alter" the judgment, but "rather took independent action under a U.K. statute that created a counterclaim in the U.K." *Id.* (internal quotation marks omitted). But that argument "strain[ed] logic" because the counterclaim had the result of "effectively lowering the U.S. judgment." *Id.* So too here. The FTC's pursuit of discovery in Texas is not an "independent action" that leaves the Court's preliminary injunction unaltered. It has the exact effect this Court held would likely violate the First Amendment. The FTC nowhere addresses *SAS Institute* or explains why it would not support an antisuit injunction here.

## III.   WPATH Has Been, and Will Continue to Be, Irreparably Harmed by the FTC's Actions

If the FTC is permitted to continue its actions in the Northern District of Texas, WPATH will suffer grave and irreparable harm. The FTC's action in Texas threatens to impose the same chilling effect as the CID, which is a quintessential First Amendment harm. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009); ECF 41 at 10 (cleaned up) ("WPATH has made it apparent that its constitutional rights are violated"). Moreover, if the FTC presses its claims in the Northern District of Texas, WPATH will be "forced to devote resources" to litigating two separate cases. *Butowsky*, 2020 WL 7016436, at *2; *see Columbia Plaza*, 525 F.2d at 628 (noting unfairness of requiring plaintiff to litigate in two districts). The FTC will raise similar arguments to those that this Court has already ruled on, *see* pp. 8-9, *supra*, subjecting WPATH to the irreparable harm that results from a "vexatious attempt to relitigate issues already decided,"

20

*Am. Horse*, 690 F. Supp. at 44.  Worse still, WPATH is at risk of being torn between competing judicial orders on the same subjects and between the same parties.  WPATH is not asking "this Court to declare that another federal judge is incapable of resolving the claims and defenses before him."  Opp. 30.  It is asking the Court to find that *duplicative* litigation of claims properly before this Court harms WPATH.  *Butowsky*, 2020 WL 7016436, at *2; *see Columbia Plaza*, 525 F.2d at 628.

### IV.    The Balance of the Equities and Public Interest Favor WPATH

Finally, both the balance of the equities and the public interest support issuance of an antisuit injunction.  The FTC will suffer no harm because its claims "can appropriately be heard by this Court," which "cannot be construed as injury."  *Am. Horse*, 690 F. Supp. at 44; *Butowsky*, 2020 WL 7016436, at *2.  The FTC asserts that it will be "deprived of its *bargained-for* choice of forum."  Mot. 21 (quoting *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (emphasis added)).  But *Nippon* involved a contractual forum selection clause.  25 F.4th at 1002.  It should go without saying that WPATH and the FTC have no such contract.  Nor would the FTC be "impaired in enforcing its own law."  Opp. 31.  The suggestion that the FTC cannot enforce its own law by filing suit in the District of Columbia, where the FTC and federal government are headquartered, blinks reality.  The FTC is a repeat plaintiff in D.D.C., including under this administration.  It offers no reason to believe it would be harmed from suing here again.  Nor would the State Plaintiffs be harmed, because WPATH does not seek antisuit relief against them.  *See* pp. 16-17, *supra*.

The public interest also favors an antisuit injunction.  An injunction will promote the "public interest in the conservation of judicial resources and comprehensive disposition of litigation," as well as the "interests of avoiding inconsistent results and conflicting decisions."  *Am. Horse*, 690 F. Supp. at 45; *see also Butowsky*, 2020 WL 7016436, at *2.  And "there is always a

21

strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).  The FTC asserts that there is a public interest in law enforcement.  Opp. 32. But any such interest requires enforcement to comply with the First Amendment.  *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025).  The "government may not act unlawfully even in pursuit of desirable ends."  *Id.*  And any public interest in "law enforcement" by the FTC can be vindicated in this District.

## CONCLUSION

For the foregoing reasons and those set forth in WPATH's opening brief, this Court should issue an antisuit injunction barring the FTC, and anyone acting in concert with it, from litigating the claims asserted in *FTC v. WPATH*, 4:26-cv-748-O (N.D. Tex.), except as claims brought before this Court.

Dated: July 8, 2026

Respectfully Submitted,

/s/ Caleb Hayes-Deats
Abbe David Lowell [Bar No. 358651]
Caleb Hayes-Deats [Bar No. 1643213]
Schuyler J. Standley (admitted *pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com
*Attorneys for WPATH*

22