**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 26-532 (JEB)** |
| **FEDERAL TRADE COMMISSION,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

When parties seek an extraordinary remedy, they must make an extraordinary showing. After expedited briefing and a hearing yesterday, the Court finds that Plaintiff World Professional Association for Transgender Health has not made that showing in its request for a Temporary Restraining Order to block the Federal Trade Commission's enforcement action in a different forum. It therefore will deny WPATH's Motion for Temporary Restraining Order.

To obtain a TRO under Federal Rule of Civil Procedure 65(b), a movant must show that (1) it "is likely to succeed on the merits"; (2) it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the movant's] favor"; and (4) such order "is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (standard for preliminary injunction); see also Sterling Comm. Credit — Mich., LLC v. Phoenix Indus. I, LLC, 762 F. Supp. 2d 8, 13 (D.D.C. 2011) ("same substantive standard [for preliminary injunction] . . . applies" to TRO).

1

Earlier this year, WPATH sued the FTC in this Court alleging that the Commission's investigative efforts violated its First Amendment rights.  See ECF No. 1 (Compl.).  In that challenge, this Court in May partially granted WPATH's Motion for a Preliminary Injunction halting the "implement[ation] or enforc[ement of]" the "issued CID" that the FTC had served on WPATH seeking a broad range of internal records.  See ECF No. 41 (Mem. Op.) at 11.  The Court held that WPATH had shown that it was likely to succeed on the merits of its claim that the FTC issued the CID in retaliation for WPATH's constitutionally protected speech and that Plaintiff faced irreparable harm without preliminary relief.  Id. at 5–6, 9–10.  The Court declined, however, to grant WPATH broader relief, confining its holding to the facts that gave rise to the specific CID before it.  Id. at 11.

The FTC and several states then brought a separate enforcement action against WPATH in the Northern District of Texas.  FTC v. WPATH, No. 26-748, ECF No. 1 (FTC Compl.) (N.D. Tex. June 17, 2026).  They allege that WPATH violated the FTC Act's prohibitions on unfair or deceptive trade practices and false advertising.  Id. at 111. WPATH returned to this Court and sought a TRO enjoining the FTC from pursuing its Texas litigation.  See ECF No. 45 (Mot. TRO).  Plaintiff contends that the FTC's suit concerns the exact same subject matter as its previously filed pre-enforcement challenge in this Court and would frustrate the pre-existing preliminary injunction.  See ECF No. 45-1 (Mem. TRO) at 13, 21.  It asserts that the FTC should proceed in this Court, not the Northern District of Texas, and it seeks an anti-suit injunction to that effect.  Id. at 2.

One of WPATH's grounds for emergency relief is its contention that halting the FTC's progress in the Northern District of Texas is necessary to protect this Court's jurisdiction over its prior injunction.  Id. at 21.  The D.C. Circuit has held that anti-suit injunctions that "protect the

ordering court's own jurisdiction" are more readily justified than ones whose "only purpose is to destroy" another court's jurisdiction. NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, 112 F.4th 1088, 1105 (D.C. Cir. 2024) (quotation marks omitted). Where a movant can demonstrate that an anti-suit injunction is required to preserve the court's jurisdiction, then, emergency relief might well be warranted. Id. at 1106 (such injunction warranted to prevent "interfere[nce] with the district court's jurisdiction") (quotation marks omitted).

WPATH has not demonstrated such a threat. The Court sees no potential for "frustration of the preliminary injunction [it] has already issued" from the separate Texas litigation. See Mem. TRO at 13 (quotation marks omitted). However the parties characterize the ongoing action in the Northern District of Texas, it is not an attempt to enforce the CID, which the FTC has withdrawn. See also ECF No. 43 (Not. Withdrawal). And, as discussed above, this Court's only decision was confined to the CID. WPATH points out that the FTC's Texas suit attacks certain of its statements that bear a striking resemblance to the "Covered Statements" that the CID targeted, which could open it up to discovery in Texas of the very same information. See Mem. TRO at 11–13. But the Court's injunction did not protect WPATH from complying with all information-seeking processes — only the CID that the Court held was likely retaliatory. This Court retains its ability to consider future matters raised by any party. There is thus no threat to this Court's jurisdiction from different proceedings in a different court.

WPATH's remaining justification for emergency relief halting the Texas proceedings — that the FTC's suit is duplicative of litigation in this Court, id. at 13, 15 — seeks an anti-suit injunction where no jurisdictional issues are implicated. A truly compelling showing would thus be needed to warrant this Court's disrupting proceedings in a coordinate district and doing so on an emergency basis with truncated briefing and consideration.

