IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION et al.,<br><br>*Defendants*. | Civil Action No. 1:26-CV-00532-JEB |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR DISCOVERY REGARDING POTENTIAL
VIOLATIONS OF THE PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................3

I.      THIS COURT PRELIMINARILY ENJOINED AN FTC CID..........................................3

II.     DOJ ALLEGEDLY CONDUCTS A GRAND JURY INVESTIGATION........................5

III.    THE FTC CASE TEAM INVESTIGATING WPATH DID NOT COORDINATE
        WITH OR OBTAIN RECORDS THROUGH THE ALLEGED GRAND JURY ..............7

ARGUMENT............................................................................................................................8

I.      WPATH HAS NOT RAISED SIGNIFICANT QUESTIONS REGARDING THE
        FTC'S PURPORTED NONCOMPLIANCE WITH THE PRELIMINARY
        INJUNCTION..............................................................................................................8

        A.      TO BE ENTITLED TO DISCOVERY, WPATH MUST RAISE SIGNIFICANT
                QUESTIONS THAT DOJ AIDED AND ABETTED A VIOLATION OF THE
                INJUNCTION................................................................................................ 8

        B.      THE ALLEGED GRAND JURY SUBPOENAS DID NOT AID OR ABET THE
                FTC .......................................................................................................... 10

        C.      WPATH OFFERS NO MEANINGFUL ALLEGATIONS—LET ALONE
                EVIDENCE—REGARDING THE FTC'S INVOLVEMENT IN THE ALLEGED
                GRAND JURY ........................................................................................... 13

II.     DOJ CRIMINAL INVESTIGATIONS DO NOT FALL WITHIN THE SCOPE
        OF THE PRELIMINARY INJUNCTION ....................................................................16

CONCLUSION.......................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*California Dep't of Soc. Serv's v. Leavitt*, 23 F.3d 1025 (9th Cir. 2008) .................................. 8, 9

*Damus v. Nielsen*, 328 F.R.D. 1 (D.D.C. 2018) ........................................................................... 8

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297 (2d Cir. 1999) ............................ 9

*Endocrine Soc'y v. FTC*, No. CV 26-512 (JEB), 2026 WL 1257289 (D.D.C. May 7, 2026) ...... 12

*FTC, et al., v. World Prof'l Ass'n for Transgender Health, Inc., et al.*, No. 4:26-cv-748 (N.D.
    Tex. June 17, 2026) ................................................................................................................. 3

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1 (D.D.C. 2026),
    *reconsideration denied*, No. MC 26-12 (JEB), 2026 WL 1224046 (D.D.C. Apr. 3, 2026) ..... 12

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) ........................................................................ 9

*Santini v. Herman*, 56 F. Supp. 2d 69 (D.D.C. 2006) .................................................................. 3

*United States v. Bates*, 627 F.2d 349 (D.C. Cir. 1980) .............................................................. 12

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) ................................................. 12

*United States v. Forman*, 71 F.3d 1214 (6th Cir. 1995) ............................................................ 12

*United States v. Mechanik*, 475 U.S. 66 (1986) ........................................................................ 12

*United States v. Procter and Gamble Co.*, 356 U.S. 677 (1958) ................................................ 11

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ........................................................ 3


**Statutes**

28 U.S.C. § 516 ........................................................................................................................... 15

**Rules**

Fed. R. Crim. P. 6(e)(3)(A)(i) .................................................................................................... 11
Fed. R. Crim. P. 6(e)(3)(A)(ii) ................................................................................................... 11
Fed. R. Civ. P. 65(d) .................................................................................................................... 9

**Regulations**

28 C.F.R. § 16.21 *et seq.* ............................................................................................................. 3

28 C.F.R. § 16.23(a)............................................................................................................ 3

28 C.F.R. § 16.26(a)–(b). .................................................................................................. 3

**Other Authorities**

Declaration of Lisa K. Hsiao, Acting Director, Department of Justice Enforcement &
Affirmative Litigation Branch, ECF No. 1-1, In Re: Administrative Subpoena 25-1431-032,
Case No. 4:26-mc-00006-O (N.D. Tex. 2026)............................................................. 5

FTC, FTC Sues to Stop Amare Global Holding from Misrepresenting the Health Benefits of Its
Dietary Supplements for Children and Adults (June 2, 2026), https://www.ftc.gov/news-
events/news/press-releases/2026/06/ftc-sues-stop-amare-global-holdings-misrepresenting-
health-benefits-its-dietary-supplements-children................................................... 3, 4

