IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, et al., <br><br> *Defendants*. | Case No. 1:26-cv-0532 (JEB) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

      A.     Statutory Background. ............................................................................ 2

      B.     The FTC Begins to Investigate Pediatric Gender Dysphoria Treatment and Issues a CID to WPATH. ................................................................... 3

      C.     WPATH Files This Pre-Enforcement Challenge to the CID and Seeks a Preliminary Injunction. ..................................................................... 5

      D.     This Court Preliminarily Enjoins the FTC from Enforcing the CID to WPATH. ............................................................................................. 7

      E.     The FTC Files an Enforcement Action in the U.S. District Court for the Northern District of Texas and Withdraws the CID. .............................. 7

LEGAL STANDARDS ....................................................................................................9

ARGUMENT ..................................................................................................................10

I.     The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction. ...............10

      A.     The Complaint's Claims Are Moot Because the FTC Has Withdrawn the CID and Disclaimed Any Intent to Enforce It. ...................................... 10

      B.     The Complaint Features no Meaningful Allegations Beyond Those Pertaining to the Withdrawn CID. ......................................................... 12

      C.     No Exception to Mootness Applies. ..................................................... 19

II.    The Complaint Should Be Dismissed For Failure to State a Claim. ...............................22

      A.     The Complaint Fails to Plausibly Allege a First Amendment Retaliation Claim (Count I). ............................................................................. 23

      B.     The Complaint's Other Claims Also Fail as a Matter of Law (Counts II–IV). ............................................................................................... 26

            1.     The Complaint Does Not State a Claim for Viewpoint Discrimination (Count II). ......................................................26

            2.     The Complaint Does Not State a First Amendment Claim for Violation of WPATH's Speech or Association Rights (Count III). .........28

3.      The Complaint Does Not State a First and Fourth Amendment
        "Improper Investigation" Claim (Count IV)...............................................29

CONCLUSION...........................................................................................................31

## TABLE OF AUTHORITIES

**CASES**

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
  827 F.3d 100 (D.C. Cir. 2016) ................................................................ 11, 12, 13, 16

*Al-Quraan v. 4115 8th St. NW, LLC*,
  113 F. Supp. 3d 367 (D.D.C. 2015) ....................................................................... 22

*Am. Forest Res. Council v. Williams*,
  96 F.4th 417 (D.C. Cir. 2024) ................................................................................ 21

*Amacher v. City of Tullahoma*,
  179 F.4th 999 (6th Cir. 2026)................................................................................. 24

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ............................................................................................... 28

*Aref v. Lynch*,
  833 F.3d 242 (D.C. Cir. 2016) ............................................................................... 23

*Belmont Abbey Coll. v. Sebelius*,
  878 F. Supp. 2d 25 (D.D.C. 2012) ......................................................................... 14

*Blue Ribbon Quality Meats, Inc. v. FTC*,
  560 F.2d 874 (8th Cir. 1977)................................................................................... 17

*California Dental Ass'n v. FTC*,
  526 U.S. 756 (1999) ............................................................................................... 17

*CFTC v. Board of Trade*,
  701 F.2d 653 (7th Cir. 1983)................................................................................... 19

*Citizens for Resp. & Ethics in Wash. v. U.S. SEC*,
  858 F. Supp. 2d 51 (D.D.C. 2012) ......................................................................... 19

*City of Houston v. Dep't of Hous. & Urb. Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) ............................................................................... 14

*Conyers v. Reagan*,
  765 F.2d 1124 (D.C. Cir. 1985) ............................................................................. 18

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) ............................................................................... 21

*Diffenderfer v. Central Baptist Church, Inc.*,
  404 U.S. 412 (1972) ............................................................................................... 16

*DSCC v. Trump*,
  __ F. Supp. 3d __, 2026 WL 1487833 (D.D.C. 2026) ........................................... 14

*Endocrine Soc'y v. FTC*,
  __ F. Supp. 3d __, 2026 WL 1257289 (D.D.C. 2026) ............................................. 7

*Exxon Mobil Corp. v. Healey*,
  28 F.4th 383 (2d Cir. 2022) ................................................................................... 15, 16, 17

*FBI v. Fikre*,
  601 U.S. 234 (2024) ...................................................................................................... 11

*Friends of Animals v. Bernhardt*,
  961 F.3d 1197 (D.C. Cir. 2020) .................................................................................... 12

*FTC v. Brown Shoe Co.*,
  384 U.S. 316 (1966) ........................................................................................................ 2

*FTC v. Claire Furnace Co.*,
  274 U.S. 160 (1927) ...................................................................................................... 29

*FTC v. Ken Roberts Co.*,
  276 F.3d 583 (D.C. Cir. 2001) ........................................................................................ 2

*FTC v. Sperry & Hutchinson Co.*,
  405 U.S. 233 (1972) ........................................................................................................ 2

*FTC v. Standard Am., Inc.*,
  306 F.2d 231 (3d Cir. 1962) .......................................................................................... 31

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ...................................................................................................... 31

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977) ................................................................................. 30, 31

*Gen. Fin. Corp. v. FTC*,
  700 F.2d 366 (7th Cir. 1983) .................................................................................... 27, 29

*Google LLC v. United States*,
  No. 1:23-mc-67, 2025 WL 778150 (D.D.C. Feb. 25, 2025) .......................................... 30

*Gordon v. Lynch*,
  817 F.3d 804 (D.C. Cir. 2016) ...................................................................................... 20

*Herbert v. Nat'l Acad. of Sciences*,
  974 F.2d 192 (D.C. Cir. 1992) ...................................................................................... 10

*In re Civil Investigative Demand No. 17-006*,
  No. 5:18-mc-20, 2018 WL 3478903 (S.D. Miss. July 19, 2018) ................................... 12

*In re Grand Jury Proc.*,
  574 F.2d 445 (8th Cir. 1978) ......................................................................................... 12

*In re Grand Jury Procs.*,
  220 F.3d 568 (7th Cir. 2000) ......................................................................................... 30

*In re Grand Jury Procs.*,
  486 F.2d 85 (3d Cir. 1973) ............................................................................................ 30

*In re Grand Jury Subpoena, Judith Miller*,
  438 F.3d 1141 (D.C. Cir. 2006) .................................................................................... 30

*J.T. v. District of Columbia*,
   983 F.3d 516 (D.C. Cir. 2020) ........................................................................ 22

*Kupperman v. U.S. House of Representatives*,
   436 F. Supp. 3d 186 (D.D.C. 2019) ........................................................... 12, 20

*Larsen v. U.S. Navy*,
   525 F.3d 1 (D.C. Cir. 2008) ........................................................................... 18

*Lewis v. Continental Bank Corp.*,
   494 U.S. 472 (1990) ...................................................................................... 10

*Lucas v. District of Columbia*,
   683 F. Supp. 2d 16 (D.D.C. 2010) .................................................................. 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 15

*Maldonado v. District of Columbia*,
   61 F.4th 1004 (D.C. Cir. 2023) ........................................................... 12, 13, 16

*Matal v. Tam*,
   582 U.S. 218 (2017) ................................................................................. 26, 27

*Mehneh v. Rubio*,
   164 F.4th 928 (D.C. Cir. 2026) ............................................................ 19, 20, 21

*Mills v. Green*,
   159 U.S. 651 (1895) ...................................................................................... 18

*Moharam v. TSA*,
   134 F.4th 598 (D.C. Cir. 2025) ...................................................................... 12

*Mullin v. Doe*,
   146 S. Ct. 2121 (2026) ................................................................................... 27

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024) ................................................................................. 26, 27

*PETA v. Gittens*,
   396 F.3d 416 (D.C. Cir. 2005) ........................................................................ 22

*PETA v. U.S. Dep't of Agric.*,
   918 F.3d 151 (D.C. Cir. 2019) ........................................................................ 19

*Pub. Utils. Comm'n of Cal. v. FERC*,
   236 F.3d 708 (D.C. Cir. 2001) ........................................................................ 21

*Pub. Citizen, Inc. v. FERC*,
   92 F.4th 1124 (D.C. Cir. 2024) ................................................................. 18, 20

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ...................................................................................... 26