3

WPATH has not made such a showing.  The Court is skeptical that either Federal Rule of Civil Procedure 13(a) — which requires that parties bring related claims as compulsory counterclaims in an initial suit — or the rationale for avoiding duplicative litigation applies to actions by the Government to enforce the law.  Several courts have reasoned that a plaintiff who files a pre-enforcement challenge to stop the FTC from obtaining information cannot then force the Commission to bring later enforcement actions as compulsory counterclaims in plaintiff's chosen forum.  See, e.g., FTC v. Carter, 464 F. Supp. 633, 639 (D.D.C. 1979) (FTC not required to seek to enforce subpoena "as a counterclaim to respondents' pre[-]enforcement injunctive action brought in New York"); In re FTC Corp. Patterns Rep. Litig., 432 F. Supp. 274, 283–84 (D.D.C. 1977) (expressing "hesitancy" at "treat[ing] an enforcement action as a compulsory counterclaim"); A. O. Smith v. FTC, 417 F. Supp. 1068, 1088 (D. Del. 1976) (similar); Audubon Life Ins. Co. v. FTC, 543 F. Supp. 1362, 1370 (M.D. La. 1982) (FTC Act establishes "statutory scheme" that plaintiff cannot circumvent by compelling counterclaim).

As the Court mentioned during yesterday's hearing, linking a suit by the FTC to pre-enforcement-investigation challenges risks allowing plaintiffs "to choose the forum and pace of the litigation simply by bringing pre[-]enforcement actions."  In re FTC, 432 F. Supp. at 284. Courts have been hesitant to force government agencies to comply with a counterclaim requirement that would compress their investigative timelines and force hasty litigation decisions.  Cf. Caleshu v. United States, 570 F.2d 711, 713–14 (8th Cir. 1978) (requiring tax-"collection action to be asserted as a compulsory counterclaim in a [taxpayer's] refund suit . . . .would drastically reduce the government's collection time period").  This Court is thus not prepared to conclude that an action that "involve[s] assertion of rights under a Congressionally mandated enforcement scheme" is akin to a private dispute between parties that

4

should reasonably be consolidated in one forum and time.  See In re FTC, 432 F. Supp. at 284. And before one court acts to terminate another's jurisdiction, it must be on sure footing indeed.

The Court's conclusion that immediate action is unwarranted is bolstered by WPATH's inability to show that it currently faces irreparable harm.  A temporary restraining order "is an emergency procedure that is appropriate only when an applicant is in need [of] immediate relief."  11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed. Apr. 2026 update). The harm must be "great" in its impact and "certain" in its arrival to warrant preemptive action before a court can fully ascertain the merits of the parties' positions.  Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  WPATH cites two sources of harm: violation of its First Amendment rights by the Texas litigation and monetary harm incurred by "litigating two separate cases."  Mem. TRO at 23.  To find the existence of the first harm, however, this Court must hold that being subject to a suit in the Northern District of Texas is itself a violation of WPATH's First Amendment rights — else no harm would flow.  While WPATH hinges its argument on the Court's May decision, that holding extended only to the facts before it: the lack of justification for the sweeping CID the FTC issued to WPATH.  See Mem. Op. at 7, 11.  The Court was not prepared in May to prejudge every permutation of the FTC's future actions as unconstitutionally retaliatory, and its role is not to do so now.  Without such a holding, WPATH is subject only to an entity's standard obligation to litigate once a government agency brings a claim against it — that is, no harm at all.

Nor does the cost of maintaining two suits warrant emergency relief.  The dual litigation is undoubtedly onerous to WPATH.  Preliminary relief, however, requires significant monetary loss.  Clevinger v. Advoc. Holdings, Inc., 134 F.4th 1230, 1234 (D.C. Cir. 2025) ("Mere injuries . . . in terms of money, time and energy . . . are not enough.") (quotation marks omitted).  "[T]he

5

expense and disruption of defending oneself in protracted adjudicatory proceedings is not an irreparable harm." John Doe Co. v. CFPB, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (quotation marks and alterations omitted) (company required to defend itself in separate enforcement action not irreparably injured). Nor has litigation in this Court progressed to the point where proceedings in Texas would constitute "a vexatious attempt to relitigate issues already decided." Am. Horse Protection Ass'n v. Lyng, 690 F. Supp. 40, 44 (D.D.C. 1988); cf. Rich v. Butowsky, 2020 WL 7016436, at *2 (D.D.C. Mar. 31, 2020) (irreparable harm where counsel is "forced to devote resources to litigating" second suit and parties had already "invested significant time and resources in advancing fact discovery" in first suit). As the Court noted during yesterday's hearing, WPATH is free to cite this Court's prior Opinion in any attempt to stave off discovery in the Texas action.

Without a showing that Plaintiff is likely to succeed on its Motion or faces irreparable harm, the Court ORDERS that WPATH's Motion for Temporary Restraining Order is DENIED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 10, 2026

6