Mem. from the Att'y Gen. to Select Component Heads (Apr. 22, 2025),
https://www.justice.gov/ag/media/1402396/dl............................................................ 5

**INTRODUCTION**

Despite this Court's rejection of WPATH's request for injunctive relief on similar grounds, WPATH insists that it is entitled to discovery to support its baseless accusation that the FTC circumvented this Court's Preliminary Injunction by unlawfully coordinating with the DOJ to obtain documents obtained via (according to WPATH) grand jury proceedings. In short, WPATH demands a fishing expedition, but there are no fish. As the declarations filed in opposition to WPATH's Motion for a Temporary Restraining Order make clear, the FTC did not hijack criminal grand jury proceedings, nor did it violate the important principles of secrecy—backed by criminal penalties—that govern those proceedings, protecting the witnesses and subjects that appear before grand juries. WPATH provides no logical reason to think otherwise.

That WPATH continues to press this motion is even more baffling after this Court's recent denial of WPATH's Motion for a Temporary Restraining Order. In opposition to that motion, the FTC attached declarations demonstrating that WPATH's alleged coordination between the FTC and DOJ did not occur. Moreover, this Court's denial of that motion made clear that any such coordination could not have violated the preliminary injunction in any event. As the Court explained, the "injunction did not protect WPATH from complying with all information-seeking processes" with the "only" exception being the January 2026 Civil Investigative Demand issued to WPATH (the "CID"). ECF No. 58 at 3. Like the FTC's "ongoing action in the Northern District of Texas," any DOJ grand jury proceedings would not be "an attempt to enforce the [FTC's] CID," and "this Court's only decision was confined to the CID." *Id.* The injunction did not go even further by shielding third parties from subpoenas issued by a different third party in grand jury proceedings in another federal court. Thus, WPATH's motion is doubly baseless—WPATH fails to provide any reason to think its allegations might be true (indeed, the FTC's declarations have shown them

to be false), and the asserted Texas grand jury subpoenas could not possibly have violated this Court's Preliminary Injunction in any event.

WPATH's arguments to the contrary are meritless. To support its assertion that there are "significant questions" as to whether government attorneys have committed criminal offenses, WPATH notes that the FTC and DOJ have—as is entirely appropriate and permissible—worked together on civil matters. This is not evidence that a grand jury proceeding has been subverted. Next, WPATH cherry-picks coincidences of timing and subject matter that it finds suspicious. It asserts that one (or perhaps two) grand jury subpoenas were issued the day before this Court issued its Preliminary Injunction. Unless WPATH means to imply that this Court itself coordinated with DOJ prosecutors, that is plainly a coincidence. WPATH similarly claims that another grand jury subpoena issued the day before the FTC filed its complaint against WPATH. That subpoena purportedly directed the production of documents by July 15, 2026, well after the FTC filed the complaint. Again, WPATH offers no explanation for how this happenstance is evidence that the DOJ aided and abetted the FTC in a violation of this Court's Preliminary Injunction. WPATH also claims that an alleged grand jury subpoena to a WPATH member and the FTC's CID requested the same documents. That is largely untrue, but regardless it is unsurprising that independent inquiries into the same general issue would yield similar document requests. Finally, WPATH points to the fact that the alleged grand jury subpoenas issued from the Northern District of Texas, where an earlier public DOJ action to enforce an administrative subpoena was also filed. But it is entirely irrelevant to the FTC where the DOJ may choose to convene its grand jury proceedings, and WPATH offers no explanation as to why this is evidence that the DOJ grand jury proceedings aid and abet the FTC in circumventing this Court's injunction.

2

WPATH's Motion (ECF No. 46) should be denied.[1]

## BACKGROUND

### I.    THIS COURT PRELIMINARILY ENJOINED AN FTC CID

WPATH is an organization founded and incorporated in Texas, and its membership consists primarily of clinicians and others that sell pediatric medical transition services or financially benefit from their purchase, including surgeons, endocrinologists, psychiatrists, and pediatricians. *See* ECF No. 1 at ¶ 6, *FTC, et al., v. World Prof'l Ass'n for Transgender Health, Inc., et al.*, No. 4:26-cv-748 (N.D. Tex. June 17, 2026) (the "Enforcement Action"). WPATH is an active Texas domestic corporation and has a registered office and a corporate registered agent in Texas. *Id.* at ¶ 34.