*Rancho Vista del Mar v. United States*,
   640 F. Supp. 3d 112 (D.D.C. 2022) .................................................................. 9

v

*Ray v. CLH N.Y. Ave, LLC*,
No. 1:19-cv-2841, 2020 WL 5594064 (D.D.C. Sept. 18, 2020) ............................................ 12

*Reid v. Hurwitz*,
920 F.3d 828 (D.C. Cir. 2019) .......................................................................................... 10, 19

*Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*,
593 F.2d 1030 (D.C. Cir. 1978) ............................................................................................. 30

*Republican Nat'l Comm. v. Pelosi*,
No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) ........................................... 12, 20

*Resol. Tr. Corp. v. Thornton*,
41 F.3d 1539 (D.C. Cir. 1994) ..................................................................................... 11, 15, 20

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) ....................................................................................................... 28, 29

*Rosenberger v. Rectors & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995) ....................................................................................................... 26, 27

*Samma v. U.S. Dep't of Def.*,
136 F.4th 1108 (D.C. Cir. 2025) .................................................................................... 11, 19

*SEC v. McGoff*,
647 F.2d 185 (D.C. Cir. 1981) .............................................................................................. 30

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) ............................................................................................ 11

*Texas v. United States*,
523 U.S. 296, 300 (1998) ............................................................................................... 14, 15

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ........................................................................................ 2, 21, 26, 30

*United States v. Skrmetti*,
605 U.S. 495 (2025) ........................................................................................................ 3, 4

*United States v. Vaught*,
No. 1:18-cv-00452, 2021 WL 2043067 (D. Idaho May 20,
2021).......................................................................................................................................... 12

*Wearly v. FTC*,
616 F.2d 662 (3d Cir. 1980)................................................................................................... 27

*Weinberger v. Hynson, Westcott & Dunning, Inc.*,
412 U.S. 609 (1973) .............................................................................................................. 17

*Williams v. Lew*,
819 F.3d 466 (D.C. Cir. 2016) ................................................................................................ 9

*Yelp Inc. v. Paxton*,
137 F.4th 944 (9th Cir. 2025)................................................................................................. 27

## STATUTES & REGULATIONS

15 U.S.C. § 44 ................................................................................................. 15, 17, 18, 25

15 U.S.C. § 45 ........................................................................................................ 2, 3, 5

15 U.S.C. § 52 ........................................................................................................... 2, 5

15 U.S.C. § 53 ........................................................................................................... 3, 8

15 U.S.C. § 57b-1 ........................................................................................ 3, 5, 17, 24, 25

16 C.F.R. § 2.7 ..................................................................................................... 9, 14, 29

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 9, 22

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 9

## OTHER AUTHORITIES

*Am. Acad. of Pediatrics v. FTC*,
No. 1:26-cv-0508 (D.D.C. filed Feb. 20, 2026), ECF No. 6-2 ................................... 3

Notice of Withdrawal of Civil Investigative Demand,
*Am. Acad. of Pediatrics v. FTC*,
No. 1:26-cv-0508 (D.D.C. June 22, 2026), ECF No. 40 ............................................ 8

Notice of Withdrawal of Civil Investigative Demand,
*Endocrine Soc'y v. FTC*,
No. 1:26-cv-0512 (D.D.C., June 22, 2026), ECF No. 40 .......................................... 8

*FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. July 2, 2026), ECF No. 34 ......................................... 9

Melissa Jenco, *AAP: High Court Ruling Sets Dangerous
Precedent*, AAP News (June 18, 2025) ................................................................... 3

Partially Unredacted Complaint, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. July 20, 2026), ECF No. 46-1 .............................. 8, 25

Redacted Complaint, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. June 17, 2026), ECF No. 1 ........................................ 8

Regulations.gov., *Request for Public Comment Regarding
"Gender-Affirming Care" for Minors*, ................................................................. 5

WPATH, *WPATH and USPATH Respond to American Society of
Plastic Surgeons (ASPS) Position Statement* (Feb. 4, 2026) .................................. 4

## INTRODUCTION

This case should be dismissed for lack of jurisdiction because WPATH's claims are moot. The claims center on the Civil Investigative Demand ("CID") that WPATH received from the Commission. WPATH's complaint does not challenge *any* specific Commission action other than the CID. But as the Court is aware, that CID has been withdrawn and the Commission has repeatedly disclaimed any intention to enforce it or seek information pursuant to it in the future. More broadly, the Commission has completed the investigation into WPATH, of which the CID was a part, and is now pursuing an enforcement action against WPATH in separate litigation.

As such, this is a classic example of a challenge to a government action that becomes moot when the action is withdrawn. Numerous courts have dismissed challenges to subpoenas in similar circumstances, and this Court should do the same. There is no longer a live controversy, and there is nothing left for this Court to do.

Accordingly, there is no reason for this Court to consider the merits of WPATH's claims. But if it does, it should conclude that all of them should be dismissed for failure to state a claim. WPATH's central claim is that the CID constituted unconstitutional retaliation. This Court gave credence to that assertion at the preliminary injunction stage because it was not apparent to the Court why the FTC would seek information regarding possible violations of the FTC Act from WPATH. FTC has now provided an exhaustive response to that concern in the form of its complaint in the enforcement action.

That complaint—buttressed by extensive supporting evidence, including 16 sworn witness declarations—explains that WPATH is comfortably within the FTC's enforcement jurisdiction, that it has made numerous deceptive and misleading statements, and that it violated the FTC Act by providing the means for clinicians to mislead consumers about pediatric medical transition

services.  The allegations in WPATH's complaint do not adequately address these issues and therefore are not sufficient to draw the necessary but-for connection between any purported retaliatory conduct and the CID.

WPATH's secondary claims also suffer from a variety of dispositive defects.  For example, its viewpoint discrimination claim fails to identify any restriction of speech by the Commission, and its improper investigation claim is patently premature.

In sum, this Court should dismiss WPATH's claims for lack of jurisdiction or, alternatively, for failure to state a claim.

## BACKGROUND

**A.    Statutory Background.**

By statute, the FTC is "directed" to "prevent persons, partnerships, or corporations" from using "unfair methods of competition" or "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(2).  That directive charges the FTC "with protecting consumers as well as competitors," *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972), and provides the Commission "broad powers to declare trade practices unfair," *FTC v. Brown Shoe Co.*, 384 U.S. 316, 320–21 (1966).  And in the context of "commerce of food, drugs, devices, services, or cosmetics," the FTC Act specifies that "[t]he dissemination or the causing to be disseminated of any false advertisement" is "an unfair or deceptive act or practice."  15 U.S.C. § 52(b).

To enable the FTC to fulfill these mandates, "the FTC Act gives the FTC ample authority to investigate." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001).  Because prevention requires detection, the FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–643 (1950); *see id.* at 643 ("When investigative and accusatory duties are delegated by

2

statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.").  To that end, the FTC is authorized to issue a civil investigative demand whenever it "has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 57b-1(c)(1); *see id.* § 57b-1(a)(6) (defining "person" to include a "partnership, corporation, association, or other legal entity").

Once the FTC "has reason to believe" that a corporation is violating or is about to violate the FTC Act, it is authorized to bring an enforcement action.  *Id.* §§ 45(b), 53(b).  Such enforcement actions can take the form of a "suit in a district court of the United States to enjoin any [unfair trade] act or practice."  *Id.* § 53(b).

**B.      The FTC Begins to Investigate Pediatric Gender Dysphoria Treatment and Issues a CID to WPATH.**

It is no secret that, "[i]n recent years, the number of minors requesting sex transition treatments has increased."  *United States v. Skrmetti*, 605 U.S. 495, 504 (2025).  The same goes for promotion of such treatments, which generally represent that pediatric gender dysphoria treatment (PGDT) is safe, effective, and widely accepted as the standard of care.  For instance, the American Academy of Pediatrics (AAP) described PGDT as "backed by decades of peer-reviewed research, clinical experience, and scientific consensus."  Melissa Jenco, *AAP: High Court Ruling Sets Dangerous Precedent*, AAP News (June 18, 2025), https://perma.cc/Q267-6XTC.  And its Policy Statement—which it claims is "evidence driven, nonpartisan, and rigorously reviewed"— represents that puberty blockers are "reversible" and that PGDT "generally leads to improved psychological functioning in adolescence and young adulthood."  *Am. Acad. of Pediatrics v. FTC*, No. 1:26-cv-0508 (D.D.C. filed Feb. 20, 2026), ECF No. 6-2 at 63, 71–72.