In January 2026, the FTC issued the CID to WPATH to investigate whether it "ha[s] made, or assisted others in making, false or unsubstantiated representations or engaged in unfair practices in connection with the marketing and advertising of Pediatric Gender Dysphoria Treatment." ECF No. 40 at 2. Prior to issuing the CID to WPATH, the FTC had been investigating potential violations of the FTC Act by WPATH and others, including through holding a public workshop and public comment period. The FTC has a long history of investigating deceptive claims that take advantage of parents looking for products and services to help their children.[2]

---

[1] Should the Court authorize WPATH to serve third-party discovery on DOJ, WPATH would nonetheless need to comply with the Department's Touhy regulations, 28 C.F.R. § 16.21 *et seq*. *See also United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Under those regulations, DOJ employees are prohibited from disclosing official information without considering the factors in 28 C.F.R. § 16.26(a)–(b). 28 C.F.R. § 16.23(a). Compliance with those regulations is a condition precedent to obtaining official information from the Department of Justice. *E.g.*, *Santini v. Herman*, 56 F. Supp. 2d 69, 72 (D.D.C. 2006).

[2] *See, e.g.*, FTC, FTC Sues to Stop Amare Global Holding from Misrepresenting the Health Benefits of Its Dietary Supplements for Children and Adults (June 2, 2026), https://www.ftc.gov/news-events/news/press-releases/2026/06/ftc-sues-stop-amare-global-

On February 18, 2026, WPATH filed suit in this Court, claiming that the FTC's investigation constituted retaliation in violation of its First Amendment rights. ECF No. 1. The focus of the complaint was the CID. *E.g.*, *id.* at ¶¶ 3–4, 113–26, 132, 139, 147, 152. WPATH then moved for a preliminary injunction, again focusing on the CID. ECF No. 3 at 7–8, 20–23. Its primary request was "a preliminary injunction barring Defendants from implementing or enforcing the Civil Investigative Demand." *Id.* at 39. WPATH also added, though, a broader request for a general order barring the FTC from "taking further actions" against WPATH. *Id.* As part of this filing, WPATH filed the CID on the docket in this matter, thereby making it available to the public. *See* ECF No. 1-1.

This Court granted WPATH's motion, but only in part. *See* ECF No. 41. The Court found that WPATH was likely to succeed on the merits of its First Amendment claim with respect to the CID that had been issued. *Id.* at 8–9. Accordingly, the Court enjoined the FTC from "implementing or enforcing its issued CID." *Id.* at 11.

But the Court "den[ied] the Motion to the extent it seeks further relief." *Id.* In particular, the Court did not enjoin the Commission from investigating WPATH—despite WPATH's request for "a broader injunction." *Id.* Indeed, the Court explicitly noted that the FTC "remains free to deploy other investigative tools" pursuant to its "interest in enforcing the law." *Id.* The Court further reiterated that it "only enjoin[ed] the FTC from further action regarding the CID." *Id.*; *see also* ECF No. 45-1 (WPATH describing the preliminary injunction as "barring the FTC from enforcing or implementing a civil investigative demand [] it had served on WPATH"). Thus, at multiple turns, this Court made express that it rejected WPATH's request for broad relief and that

---

holdings-misrepresenting-health-benefits-its-dietary-supplements-children (alleging that Amare misrepresented to parents and other consumers that its dietary supplements marketed for children and adults could treat or cure health conditions such as depression, anxiety and ADHD).

the Commission remained free both to continue investigating WPATH and to pursue relief against WPATH under the FTC Act if appropriate. The Court confirmed the scope of its Preliminary Injunction in its Memorandum Opinion and Order of July 10, 2026, explaining that "this Court's only decision was confined to the CID." ECF No. 58 at 3. The Preliminary Injunction "did not protect WPATH from complying with all information-seeking processes — only the CID." *Id.* That remains true even where those other processes seek "the very same information." *Id.* The injunction reached the challenged CID, and no further.

## II.    DOJ ALLEGEDLY CONDUCTS A GRAND JURY INVESTIGATION

DOJ has been investigating potential violations of federal law, including the Food, Drug, and Cosmetic Act (FDCA), in connection with the provision of medical transition procedures to minors since at least April 2025. *See* Mem. from the Att'y Gen. to Select Component Heads (Apr. 22, 2025).[3] According to publicly available court filings, the investigation into "potential FDCA violations in the provision of gender-related care for minors" expanded into a criminal investigation "handled by several veteran, career prosecutors with many decades of experience in healthcare fraud and FDCA enforcement," supported by FBI "agents and analysts" and agents from the FDA Office of Criminal Investigations. Declaration of Lisa K. Hsiao, Acting Director, Department of Justice Enforcement & Affirmative Litigation Branch, ECF No. 1-1, *In Re: Administrative Subpoena 25-1431-032*, Case No. 4:26-mc-00006-O (N.D. Tex. 2026).