For another example, WPATH—which purports to be the "leading global professional organization for clinicians, researchers, and experts in the field of transgender healthcare," *WPATH and USPATH Respond to American Society of Plastic Surgeons (ASPS) Position Statement*, WPATH (Feb. 4, 2026), https://perma.cc/5BGZ-68UU—has long issued purported standards of care regarding PGDT. WPATH has held out its most recent standards of care (SOC-8) as "clinical guidance" that reflects "a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender people," Dkt.3-2 ¶ 8–9; Dkt.3-4 ¶ 9, and that was "developed [based on] thorough evaluation of evidence," Dkt.3-11 at 2. In SOC-8, WPATH has promoted PGDT as "fully reversible," "not … experimental," "medically necessary," "associated with a substantial reduction in the risk of suicide attempt[s]," and supported by "strong evidence" of "benefits in quality of life and well-being." Dkt.32-1 at S18, S54, S112, S174.

But PGDT is controversial. *See Skrmetti*, 605 U.S. at 504 (noting "rising debates regarding the relative risks and benefits of such treatments"). Numerous patients who received transition services have come forward with stories of regret and, occasionally, malpractice lawsuits. *See* Dkt.32 at 17–21 (collecting sources). And other whistleblowers with firsthand experience working in PGDT clinics have come forth to reveal that such treatment is frequently pressed onto patients with negative consequences. *See id.* The through-line in these testimonials is that the promotional statements for PGDT do not always seem to match reality.

As it would with any highly publicized, aggressively promoted, and apparently harmful consumer product or service, the FTC began to investigate whether "false or unsubstantiated representations" have been made and "unfair practices" have been committed "in connection with the marketing and advertising of [PGDT]." Dkt.3-8 at 2. That investigation followed the ordinary

4

course.  First, the FTC considered public statements promoting PGDT to evaluate whether they could support a false advertising action.  Next, the FTC held a public, live-streamed workshop to gather additional information on whether PGDT advertising has misled or deceived consumers. At that workshop, participants expressed their view that PGDT risks serious, permanent, and irreversible harms to patients, and that it is not backed by rigorous scientific research.  *See* Dkt.32 at 22–23.  Then, the FTC issued a Request for Information on PGDT, garnering approximately 8,000 comments.  Dkt.3-31 at 4; *see* Regulations.gov., *Request for Public Comment Regarding "Gender-Affirming Care" for Minors*, https://www.regulations.gov/docket/FTC-2025-0264/comments.  Some were positive, and expressed reliance on WPATH's representations as to the benefits of PGDT.  *See* Dkt.32 at 24.  Others were critical of WPATH, and saw PGDT as containing great potential for harm to minors.  *See id.* at 24–25.

All this was more than enough to give the FTC "reason to believe" that WPATH "may have any information[] relevant to unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 57b-1(c).  So on January 15, 2026, the FTC issued a CID on WPATH.  Dkt.3-8.  The CID explained the subject of the investigation: whether WPATH has "made, or assisted others in making, false or unsubstantiated representations or engaged in unfair practices in connection with the marketing and advertising of Pediatric Gender Dysphoria Treatment … in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45, 52."  *Id.* at 4.  And the CID included interrogatories to help the FTC determine whether WPATH's activities fall within the scope of its enforcement jurisdiction.  *Id.* at 4–6.

C.    **WPATH Files This Pre-Enforcement Challenge to the CID and Seeks a Preliminary Injunction.**

WPATH did not produce any information in response to the CID.  Instead, one month after issuance of the CID, WPATH filed its complaint in a bid to enjoin the FTC from "enforcing the

CID." *See* Dkt.1 at 44 ("Compl."). The complaint raised four counts alleging that the FTC's investigation violated WPATH's constitutional rights. Each count was centered around the FTC's issuance of the CID:

- Count I alleges that "[t]he FTC's investigation into WPATH, and its issuance of the CID, are unconstitutional retaliation against WPATH for exercise of its First Amendment rights to speak, associate, and petition." Compl. ¶ 132. The complaint identified "[t]he issuance of the CID" and "the resulting requirements that WPATH hire counsel," "prepar[e] for potential disclosures of information," and related "chilling effect[s]" as "materially adverse actions." *Id.* ¶ 137.

- Count II alleges that "[t]he FTC's investigation and issuance of the CID" violates "the First Amendment's prohibition on viewpoint discrimination." *Id.* ¶ 139. In particular, the complaint alleges that "[t]he CID is content-based on its face, seeking to burden and punish WPATH's science-based viewpoints." *Id.*

- Count III alleges that "the FTC has violated WPATH's First Amendment rights to speak and associate through its unlawful investigation and issuance of the CID." *Id.* ¶ 146.

- Count IV alleges that "the CID is overbroad and unduly burdensome," such that it "violates the First and Fourth Amendments." *Id.* ¶¶ 152–53.

One week after filing the complaint, WPATH moved for a preliminary injunction. Dkt.3-1. Like its complaint, WPATH's motion was entirely focused on the CID. *See, e.g.*, *id.* at 23–24 (claiming that "the potential for disclosure of [WPATH leadership's] statements ... has made them consider every word they speak and write"); *id.* at 24 (noting "CID has been an ever-present specter at WPATH leadership meetings"). WPATH asked this Court to "bar[]" the FTC "from implementing or enforcing the Civil Investigative Demand[], or any similar order, request, or action, and taking further actions interfering with, retaliating against, or abridging WPATH's exercise of its First Amendment rights." *Id.* at 45.

6

**D.      This Court Preliminarily Enjoins the FTC from Enforcing the CID to WPATH.**

This Court granted WPATH's preliminary injunction motion in part.  It found "that preliminary relief is warranted on WPATH's First Amendment retaliation claim alone" and therefore "d[id] not consider its other claims."  Dkt.41 at 5.  Every one of the Court's holdings on the merits were tied to the CID.  In the Court's view, "WPATH has demonstrated the CID's chilling effect on its protected speech."  *Id.* at 6.  And the Court determined that WPATH "is likely to succeed on establishing a causal link between the FTC's retaliatory motive and its decision to issue a CID."  *Id.* at 7.

The relief the Court granted was expressly limited to the CID.  The Court "preliminarily enjoin[ed] the FTC from implementing or enforcing its issued CID."  *Id.* at 11.  But it made clear that its injunction—including its assessment of the merits—extended *only* to the CID.  The Court emphasized that the FTC "remains free to deploy other investigative tools."  *Id.*  at 10.  And the Court expressly "den[ied] WPATH's request to issue a broader injunction barring the FTC from 'taking further unlawful action interfering with or retaliating against WPATH.'"  *Id.*; *see also Endocrine Soc'y v. FTC*, __ F. Supp. 3d __, 2026 WL 1257289, at *14 (D.D.C. 2026) (noting in a similar case that "further relief from other investigative steps" beyond the CID "is not appropriate at this early stage").

**E.      The FTC Files an Enforcement Action in the U.S. District Court for the Northern District of Texas and Withdraws the CID.**

The FTC used its "other investigative tools," Dkt.41 at 10, to investigate WPATH, for example by contacting victims and by reviewing WPATH's own website and publicly available legal filings.  Those methods revealed substantial evidence that WPATH has made false, misleading, or unsubstantiated statements and thereby provided the means and instrumentalities for medical providers to deceive consumers into purchasing pediatric medical transition services.

7

In other words, the FTC had "reason to believe" that WPATH "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission," 15 U.S.C. § 53(b)— specifically, the provisions against false advertising of drugs.