WPATH asserts that three grand jury subpoenas were issued at the request of a federal prosecutor based in Fort Worth, Texas. *See* ECF No. 47 at ¶ 7; ECF No. 47-1 at 2, 8; ECF No. 47-6 at 2–3. The subpoenas sought records from two hospitals and one individual, none of whom are

---

[3] Available at https://www.justice.gov/ag/media/1402396/dl.

parties to this suit. *See id.* The FTC's understanding of the alleged subpoenas is based exclusively on WPATH's public filings.

Specifically, WPATH asserts that the first grand jury subpoena was issued on May 6, 2026, by the United States District Court for the Northern District of Texas with subpoena returns directed to a United States Food and Drug Agency criminal investigator. ECF No. 47-1 at 2, 8. According to WPATH's filings, the subpoena sought records from a California children's hospital regarding pediatric medical interventions performed "for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's biological sex." *Id.* at 2, 5–6. The subpoena requested seventeen different categories of records related to those procedures. One such category requested the hospital's communications with WPATH or its members related to those procedures. *Id.* at 4–8. The subpoena directed that records be produced on June 10, 2026. *Id.* at 2.

WPATH asserts that a second grand jury subpoena was served on NYU Langone Hospital sometime before June 1, 2026. ECF No. 47 at ¶ 7. WPATH does not specifically discuss this subpoena in its Memorandum or attach it as an exhibit. WPATH nevertheless implies that this subpoena is substantially the same as the first subpoena. *See* Mem. 1, 5–6.

WPATH asserts that a third grand jury subpoena was issued on June 16, 2026, by the United States District Court for the Northern District of Texas, with subpoena returns again directed to a United States Food and Drug Agency criminal investigator. ECF No. 47-1 at 2, 8. This subpoena was issued to an unnamed WPATH member seeking seven categories of records. Mem at 3; ECF No. 47-6 at 3. Two of those categories related to WPATH. Specifically, the subpoena sought "all communications with any WPATH member" and "all documents and communications related to any WPATH publication, including WPATH SOC 8." ECF No. 47-6 at 3. The subpoena directed that records be produced on July 15, 2026. *Id.* at 2.

6

### III.    THE FTC CASE TEAM INVESTIGATING WPATH DID NOT COORDINATE WITH OR OBTAIN RECORDS THROUGH THE ALLEGED GRAND JURY

While Texas grand jury proceedings related to pediatric medical transition treatments were apparently underway, an FTC case team was investigating WPATH related to its statements concerning similar procedures, culminating in the filing of a complaint against WPATH on June 17, 2026. *See* ECF No. 47-7 at 119. But the members of the FTC case team did not coordinate with the Department of Justice with respect to the grand jury proceedings. ECF No. 54-1, Declaration of R. Cooper Vaughan at ¶ 4; ECF No. 54-2, Declaration of Michael Dingman at ¶ 4; ECF No. 54-3, Declaration of Levi W. Swank at ¶ 4; ECF No. 54-4, Declaration of Hans Clausen at ¶ 4; ECF No. 54-5, Declaration of Glenna Goldis at ¶ 4; ECF No. 54-6, Declaration of Jonathan Cohen at ¶ 4. Indeed, to the declarants' knowledge, the FTC did not coordinate with the Department of Justice to obtain *any* information from WPATH that the FTC had sought to obtain through the CID. *See* ECF No. 54-1, Declaration of R. Cooper Vaughan at ¶ 3; ECF No. 54-2, Declaration of Michael Dingman at ¶ 3; ECF No. 54-3, Declaration of Levi W. Swank at ¶ 3; ECF No. 54-4, Declaration of Hans Clausen at ¶ 3; ECF No. 54-5, Declaration of Glenna Goldis at ¶ 3; ECF No. 54-6, Declaration of Jonathan Cohen at ¶ 4. Moreover, in response to WPATH's baseless allegations, the FTC asked the Investigator and records custodian assigned to the WPATH investigation to search the case team's files for documents that appeared to have been produced as a result of grand jury process. Ex. 1, Declaration of Jonathan Bugbee at ¶¶ 9–12. He found none. *Id.* at ¶ 15. Moreover, as records custodian, Investigator Bugbee would normally know what documents the agency received or expected to receive from outside sources, and Investigator Bugbee was not aware of any nor does he expect any related to grand jury subpoenas. *Id.* at ¶¶ 16–17.