Accordingly, the FTC—along with the states of Alaska, Iowa, Nebraska, and Texas—sued WPATH in the United States District Court for the Northern District of Texas.  *See* Redacted Complaint, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. June 17, 2026), ECF No. 1; *see also* Partially Unredacted Complaint, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. July 20, 2026), ECF No. 46-1 ("FTC Compl.").  The FTC seeks a permanent injunction pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).  The State plaintiffs seek an injunction, civil penalties, and other forms of relief.  As relevant here, the 123-page complaint—which is backed by 16 sworn witness declarations—alleges that (1) WPATH is well within the FTC's jurisdiction because it operates for its own profit and the profit of its members, including (as the complaint alleges in detail) by facilitating insurance reimbursement for transition services, *see, e.g.*, FTC Compl. ¶¶ 253–88; (2) WPATH's treatment recommendations are not based on adequate evidence or reliable methods and are thus deceptive and misleading, *see id.* ¶¶ 68–245; and (3) WPATH provides the means for clinicians to deceive consumers in violation of the FTC Act and state consumer protection laws, *see id.* ¶¶ 316–54; *see also infra* Part II.A.

After initiating the enforcement action, the FTC "formally withdrew" the CID on June 17, 2026, and informed WPATH that the Commission would not seek to enforce it.  Dkt.43 at 1; Dkt.43-1 at 2.[1]  That is because "the FTC's investigation has culminated in a complaint against

---

[1] On the same day, the FTC also withdrew several other CIDs issued in the same investigation. *See, e.g.*, Notice of Withdrawal of Civil Investigative Demand, *Endocrine Soc'y v. FTC*, No. 1:26-cv-0512 (D.D.C., June 22, 2026), ECF No. 40 at 1; Notice of Withdrawal of Civil Investigative Demand, *Am. Acad. of Pediatrics v. FTC*, No. 1:26-cv-0508 (D.D.C. June 22, 2026), ECF No. 40 at 1.

WPATH," and that complaint already "identifies conduct that violates the FTC Act." Dkt.43 at 1. The FTC's complaint thus marks the end of its investigation of WPATH. Accordingly, the FTC's notice of the withdrawal of the CID indicated that it has no plans to use its pre-complaint investigative tools to seek any further documents or information from WPATH. Dkt.43-1 at 2; *see* 16 C.F.R. § 2.7(b) (noting that CIDs "shall be the only form of compulsory process issued in investigations with respect to unfair or deceptive acts or practices").

The Commission has reiterated the same point several times. In filings in this Court, the Commission has represented that "it has no plans to try to enforce [the CID]" or "to obtain information pursuant to the CID." Dkt.53 at 29, 32; *see id.* at 3 (The FTC has "cho[sen] to withdraw the CID and disclaim enforcement." (emphasis omitted)). And it has said the same in the enforcement action, explaining that "the Commission has withdrawn [the CID] and no longer seeks to obtain information by means of the CID[] or to enforce it." *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. July 2, 2026), ECF No. 34 at 7; *see id.* at 19 ("[T]he Commission has withdrawn the CID and has no plans to enforce it.").

## LEGAL STANDARDS

The Commission moves to dismiss the complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and in the alternative moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Under either rule, the Court "accept[s] all 'well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor,'" but "do[es] not assume the truth of legal conclusions." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). The Court may "consider[] materials attached to the complaint, documents incorporated by reference, and judicially noticeable materials, including government records." *Rancho Vista del Mar v. United States*, 640 F. Supp. 3d 112, 117 n.1 (D.D.C. 2022)

9

(citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). And on a Rule 12(b)(1) motion, the Court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## ARGUMENT

Every one of WPATH's claims are predicated on the "issuance of the CID" violating its constitutional rights. Compl. ¶¶ 132, 139, 147, 152–53. But the CID has been withdrawn and the Commission no longer seeks to enforce it. Indeed, the Commission's investigation of WPATH has concluded, having culminated in the filing of the FTC's complaint against WPATH. Accordingly, WPATH's claims are moot. This case has run its course, and there is no more relief for this Court to give. All that is left for this Court is to dismiss this case.

## I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Under Article III, this Court "may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). That "case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Id.* This Court thus "cannot decide a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (quoting *Clarke v. United States*, 915 F.3d 699, 701 (D.C. Cir. 1990) (en banc)). Once mootness is established, "the opposing party has the burden to prove that a mootness exception applies." *Id.*

### A.    The Complaint's Claims Are Moot Because the FTC Has Withdrawn the CID and Disclaimed Any Intent to Enforce It.

This case is moot. WPATH's complaint alleges that the FTC's "issuance of the CID" was "unconstitutional retaliation" (Count I), that the "issuance of the CID" constituted "viewpoint

10

discrimination" (Count II), that the "issuance of the CID" violated "WPATH's First Amendment rights" by impinging on its rights to free speech and association, (Count III), and that "the CID" "violates WPATH's First and Fourth Amendment rights" because it is unduly broad and burdensome (Count IV).  Compl. ¶¶ 132, 139, 146, 152.  WPATH seeks only prospective relief for these asserted wrongs.  *Id.* at 44.  But the CID has now been withdrawn, and the FTC has represented that "it has no plans to try to enforce [the withdrawn CID]" or "to obtain information pursuant to the CID."  Dkt.53 at 29, 32.  Moreover, the FTC's complaint against WPATH marked the end of its investigation of WPATH, consistent with "the general principle that an investigation terminates once suit has been filed."  *Resol. Tr. Corp. v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994).  "[E]vents in the world" have thus "overtake[n] those in [this] courtroom," and WPATH has "secure[d] outside of litigation all the relief [it] might have won in it."  *FBI v. Fikre*, 601 U.S. 234, 240 (2024).

Courts routinely dismiss cases for lack of jurisdiction in these circumstances.  "[T]he government's abandonment of a challenged regulation" or policy is "just the sort of development that can moot an issue."  *Samma v. U.S. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quoting *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020)).  When an agency withdraws the challenged action such that it "no longer exists," a court sitting in judgment of that action "can do nothing to affect" the plaintiff's "rights relative to it, thus making th[e] case classically moot for lack of a live controversy."  *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016).

For that reason, federal courts have consistently dismissed challenges to subpoenas or civil investigative demands when the government no longer seeks to enforce them.  *See, e.g.*, *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085 (D.C. Cir. 2017) (parties

11

agreed that "no controversy" remained where the subcommittee "no longer seek[s] to enforce any part of the subpoena"); *Republican Nat'l Comm. v. Pelosi*, No. 22-5123, 2022 WL 4349778, at *1 (D.C. Cir. Sept. 16, 2022) (subpoena challenge became moot when congressional committee "withdrew the subpoena [and] promised not to renew it"); *In re Grand Jury Proc.*, 574 F.2d 445, 446 (8th Cir. 1978) (challenge to grand jury subpoena "became moot" after the subpoena was withdrawn); *Kupperman v. U.S. House of Representatives*, 436 F. Supp. 3d 186, 191 (D.D.C. 2019) (withdrawal of congressional subpoena mooted case); *Ray v. CLH N.Y. Ave, LLC*, No. 1:19-cv-2841, 2020 WL 5594064, at *4 (D.D.C. Sept. 18, 2020) ("Because plaintiff withdrew the subpoena, the Court will deny defendants' Motion to Quash as moot."); *In re Civil Investigative Demand No. 17-006*, No. 5:18-mc-20, 2018 WL 3478903, at *1 (S.D. Miss. July 19, 2018) (dismissing challenge to CID as moot after the government withdrew the CID); *see also United States v. Vaught*, No. 1:18-cv-00452, 2021 WL 2043067, at *3 (D. Idaho May 20, 2021) (collecting similar cases).

This Court should do the same. The FTC has withdrawn its CID, repeatedly "disclaim[ed]" any future effort to enforce it, Dkt.53 at 3, and concluded its investigation into WPATH. Those events mark "an end to [the allegedly] offending behavior." *Moharam v. TSA*, 134 F.4th 598, 607 (D.C. Cir. 2025) (quotation omitted). Since this Court "can do nothing to affect [WPATH's] rights relative to those now-withdrawn [actions]," this case is "classically moot." *Friends of Animals*, 961 F.3d at 1203 (quoting *Akiachak Native Cmty.*, 827 F.3d at 106).

**B.      The Complaint Features no Meaningful Allegations Beyond Those Pertaining to the Withdrawn CID.**

**1.** Courts assess mootness by reference to "[t]he causes of action identified in the complaint." *Akiachak Native Cmty.*, 827 F.3d at 105; *Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) ("[T]o assess mootness," a court "must first define the 'wrong' alleged

12

in the complaint 'in terms of the precise controversy it spawns.'" (quotation omitted)).  As just explained, WPATH's causes of action here revolve around and depend on the CID.  While the complaint also contains vague assertions about the Commission's "investigation," such isolated and inadequate allegations cannot forestall mootness.