**ARGUMENT**

**I.   WPATH HAS NOT RAISED SIGNIFICANT QUESTIONS REGARDING THE FTC'S PURPORTED NONCOMPLIANCE WITH THE PRELIMINARY INJUNCTION**

**A.   TO BE ENTITLED TO DISCOVERY, WPATH MUST RAISE SIGNIFICANT QUESTIONS THAT DOJ AIDED AND ABETTED A VIOLATION OF THE INJUNCTION**

WPATH acknowledges that to obtain discovery in aid of enforcing a previously issued preliminary injunction, it must present evidence raising "significant questions" regarding a violation of this Court's Preliminary Injunction. Mem. at 1 (citing *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018)); see *California Dep't of Soc. Serv's v. Leavitt*, 23 F.3d 1025, 1034 (9th Cir. 2008) (evaluating "the kind and amount of evidence of noncompliance required to justify discovery"). Case law makes clear, however, that the questions must indeed be "significant," not the pure conjecture that WPATH offers here.

In *Damus*, the plaintiffs alleged that the government was violating an agency directive regarding granting parole requests, as evidenced by a shift from 90% of requests being granted to under 10% being granted. *Damus*, 328 F.R.D. at 3. This Court granted a preliminary injunction requiring the government to comply with the agency directive. *Id.* Grant rates remained very low even after the injunction, and the government "ma[de] no attempt to argue that Plaintiffs ha[d] not raised a significant question as to compliance" with the preliminary injunction. *Id.* Accordingly, this Court found that the plaintiffs had "raised significant questions of noncompliance" and authorized discovery in aid of enforcing its judgment. *Id.* at 3–5.

In doing so, this Court cited *California Department of Social Services v. Leavitt*, which similarly granted a request for limited discovery after finding that the evidence raised "significant questions regarding noncompliance." 523 F.3d at 1034. There, a California agency had been

8

ordered to apply new benefit eligibility criteria going forward and to conduct a review to rectify past errors. *Id.* at 1028. The court found "significant questions regarding noncompliance" where an attorney reported that she had personally handled at least twelve cases where old eligibility requirements were applied in violation of the injunction, and where the California agency itself admitted that it did not have the data that would have been necessary to conduct the review ordered by the injunction. *Id.* at 1035. In brief, "significant" is not an empty modifier, but entails substantial and unrebutted questions supported by evidence.

Moreover, it is not enough for WPATH to raise significant questions that DOJ unilaterally and independently engaged in conduct that would have been covered by the Preliminary Injunction if the FTC had itself engaged in it. True, under Rule 65(d), injunctions bind "the parties' officers, agents, servants, employees, and attorneys." But the purpose of this provision is so that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). That is a limiting principle on an injunction's ability to bind third parties. Courts "may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Id.* at 13. Thus, even where entities are closely related and share attorneys, an injunction purporting to reach the nonparty entities is "not authorized by Rule 65(d)" where the injunction reaches the non-parties' actions "that do not aid or abet the federal defendants in violating the injunctions entered against them." *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 303–04 (2d Cir. 1999). That is, it is not enough to show that an entity associated with the enjoined party independently undertook acts that the party was enjoined from doing. Rather, as WPATH concedes, to fall within an injunction's scope, the third party's actions must

9

"aid[ ] or abet[ ]" the enjoined party's violation of the injunction. Mem. at 7 (quotation omitted). That plainly did not happen here.

### B.  THE ALLEGED GRAND JURY SUBPOENAS DID NOT AID OR ABET THE FTC

To start with, WPATH must first refute the substantial evidence showing that the DOJ did not, through any alleged grand jury proceedings, aid or abet the FTC's investigation—much less aid or abet a violation of the Preliminary Injunction. It is clear from the case team's declarations that this did not occur. Moreover, the reasonable inference from the documents that WPATH itself relies upon is that the grand jury subpoenas are in aid of a DOJ criminal investigation into FDCA violations, not the FTC's civil investigation. Further, WPATH must overcome the structural facts that make such coordination implausible here, notwithstanding the substantial evidence showing that no such coordination occurred. DOJ attorneys could face serious criminal repercussions for violating grand jury secrecy rules, and they are entitled to a presumption of regularity that they did not violate those rules. And there is simply no plausible reason for the FTC to induce DOJ attorneys to violate grand jury secrecy requirements to obtain information from third parties—information that it could not plausibly use in its suit against WPATH without revealing its source—when the FTC can simply obtain that information (to the extent it is material) through ordinary civil discovery.