A glance at the complaint confirms that every count is addressed *specifically* to the now-withdrawn CID.  When Count I alleges First Amendment retaliation, the only "materially adverse action[]" it identifies is "[t]he issuance of the CID."  Compl. ¶ 137.  Count II is of a piece; its allegations of viewpoint discrimination are predicated on the idea that "[t]he CID is content-based on its face."  *Id.* ¶ 139.  Count III's free speech and association claims are solely based on the CID's "requests for information."  *Id.* ¶¶ 147–49.  And Count IV's First and Fourth Amendment claims mention *only* the withdrawn CID as the offending government action.  *Id.* ¶¶ 151–53.  Now that the CID has been withdrawn, there is no longer "a real and substantial controversy admitting of specific relief."  *Akiachak Native Cmty.*, 827 F.3d at 105 (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937)).

To be sure, the complaint also includes vague and unexplained assertions about the Commission's "investigation" more broadly.  But to forestall mootness, those allegations must themselves make out a justiciable controversy.  *See Maldonado*, 61 F.4th at 1006.  They do not come close to doing so.  Indeed, the complaint does not challenge *any* specific element of the investigation other than the CID.

The complaint does identify certain other components of the investigation, such as the FTC's workshop and its initiation of a public comment period.  *See* Compl. ¶¶ 88–112.  But the complaint does not suggest that those aspects of the investigation were unlawful, and it accordingly does not feature them in its claims.  This is unsurprising because the gravamen of the complaint

13

pertains to "compulsory process." *See id.* ¶ 4 (arguing the "First Amendment does not permit the FTC to use compulsory process and investigations to intimidate, censor, or retaliate against viewpoints and speakers with which it disagrees"); *id.* ¶ 149 (alleging "chilling effect" based on "the fact that the CID compels disclosure"). The complaint makes clear over and over again that it was the FTC's use of compulsory process that caused the purported constitutional violations. *E.g.*, *id.* ¶ 117 ("CID requests" were supposedly "broad, ill-defined," and "exceedingly invasive"); *id.* ¶ 119 ("information sought by these requests" purportedly "f[ell] squarely within the First Amendment's protection[s]"); *id.* ¶ 126 (CID allegedly "chilled WPATH's speech and association"); *id.* ¶ 128 (concern "CID would be enforced" spurred lawsuit). And CIDs are "the *only* form of compulsory process" the FTC issues in investigations concerning deceptive acts or practices under Section 5 of the FTC Act. 16 C.F.R. § 2.7(b) (emphasis added).

Beyond that, the complaint suggests that some other unspecified element or elements of the "investigation" that the Commission might undertake could violate WPATH's rights. *E.g.*, Compl. ¶¶ 132, 139, 141, 146. This is self-evidently insufficient to create a justiciable controversy. Any dispute over further investigatory steps is unripe, as it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) ("passing references" to agency policy were not "ripe for review" in case previously "focused almost exclusively on one specific agency action"). Any injury from such steps is also not "certainly impending" as required "to confer standing." *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 34 (D.D.C. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see DSCC v. Trump*, __ F. Supp. 3d __, 2026 WL 1487833, at *4 (D.D.C. 2026) ("[T]he Supreme Court has repeatedly said that 'allegations of *possible* future injury' are not sufficient to

14

establish injury in fact." (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013))). At most, any such concern is merely "conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up), and therefore insufficient. Indeed, assessing such a claim would require this Court to improperly "prejudge every permutation of the FTC's future actions"— which the Court has already declined to do. Dkt.58 at 5; *see Texas*, 523 U.S. at 301 ("We do not have sufficient confidence in our powers of imagination to affirm such a negative.").

Finally, even if the complaint *had* adequately identified and challenged some portion of the investigation beyond the CID, any such challenge now would be as moot as the CID challenge. As explained, the investigation of WPATH ended when the FTC filed its complaint. *See Thornton*, 41 F.3d at 1546. Accordingly, to the extent the complaint sought "to enjoin an investigation that has now concluded," there are no more investigative steps left to challenge. *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022). "Put simply, the Court cannot enjoin what no longer exists." *Id.*

**2.** WPATH has previewed how it intends to respond to these arguments. It will insist that the case is not moot because it can still obtain "effectual relief" via the complaint's request for a declaration that WPATH is "not a 'corporation'" under 15 U.S.C. § 44. Dkt.54 at 9.

This argument is distinctly reminiscent of WPATH's failed gambit in its anti-suit injunction motion. There, WPATH pointed to the very same request for relief in arguing that this case and the enforcement action in Texas were duplicative because the relief sought in this case could be relevant to the enforcement action. *E.g.*, Dkt.54 at 1, 3–4 (addressing the "broader relief [WPATH] seeks"). This Court correctly rejected that argument, evaluating only whether the *claims* in the two cases were duplicative (they emphatically were not). *See* Dkt.58 at 4–5.

15

It is just the same here. As already explained, mootness is assessed by reference to the plaintiff's *claims*. If the claims do not make out a live dispute—and they do not, as demonstrated above—the plaintiff cannot breathe life into them simply by inserting extravagant requests for relief. *See Akiachak Native Cmty.*, 827 F.3d at 107 (when a party's claims are moot, "no court [can] grant [relief]"); *Exxon Mobil Corp.*, 28 F.4th at 394 (requests for relief must be "tied to an ongoing injury").

To put the point another way: The complaint does not challenge *any* concrete agency action other than the withdrawn CID. As such, this Court could not enter any relief, and it certainly could not enter effective relief. If it were otherwise, virtually no case would ever be moot, as it is common for complaints to include a boilerplate and open-ended request for "any other relief as the Court deems appropriate." *See, e.g.*, Compl. at 45.

The potential for this sort of gamesmanship is the reason why, in "assess[ing] mootness," courts "define the 'wrong' alleged in the complaint 'in terms of the precise controversy it spawns'" rather than simply consulting the plaintiff's remedial wish list. *Maldonado*, 61 F.4th at 1006 (quotation omitted). As noted, it is the "causes of action identified in the complaint" that "perform the Article III function of restricting the court's review to 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Akiachak Native Cmty.*, 827 F.3d at 105 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 241). And when the relief requested does not match the wrongs complained of, it is the wrongs which control the mootness inquiry. *See Diffenderfer v. Central Baptist Church, Inc.*, 404 U.S. 412, 414–15 (1972) (concluding that a "declaratory judgment" that a repealed statute "is unconstitutional" would be

16

"inappropriate" and that such "relief sought in the complaint" did not save the case from mootness).

Notably, this particular remedy would be unavailable even if WPATH's claims were live. Recall that WPATH seeks a declaration that it is "not a 'corporation'" under the definition provided by 15 U.S.C. § 44. Compl. at 44. But that definition limits only the Commission's *enforcement* authority, which is distinct from its *investigatory* authority. *See Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 875–76 (8th Cir. 1977). WPATH's challenge to the CID therefore *does not turn* on whether it is a corporation under that definition. Instead, the FTC's authority to issue a CID extends to "any person"—including a nonprofit—who "the Commission has reason to believe ... may ... have any information[] relevant to unfair or deceptive acts or practices." 15 U.S.C. § 57b-1(c)(1); *see id.* § 57b-1(a)(6) (defining "person" to include a "partnership, corporation, association, or other legal entity"). To put a finer point on it, this broad investigatory authority also includes the power to *assess* whether an organization is subject to the Commission's enforcement jurisdiction. *See, e.g.*, *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973). Therefore, a declaration that WPATH is not a corporation under the FTC Act would not have been an effectual remedy in this case because it would not have resolved whether the CID was properly issued or have prevented the FTC from enforcing it. *See Exxon Mobile Corp.*, 28 F.4th at 392 ("[F]or this case to remain live, there must be a possible effectual remedy ... that would address an ongoing violation of law.").