Indeed, the evidence demonstrates that the FTC attorneys and staff investigating WPATH did not coordinate with DOJ regarding any grand jury proceedings. The FTC has provided declarations to that effect from the attorneys leading the WPATH investigation, including the FTC Bureau of Consumer Protection's Chief Litigation Counsel (now Acting Deputy Director) Jonathan Cohen. *See* ECF No. 54-1, Declaration of R. Cooper Vaughan at ¶ 4; ECF No. 54-2, Declaration of Michael Dingman at ¶ 4; ECF No. 54-4, Declaration of Hans Clausen at ¶ 4; ECF

10

No. 54-5, Declaration of Glenna Goldis at ¶ 4; ECF No. 54-6, Declaration of Jonathan Cohen at ¶ 4. The FTC provided a similar declaration from a member of the Bureau's appointed leadership, Deputy Director for Litigation Levi W. Swank. ECF No. 54-3, Declaration of Levi W. Swank at ¶ 4. And the FTC Investigator and records custodian assigned to the WPATH investigation conducted a diligent search of the FTC's investigative files and found no evidence of materials related to the alleged grand jury subpoenas. Ex. 1, Declaration of Jonathan Bugbee at ¶¶ 9–12, 15–17. That should end the inquiry.

Even without these declarations, it should have been evident to WPATH that its motion was unfounded simply from reviewing the evidence that WPATH attached to that motion. Namely, the subpoenaed documents are returnable to a criminal investigator with the Food and Drug Administration. ECF No. 47-1 at 2; ECF NO. 47-6 at 2. As grand jury materials can only be disclosed to investigators who are necessary to the criminal investigation, *see* Fed. R. Crim P. 6(e)(3)(A)(ii), the reasonable inference from the face of the subpoenas is that they relate to a criminal FDCA investigation conducted by DOJ, *see supra* Background § II, not an FTC investigation.

Beyond the clear evidence rebutting WPATH's claims, those claims are presumptively untrue. Grand jury proceedings are protected by important principles of secrecy. *See United States v. Procter and Gamble Co.*, 356 U.S. 677 (1958) (noting "the long established policy that maintains the secrecy of the grand jury in federal courts"). Department of Justice criminal prosecutors are privy to grand jury materials to the extent necessary to perform their duties. Fed. R. Crim. P. 6(e)(3)(A)(i). But absent a court order or exceptions not applicable here, prosecutors may not share that information with other federal agencies—or even with DOJ attorneys not

11

involved in the criminal case. *See United States v. Bates*, 627 F.2d 349, 351 (D.C. Cir. 1980); *United States v. Forman*, 71 F.3d 1214 (6th Cir. 1995).

The "presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926). The grand jury is also "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment). DOJ prosecutors are thus presumed to have not shared information regarding any matter before the grand jury with attorneys outside the prosecution team. *Id.*; *Chemical Foundation, Inc.*, 272 U.S. at 14–15; *see also Endocrine Soc'y v. FTC*, No. CV 26-512 (JEB), 2026 WL 1257289, at *12 (D.D.C. May 7, 2026) (acknowledging the "presumption of regularity accorded to prosecutorial decisionmaking"). Thus, for WPATH to raise significant questions about the FTC's involvement in the grand jury proceedings, it must "rebut[]" the presumption of regularity attached to a grand jury's proceeding." *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 10 (D.D.C. 2026), *reconsideration denied*, No. MC 26-12 (JEB), 2026 WL 1224046 (D.D.C. Apr. 3, 2026). "[T]hat presumption cannot be rebutted by mere speculation or conjecture." *Id.* But that is all WPATH offers here.

Nor does WPATH offer any motive or reason for the FTC to obtain grand jury records regarding a hospital or provider's communications with WPATH. The FTC would not be able to use the records without revealing significant misconduct. Moreover, the records would have come too late to use in drafting the FTC's complaint against WPATH, and after filing the complaint the FTC can simply obtain material records through civil discovery. The FTC filed its Complaint against WPATH on June 17, 2026. Mem. at 3. The first alleged grand jury subpoena that WPATH

12

references included a request for communications between a single hospital and WPATH, directing that the production be made on June 10, 2026. ECF No. 47-1 at 2, 4, 8. WPATH cannot credibly argue that some plan existed for—in the course of seven days—an FDA investigator to process the subpoena returns (which called for seventeen categories of information, only one of which referenced WPATH) before surreptitiously and illegally passing that information to the FTC, the FTC to then review that information and include it in its complaint, and all parties to somehow conceal that the clearly identifiable information had been obtained illegally. WPATH's argument is even less plausible with respect to the second grand jury subpoena it references, which directed that a single practitioner's records be produced to the FDA criminal investigator 28 days *after* the FTC filed its complaint against WPATH. *See* ECF No. 47-6 at 1. And as WPATH itself notes, after filing its complaint, the FTC can issue discovery requests through that suit, ECF No. 45-1 at 1, and this Court has already explained that there is "no potential for" such requests to frustrate the Preliminary Injunction, ECF No. 58 at 3.