In addition, it is important to note that a nominal nonprofit can bring itself within the scope of the FTC Act by acting "for its own profit or that of its members," 15 U.S.C. § 44—a standard which requires an assessment of an entity's actual functioning to evaluate its "proximate relation to lucre," *California Dental Ass'n v. FTC*, 526 U.S. 756, 766 (1999). (As the FTC contends in its

17

enforcement action, WPATH qualifies as a corporation under that standard. *See infra* Part II.A.) And given that an entity's status under the FTC Act turns on its behavior (which can change over time), it follows that status as a corporation or a nonprofit is not set in stone. This has two important implications here. First, the only declaration that could even conceivably be relevant to WPATH's claims in this case is whether it was a corporation for purposes of 15 U.S.C. § 44 *at the time of the CID's issuance.* But such a declaration clearly could not provide WPATH any effectual relief now. Second, WPATH's requested declaration that it is not a corporation—full stop—is not even coherent because it purports to resolve for all time a question that has to be continuously assessed anew in light of WPATH's current activities.

To be sure, it is not hard to see why WPATH sought an incoherent, overbroad declaration that is such a poor match for the legal wrongs it asserts in this case. It was hoping that the declaration would come in handy in *other* cases. As it has previewed, it believes that a judgment from *this* Court could "defeat the FTC's claims *in Texas*," Dkt.54 at 9 (emphasis added). But this is yet another reason why its position must be rejected: WPATH is transparently seeking an advisory opinion. *See Mills v. Green*, 159 U.S. 651, 653 (1895) (courts may not "declare principles or rules of law which cannot affect the matter in issue *in the case before it*" (emphasis added)); *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (declaration that discarded policy was illegal would "amount[] to exactly the type of advisory opinion Article III forbids"); *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1130 (D.C. Cir. 2024) (rejecting request for an "advisory opinion addressing [an agency's] underlying interpretation of its jurisdiction so that [the ruling] might be applied to other hypothetical [scenarios]"); *see also Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("The Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief."). At any rate, if the mere possibility that "findings made in a decision

18

concluding one lawsuit" could "some day (if allowed to do so) control the outcome of another suit" were "enough to avoid mootness," then "no case would ever be moot." *CFTC v. Board of Trade*, 701 F.2d 653, 656 (7th Cir. 1983).

In short, WPATH's untenable request for relief, which was thoroughly disconnected from its claims even when they were live and is patently unavailable now that they are moot, cannot create a justiciable controversy here.

### C.    No Exception to Mootness Applies.

Where, as here, the party seeking dismissal establishes mootness, the burden shifts to the opposing party to prove that a mootness exception applies. *Reid*, 920 F.3d at 832. The two principal exceptions to mootness are (1) "when 'a party voluntarily ceases the challenged activity'" and the "allegedly wrongful behavior" can "reasonably be expected to occur," and (2) in "cases that are capable of repetition yet evading review." *Mehneh v. Rubio*, 164 F.4th 928, 931 (D.C. Cir. 2026) (quotations omitted). Neither exception applies here.

**1.** The voluntary-cessation exception does not apply here. To begin, "courts have declined to apply the doctrine when the facts do not suggest any 'arguable manipulation of [the court's] jurisdiction.'" *Samma*, 136 F.4th at 1113 (quotation omitted). And that is especially so where, as here, the defendant is a "government actor" and there is accordingly "less concern about the recurrence of objectionable behavior." *Citizens for Resp. & Ethics in Wash. v. U.S. SEC*, 858 F. Supp. 2d 51, 61 (D.D.C. 2012). That reluctance to find voluntary cessation where the government is the defendant is rooted in "the presumption of legitimacy accorded to the Government's official conduct." *PETA v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019).

Here, there is *no* "evidence that the [FTC] sought to manipulate the court's jurisdiction." *Mehneh*, 164 F.4th at 931 n.* (quoting *Samma*, 136 F.4th at 1114). The FTC has explained why it withdrew the CID: "Due to the filing of [the Texas] complaint, the Commission no longer views

19

compliance with the CID as necessary to its investigation." Dkt.43-1 at 2. There is thus no occasion for this Court "to impute … manipulative conduct to a coordinate branch of government" in this case. *Mehneh*, 164 F.4th at 932 (quotation omitted).

Regardless, even if this Court were to apply the voluntary cessation doctrine here, it is "absolutely clear the allegedly wrongful behavior [cannot] reasonably be expected to recur." *Pub. Citizen, Inc.*, 92 F.4th at 1128 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The FTC has consistently represented "it has no plans to try to enforce [the CID]" or "to obtain information pursuant to the CID "now that the complaint in the Enforcement Action has been filed." Dkt.53 at 29, 32; *see id.* at 3 (the FTC has "cho[sen] to withdraw the CID and disclaim enforcement" (emphasis omitted)). Those are exactly "the[] sorts of promises by Government lawyers" that this Court "has relied on" in "determining that a case is moot." *Kupperman*, 436 F. Supp. 3d at 193 (lawsuit challenging subpoena was moot when subpoena was withdrawn and the House "repeatedly and unequivocally stated in pleadings to this Court" that it would not "reissue the subpoena"); *see Gordon v. Lynch*, 817 F.3d 804, 806–07 (D.C. Cir. 2016) (relying on government's statements at oral argument to conclude that the case is moot); *Pelosi*, 2022 WL 4349778, at *1 (taking "the Committee at its word" and finding challenge to a withdrawn subpoena moot "[b]ased on the express representations made in [the Committee's] motion").

Indeed, even the investigation that spawned the CID is over. The FTC's investigation into WPATH "has culminated in a complaint against WPATH, which was filed by the FTC and four states on June 17, and which identifies conduct that violates the FTC Act and applicable state laws." Dkt.43 at 1. The filing of that complaint marks an end of the investigatory phase. *See Thornton*, 41 F.3d at 1546 (recognizing "the general principle that an investigation terminates once

20

suit has been filed"). This further confirms that the government action WPATH complains of is unlikely to recur.

**2.** This case is not "capable of repetition yet evading review." *Mehneh*, 164 F.4th at 931. That exception applies only when "(1) the challenged action is too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Am. Forest Res. Council v. Williams*, 96 F.4th 417, 421 (D.C. Cir. 2024) (quotation omitted).

Neither prong is satisfied here. *First*, CIDs are nothing like the time-limited agency actions that courts traditionally regard as evading review. *See, e.g.*, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (agency response to applications for a one-year license evades review); *Pub. Utils. Comm'n of Cal. v. FERC*, 236 F.3d 708, 713–14 (D.C. Cir. 2001) (agency review of two-year contracts evades review). A CID issued by the FTC does not have an expiration date. *See, e.g.*, Dkt.3-8 at 4 (explaining that the "applicable time period for the requests" in the CID "is from January 1, 2021, until the date of full and complete compliance with this CID" (emphasis omitted)).

*Second*, there is no reasonable expectation that WPATH will be subjected to the same action again. As already explained in the voluntary-cessation context, there is little likelihood that "the same complaining party" (WPATH) will be "subjected to the same actions" (a CID) again, because WPATH is *already* the subject of an enforcement action and the FTC's investigation of WPATH is over. *Am. Forest Res. Council*, 96 F.4th at 421. There is no need to reissue a CID "on suspicion that the law is being violated" (*Morton Salt Co.*, 338 U.S. at 642) when the FTC already has filed a suit "identif[ying] conduct that violates the FTC Act," Dkt.43 at 1. And even if there

21

were a (hypothetical) future FTC investigative action, it likely would not present the same legal questions as the withdrawn CID.

To assess whether an alleged wrong is capable of repetition, courts frame the wrong "in terms of the legal questions it presents for decision." *PETA v. Gittens*, 396 F.3d 416, 423–24 (D.C. Cir. 2005). Thus, when a "legal controversy" is "sharply focused on a unique factual context," it will "rarely present 'a reasonable expectation that the same complaining party would be subjected to the same actions again.'" *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (quoting *Gittens*, 396 F.3d at 424). That principle applies here. As this Court's orders have implicitly recognized, the First Amendment retaliation claims in this case are highly fact-specific. Based on the "circumstantial evidence" before it, the Court concluded that WPATH was "likely to succeed on establishing a causal link between the FTC's retaliatory motive and *its decision to issue a CID*." Dkt.41 at 7 (emphasis added). The Court was "not prepared," however, to "prejudge every permutation of the FTC's future actions as unconstitutionally retaliatory." Dkt.58 at 5. In other words, the Court acknowledged that various investigative steps by the FTC would present distinct and fact-specific legal issues. For the same reason, the alleged wrong here is not capable of repetition.