### C.  WPATH OFFERS NO MEANINGFUL ALLEGATIONS—LET ALONE EVIDENCE—REGARDING THE FTC'S INVOLVEMENT IN THE ALLEGED GRAND JURY

In the face of this clear evidence that the FTC did not subvert alleged DOJ grand jury proceedings to violate the Preliminary Injunction, WPATH offers no affirmative evidence to the contrary. Instead, WPATH falls victim to apophenia, drawing unwarranted inferences from irrelevant, unrelated, and coincidental facts.

First, WPATH claims that the "timing" of the grand jury subpoenas "raise[s] questions about whether [the FTC and DOJ] have intentionally coordinated" with respect to the grand jury subpoenas. Mem. 8. The first grand jury subpoena, as WPATH repeatedly notes, was allegedly issued one day before this Court issued the Preliminary Injunction. Mem. 3, 5. WPATH does not

elaborate on why that raises any substantial questions of coordination between the FTC and DOJ. There is no allegation that the FTC had some inside knowledge that this Court would make its ruling the next day. WPATH raises a similar argument as to a second grand jury subpoena, which it alleges was issued one day before the FTC filed its complaint against WPATH. Mem. 8. Again, WPATH offers no explanation for why this timing is evidence of coordination. WPATH itself points to a string of DOJ administrative subpoenas going back to 2025. *See* ECF No. 45-1 at 5. It is unremarkable that where the DOJ is regularly taking investigative actions in an ongoing matter, some of those actions will happen to occur around the same time as the FTC's actions. And WPATH offers no plausible reason for the FTC and DOJ prosecutors to coordinate the filing of the Enforcement Action with the timing of a grand jury subpoena to a practitioner.

Second, WPATH points to the location where the grand jury has allegedly been convened and where the FTC has filed suit. But WPATH offers no argument in this motion for why the overlap in courts is evidence that "DOJ's activities are attributable to the FTC." Mem at 1. First, it is entirely possible that grand jury proceedings in other courts have sought records related to WPATH, and WPATH has simply only become aware of these subpoenas (or chose to only attach these two subpoenas to its motion). Second, by WPATH's assertion, DOJ both filed suit to enforce an administrative subpoena in the Northern District of Texas and convened a grand jury in the Northern District of Texas *before* the FTC filed its Complaint there, and indeed before this Court issued its Preliminary Injunction. Mem. 5. The subpoenas were allegedly issued at the request of a Fort Worth-based prosecutor. ECF No. 41-1 at 2; ECF No. 47-6 at 2. WPATH offers no reason to believe DOJ picked that location at FTC's behest or to assist the FTC in any way.

Third, WPATH points to interactions between the FTC and DOJ that are separate from any grand jury proceedings. WPATH references a 2025 statement by a Department of Justice official

14

who told conference attendees: "If you guys have any questions about how to get a hold of us, you can reach out to any of the FTC staff who we work very, very closely with, but please continue to reach out to us." *See* Mem. 1, 5, 8, citing ECF No. 3-28 at 50. Nothing about this statement implies that DOJ prosecutors illegally coordinated with the FTC regarding grand jury proceedings initiated in 2026.

Fourth, WPATH asserts that the grand jury subpoenas sought "many of the exact same documents" that the FTC's CID requested. Mem. 6. That is not the case. The CID sought records from WPATH, while the grand jury subpoenas sought records from a hospital and a practitioner. *See* ECF Nos. 3-8, 47-1, 47-6. Although it is possible that there may be some overlap in records that were in the custody of WPATH and records in the custody of the grand jury subpoena recipients, WPATH offers no reason to think that is true to any significant degree. And although WPATH again includes a chart comparing the FTC's own civil complaint with the FTC's own CID, Mem. 4, it makes no such comparison between the grand jury subpoenas and the FTC's CID. That both the FTC and DOJ sought records generally relating to WPATH in investigations related to pediatric medical transition procedures is unsurprising given WPATH's prominent role in promoting those procedures, and that in no way indicates that the grand jury subpoenas were issued to aid and abet the FTC in a violation of this Court's Preliminary Injunction.