That leaves this analysis where it began. This case is moot, and no exception applies. All that remains is for this Court to dismiss the case.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In the alternative, this action must be dismissed because the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint." *Al-Quraan v. 4115 8th St. NW, LLC*, 113 F. Supp. 3d 367, 369 (D.D.C. 2015) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While a court must construe the complaint in the plaintiff's favor, "accepting as true all of the factual allegations" alleged in the complaint, it need not "accept legal conclusions cast in the form of factual allegations." *Lucas v. District of Columbia*, 683 F. Supp. 2d 16, 18 (D.D.C. 2010) (cleaned up).

As the Commission explained in its opposition to WPATH's request for a preliminary injunction, WPATH's claims are fatally flawed on a variety of grounds.  *See* Dkt.32.  At the threshold, the FTC Act channels all challenges to a CID to an action to enforce the CID brought by the Commission and, in any event, WPATH lacks an implied cause of action.  *Id.* at 28–35. Each of WPATH's claims are also meritless.  *Id.* at 35–55.

While this Court disagreed in its preliminary injunction decision with the FTC's threshold arguments and its arguments with respect to the retaliation claim, *see* Dkt.41, the Commission preserves those arguments and incorporates them by reference.  And even setting those arguments aside, all of the complaint's claims fail as a matter of law, as explained below.

### A.    The Complaint Fails to Plausibly Allege a First Amendment Retaliation Claim (Count I).

The complaint alleges that the FTC violated the First Amendment by retaliating against WPATH's constitutionally protected speech.  Compl. ¶ 132.  To prevail on that claim, the complaint must plausibly allege that (1) WPATH "engaged in conduct protected under the First Amendment"; (2) the FTC "took some retaliatory action sufficient to deter a person of ordinary firmness in [WPATH's] position from speaking"; and (3) there is "a causal link between the exercise of a constitutional right and the adverse action." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quotation omitted).  As the Commission has explained at length, WPATH cannot

establish any causal link between its speech and the CID or any chilling effect from the CID. Dkt.32 at 36–52.

In its decision partially granting a preliminary injunction, the Court explained that WPATH must plausibly allege that a "retaliatory motive was the but-for cause for the FTC's action" and that it could not do so if "the FTC would have issued the CID absent a retaliatory motive." Dkt.41 at 7–8. On the "preliminary record" before it, the Court determined that WPATH was likely to show a sufficient causal link because the Court did not see "a logical justification" or "a plausible connection" between the CID to WPATH "and the suspected violations" of the FTC Act. *Id.* at 8–9; *see id.* at 7 (noting the possibility that "the FTC could show later on that it would have issued the CID regardless of [a] retaliatory motive"). In other words, the Court considered retaliation a plausible explanation for issuing the CID because the Court was unpersuaded that the Commission had "reason to believe" that WPATH had information about potential violations of the FTC Act. 15 U.S.C. § 57b-1(c)(1).

In order to state a claim, therefore, WPATH must plausibly allege that the CID would not have been issued but for the alleged retaliation.[2] As an initial matter, WPATH's complaint *does not include such an allegation at all*, which in and of itself is grounds for dismissal. Moreover, the Commission's complaint against WPATH in the enforcement action in Texas amply illustrates and explains the "logical connection" this Court sought and thereby reveals that WPATH could

---

[2] In fact, the requisite showing is more robust: WPATH must demonstrate that there was no reasonable basis for the CID. *See* Dkt.32 at 36 (citing *Nieves v. Bartlett*, 587 U.S. 391, 399–400 (2019)). While this Court was not initially persuaded by this argument, the Sixth Circuit recently held that the "no-probable-cause" standard from *Nieves* applies in the civil context where a plaintiff brought "a First Amendment retaliation claim" in response to a quo warranto petition that allegedly retaliated "against her for her political and other speech." *Amacher v. City of Tullahoma*, 179 F.4th 999, 1001–04 (6th Cir. 2026).

not plausibly allege (even if it had tried to do so) that retaliation was the but-for motivation for issuing the CID.

Among other things, the FTC's 123-page complaint, which is supported by sixteen declarations, alleges the following:

- WPATH is subject to the FTC's enforcement jurisdiction because it operates for its own profit or the profit of its members under 15 U.S.C. § 44, including by "promoting the medical transition services that its members provide," FTC Compl. ¶¶ 6–7; acting to expand access to "insurance payments to its members for transition services" by characterizing those services as "medically necessary," *id.* ¶¶ 250, 253–74; and providing pecuniary benefits to its members, such as touting its members' services in public-facing promotions to potential patients and providing training on securing insurance payments for transition services, *id.* ¶¶ 289–93.

- WPATH's statements in SOC-8 are deceptive or misleading under the FTC Act because, *inter alia*, they lack competent and reliable scientific evidence and misrepresent the benefits and risks of the treatments at issue, *id.* ¶¶ 145–245; they were made without regard for applicable scientific protocols, *id.* ¶¶ 68–83; they misrepresent the process used to develop them, *id.* ¶¶ 84–89; and they misrepresent the quality of evidence underlying the guidelines, *id.* ¶¶ 90–106.

- WPATH violates the FTC Act by providing the means for clinicians to mislead consumers about a product—pediatric medical transition services—which results in substantial consumer injury. *Id.* ¶¶ 316–53. In particular, clinicians invoke WPATH and provide its statements to patients and their parents as a means of promoting the sale of medical transition services. *Id.* ¶¶ 325–37, 341–53.

Of course, the Court need not decide whether the FTC is likely to prevail in arguing that WPATH violated the FTC Act. The relevant question here is distinct: whether the Commission had "reason to believe" that WPATH "may have any information" that is "relevant to" potential violations of the Act. 15 U.S.C. § 57b-1(c)(1). That standard is not demanding, *see, e.g.*, *Morton*

25

*Salt Co.*, 338 U.S. at 642 (the Commission "can investigate merely on suspicion that the law is being violated"), and the FTC's complaint illustrates that it was easily satisfied here. Accordingly, WPATH cannot plausibly allege that retaliation was a but-for cause for issuing the CID and its retaliation claim must fail as a matter of law.

> **B. The Complaint's Other Claims Also Fail as a Matter of Law (Counts II–IV).**

The complaint's remaining claims, which this Court did not address in its preliminary injunction decision, also fail to state a claim upon which relief can be granted.

> **1. The Complaint Does Not State a Claim for Viewpoint Discrimination (Count II).**

In Count II, the complaint alleges that the FTC's "investigation and issuance of the CID" constitute "viewpoint discrimination." Compl. ¶ 139. This claim fails as a matter of law.

The First Amendment generally prohibits the "government from proscribing speech … or even expressive conduct … because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Viewpoint discrimination occurs when the government regulates speech based on "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rectors & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Importantly, viewpoint discrimination requires an actual restriction of or regulation on speech. *See id.* at 828–29. But the Free Speech Clause does not apply "[w]hen government officials are 'engaging in their own expressive conduct.'" *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) (quotation omitted). That straightforward principle "makes sense," *id.*, because "imposing a requirement of viewpoint-neutrality on government speech would be paralyzing," *Matal v. Tam*, 582 U.S. 218, 234 (2017). Although a government official may not "use the power of the State to punish or suppress disfavored expression," *Vullo*, 602 U.S. at 188, the First Amendment "does not

require government to maintain viewpoint-neutrality when its officers and employees speak about" a policy initiative. *Id.* at 187 (quotation omitted).

Contrary to WPATH's assertions, the FTC's issuance of the CID does not amount to "viewpoint discrimination." Compl. ¶ 139. The withdrawn CID merely requested information about potentially deceptive and misleading medical claims; it did not "punish or suppress disfavored expression." *Vullo*, 602 U.S. at 188. After all, the CID was not self-executing and imposed no legal consequence for noncompliance. *See, e.g.*, *Wearly v. FTC*, 616 F.2d 662, 667 (3d Cir. 1980) (explaining that a subpoena recipient faces "no compulsion" to "turn over the documents" and faces no "penalties" for not doing so); *accord Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368–69 (7th Cir. 1983). Moreover, nothing about the Commission's investigation or its CID ever prevented WPATH from continuing to promote its views on PGDT. The complaint thus fails to allege the *sine qua non* of viewpoint discrimination—an actual restriction of or regulation on speech. *See Rosenberger*, 515 U.S. at 828–29.[3]

In sum, because FTC has not targeted WPATH based on viewpoint or suppressed WPATH's speech, the viewpoint-discrimination claim fails as a matter of law.