WPATH then notes that attorneys for the Department of Justice have appeared on behalf of the FTC in this case. Mem. 1, 7–8; *see also* ECF No. 32 at 58 (listing attorneys from the "United States Department of Justice Civil Division" appearing on behalf of all defendants). It is perfectly ordinary for DOJ's civil attorneys to represent government agencies and government officials when they are sued, as they have done here. *See* 28 U.S.C. § 516. But this suit is not the FTC's investigation into WPATH. In sum, that DOJ attorneys have appeared in this suit on behalf of the

15

FTC is neither remarkable nor suspect, and it does not come close to raising "significant questions" that the FTC used criminal grand jury proceedings to violate this Court's Preliminary Injunction. Nor do any of the other arguments that WPATH offers.

Finally, WPATH shifts focus to arguing that "the FTC's lawsuit in Texas has no purpose other than to circumvent the Court's preliminary injunction" by obtaining the information sought by the CID through civil discovery. Mem. 8–9. And it again attaches a chart comparing information sought by the FTC's CID with the deceptive statements alleged by the FTC in its complaint in the Enforcement Action. Mem. 4. But this Court has already rejected WPATH's argument, ECF No. 58 at 3, and similarities between the FTC's CID and the FTC's civil complaint are irrelevant to WPATH's grand jury accusations. The existence of the Enforcement Action instead proves the absurdity of WPATH's argument here—it defies logic that the FTC would attempt to somehow use criminal grand jury proceedings to obtain information that WPATH itself asserts can be sought through ordinary civil discovery in the Enforcement Action.

## II.     DOJ CRIMINAL INVESTIGATIONS DO NOT FALL WITHIN THE SCOPE OF THE PRELIMINARY INJUNCTION

This Court should also deny WPATH's Motion for the independent reason that the alleged grand jury subpoenas could not possibly have violated the Preliminary Injunction, regardless of who is responsible for them, since the Preliminary Injunction did not enjoin grand jury investigations. Thus, WPATH's argument that it needs to obtain discovery to enforce the Preliminary Injunction with respect to the grand jury subpoenas, including by deposing a federal prosecutor regarding secret grand jury proceedings, fails.

As the Court made clear in its Memorandum Opinion and Order of July 10, 2026, "this Court's only decision was confined to the CID." ECF No. 58 at 3. The Preliminary Injunction "did not protect WPATH from complying with all information-seeking processes — only the CID." *Id.*

16

That is the case even where the other requests for information seek "the very same information." *Id.* Thus, this Court held that the Preliminary Injunction does not bar the FTC from seeking the information covered by the CID through discovery requests in a separate civil proceeding. *See id*. Given that holding, the Preliminary Injunction could not possibly extend even further to cover subpoenas issued in a separate criminal proceeding by a different government agency that does not seek information from WPATH at all, but instead requests information from third parties.

Moreover, DOJ grand jury investigations are not only outside the scope of the Preliminary Injunction, but also outside the scope of WPATH's Complaint. WPATH did not name DOJ as a defendant in this matter. Neither the Complaint nor the Motion for a Preliminary Injunction sought relief against any DOJ criminal investigations. In issuing its injunction, the Court did not purport to address any DOJ investigation. It is difficult to see how this Court could "enforce" its limited preliminary injunction by enjoining Texas criminal grand jury proceedings. WPATH's argument thus fails at every step.

## CONCLUSION

For the foregoing reasons, the Court should deny WPATH's motion for discovery.

Dated: July 28, 2026

Respectfully submitted,

OF COUNSEL:

LUCAS CROSLOW
  *General Counsel*
ALEX POTAPOV
  *Deputy General Counsel*
ETHAN D. BECK
  *Counsel to the General Counsel*

CHRISTOPHER MUFARRIGE
  *Director*, Bureau of Consumer Protection
KATHERINE WHITE
  *Principal Deputy Director*, Bureau of
Consumer Protection

Jonathan Cohen
  *Acting Deputy Director*
  *Bureau of Consumer Protection*
District of Columbia Bar No. 48344

*/s/ R. Cooper Vaughan*
R. Cooper Vaughan
  *Senior Counsel to the Director*
Virginia State Bar No. 92580

FEDERAL TRADE COMMISSION
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 468-9914
Fax: (214) 953-3079
E-mail: RVaughan@FTC.gov

*Attorneys for Defendants*

18