---

[3] Accordingly, it is immaterial whether, as WPATH alleges, the investigation was motivated by partisanship. Compl. ¶ 140. At any rate, those allegations are unfounded. As explained above, the Commission's investigation was motivated by concerns that WPATH was advancing false or misleading medical claims about PGDT in violation of the FTC Act. Those concerns have been substantiated in the Commission's enforcement action. Similarly, it is beside the point whether various government officials have expressed disagreement with certain treatments for pediatric gender dysphoria. *Contra, e.g.*, Compl. ¶ 140. The Supreme Court has made crystal clear that government officials may express a viewpoint when discussing a policy action. *Matal*, 582 U.S. at 234; *Mullin v. Doe*, 146 S. Ct. 2121, 2138–39 (2026) (rejecting argument that "heated language" expressing "policy views" supported allegation of racial animus); *see Yelp Inc. v. Paxton*, 137 F.4th 944, 956 (9th Cir. 2025) (an official's use of "strong rhetoric" on "hot-button issues" and "sensitive matters on which people disagree" did not support allegation of a retaliatory motive).

### 2. The Complaint Does Not State a First Amendment Claim for Violation of WPATH's Speech or Association Rights (Count III).

The complaint includes a claim that "the FTC has violated WPATH's First Amendment rights to speak and associate through its unlawful investigation and issuance of the CID." Compl. ¶ 146. This claim also fails.

To the extent the claim alleges a violation of WPATH's freedom of speech, it is duplicative of WPATH's retaliation and viewpoint discrimination claims and suffers from the same flaws as those claims. In particular, neither a CID nor an investigation in and of itself qualifies as a restriction on speech. And since there is no burden on speech at all, the FTC would necessarily satisfy "intermediate scrutiny." Compl. ¶ 148.

WPATH's allegation that the CID abridges its freedom of association is equally unavailing. The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Government action may infringe the freedom to associate if it "seek[s] to impose penalties or withhold benefits from individuals because of their membership in a disfavored group," "attempt[s] to require disclosure of the fact of membership in a group seeking anonymity," or "tr[ies] to interfere with the internal organization or affairs of the group." *Id.* at 622–23; *see Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021).

WPATH's association claim should be dismissed because neither the CID nor the investigation "impose[d] penalties" on or "withh[e]ld benefits" from WPATH, compelled disclosure of WPATH's membership in an anonymous group, or "interfere[d] with" WPATH's "internal organization or affairs." *Roberts*, 468 U.S. at 622–23. Besides, even if some infringement of the right to associate occurred here, it was no more "restrictive" than necessary

28

and was "justified by ... compelling state interests" in investigating potential violations of the FTC Act. *Id.* at 623.

### 3. The Complaint Does Not State a First and Fourth Amendment "Improper Investigation" Claim (Count IV).

Finally, the complaint raises an "improper investigation" claim that cobbles together various First and Fourth Amendment theories. Compl. at 43. At its core, the claim appears to be that some of the documents implicated by the CID (before it was withdrawn) are protected by a First Amendment privilege; therefore, the CID was purportedly overbroad under the Fourth Amendment. *Id.* ¶¶ 150–53. This claim fails as a matter of law.

To begin, the claim is fatally premature. It is premised on the threat of compelled "disclosure of materials protected by the First Amendment," Compl. ¶ 151, but that could never have occurred here until the Commission sought enforcement of the CID and a federal court ordered production, *e.g.*, *Gen. Fin. Corp.*, 700 F.2d at 36. (And now, of course, it never *will* occur here because the CID has been withdrawn.) That is important because a CID is not a fixed document; the scope of documents a CID seeks can be modified, and the Commission is free to seek enforcement only as to some documents implicated by the CID, or even not to seek enforcement at all. *See* 16 C.F.R. § 2.7(*l*); *see also* Dkt.43-1 (withdrawing the CID pursuant to Rule 2.7(*l*)). Here, the Commission never indicated whether it would petition to enforce the CID, and if so, as to which specifications (or portions of specifications). *See FTC v. Claire Furnace Co.*, 274 U.S. 160, 174 (1927) (recognizing the "discretion" in "designating the inquiries to enforce"). Accordingly, there was never a concrete dispute about the status of any documents claimed to be privileged. And now that the CID has been withdrawn, no such dispute can arise even in the future.

29

Moreover, it is axiomatic that any assertion of privilege must proceed on a "document-by-document basis." *In re Grand Jury Procs.*, 220 F.3d 568, 571 (7th Cir. 2000).  Here, however, the complaint does not identify even a single privileged document that was ever or could ever be in dispute.  That is fatal to a privilege claim.

Anyway, no privilege applies.  The D.C. Circuit has held that there is no special First Amendment privilege in grand jury proceedings, *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1145–49 (D.C. Cir. 2006), and an FTC investigation is "analogous to the Grand Jury," *Morton Salt Co.*, 338 U.S. at 642–43; *see also In re Grand Jury Procs.*, 486 F.2d 85, 90 (3d Cir. 1973) ("Grand jury subpoenas ... are exactly analogous to subpoenas issued by a federal administrative agency."); *SEC v. McGoff*, 647 F.2d 185, 192 (D.C. Cir. 1981) (same).  Similarly, WPATH's suggestion that the CID is subject to heightened scrutiny under the Fourth Amendment, *see* Compl. ¶ 151 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978)), ignores binding precedent: "[T]he existence of First Amendment 'interests' does not give rise to any substantive or procedural protections above and beyond those afforded by the Fourth Amendment." *Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1056 (D.C. Cir. 1978) (citing *Zurcher*, 436 U.S. at 565); *see Google LLC v. United States*, No. 1:23-mc-67, 2025 WL 778150, at *8 (D.D.C. Feb. 25, 2025) (*Zurcher* "held that warrants impinging on First Amendment interests raise no special concerns" under the Fourth Amendment).

At bottom, then, WPATH is left with a run-of-the-mill claim that the CID is overbroad.  To prevail on such a claim, the complaint must allege more than "[b]roadness" or a "burden"; it must plausibly allege that the CID is "*unduly* burdensome or *unreasonably* broad." *FTC v. Texaco, Inc.*, 555 F.2d 862, 881–82 (D.C. Cir. 1977) (en banc) (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946)).  To satisfy this test, WPATH must allege that the FTC's mere issuance of the

30

CID is sufficient to "unduly disrupt or seriously hinder normal [business] operations." *Id.* at 882; *see FTC v. Standard Am., Inc.*, 306 F.2d 231, 235 (3d Cir. 1962) (insufficient to merely allege that a subpoena is burdensome).

WPATH fails to do so. Indeed, its complaint contains only conclusory allegations of a substantial burden. *E.g.*, Compl. ¶ 152. And to the extent the complaint relies on the ordinary costs of responding to a CID, such allegations are plainly insufficient. *See Texaco*, 555 F.2d at 882 ("Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest."); *cf. FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("The expense and annoyance of litigation is 'part of the social burden of living under government.'" (quotation omitted)).

Count IV therefore fails for multiple reasons.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint.

Dated: July 28, 2026

OF COUNSEL:

LUCAS CROSLOW
 *General Counsel*
ALEX POTAPOV
 *Deputy General Counsel*

CHRISTOPHER MUFARRIGE
 *Director*, Bureau of Consumer Protection
KATHERINE WHITE
 *Principal Deputy Director*, Bureau of
 Consumer Protection

Respectfully submitted,

JONATHAN COHEN
 *Chief Litigation Counsel*
 D.C. Bar No. 48344

R. COOPER VAUGHAN
 *Senior Counsel to the Director*
 Virginia Bar No. 92580

*/s/ Ethan D. Beck*
ETHAN D. BECK
 *Counsel to the General Counsel*
 D.C. Bar No. 90024619

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2110
ebeck@ftc.gov

*Attorneys for the Defendants*

32