**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,

*Plaintiff*,

*v.*

FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON, in his official capacity as Chairman of the Federal Trade Commission; MARK R. MEADOR, in his official capacity as Commissioner of the Federal Trade Commission; and JOHN DOES 1–3, in their official capacities as Commissioners of the Federal Trade Commission,

*Defendants*.

Civil Action No. 1:26-cv-00532-JEB

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. WPATH Engages in First Amendment-Protected Activities on Matters of Public Concern ..... 2

II. The Federal Government Targets WPATH Because of Its Protected Speech ..... 3

III. The FTC Investigates WPATH and Issues a Broad Civil Investigative Demand ..... 5

IV. WPATH Files This Lawsuit and Obtains a Preliminary Injunction ..... 7

V. The FTC Continues Its Investigation, Files Texas Action ..... 9

LEGAL STANDARD ..... 10

ARGUMENT ..... 11

I. WPATH'S CLAIMS ARE NOT MOOT ..... 11

A. This Case Presents a Live Controversy with Ample Available Remedies ..... 13

1. WPATH's Claims Are Not Moot ..... 13

2. WPATH Has Standing. ..... 23

B. FTC's Voluntary Cessation Cannot Cause Mootness ..... 25

C. Capable of Repetition Yet Evading Review ..... 31

II. WPATH HAS STATED A CLAIM UNDER RULE 12(B)(6) ..... 32

A. The FTC Forfeits Many of Its Arguments ..... 32

B. WPATH Has Stated a Claim for Retaliation ..... 33

C. WPATH Has Stated a Claim for Viewpoint Discrimination ..... 35

D. WPATH Has Stated a Claim for Additional First Amendment Violations ..... 38

E. In the Alternative, WPATH Requests Leave to Amend or Supplement its Complaint ..... 39

CONCLUSION ..... 40

## TABLE OF AUTHORITIES

**Cases**

*Akiachak Native Cmty. v. United States Department of Interior*,
827 F.3d 100 (D.C. Cir. 2016) ..... 21

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
525 F.3d 8 (D.C. Cir. 2008) ..... 35

*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) ..... 33

*Almaqrami v. Pompeo*,
933 F.3d 774 (D.C. Cir. 2019) ..... 17

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ..... 25

*Am. Acad. of Pediatrics v. Uthmeier*,
No. 26-cv-2401, 2026 WL 1552734 (N.D. Ill. June 2, 2026) ..... 19

*Am. Nat. Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ..... 11

*Amacher v. City of Tullahoma*,
179 F.4th 999 (6th Cir. 2026) ..... 35

**Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ..... 39

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*,
64 F.4th 1354 (D.C. Cir. 2023) ..... 18

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ..... 29, 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 11

*Burlington Northern R. Co. v. Surface Transp. Bd.*,
75 F.3d 685 (D.C. Cir. 1996) ..... 31

*Cal. Dental Ass'n v. FTC*,
526 U.S. 756 (1999) ..... 29

*Chafin v. Chafin*,
568 U.S. 165 (2013) ..... 12, 13, 14

*Chandler v. Berlin*,
691 F. Supp. 3d 118 (D.D.C. 2023) ..... 35

**Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ..... 11, 20

*Citizens for Resp. & Ethics in Washington v. SEC*,
858 F. Supp. 2d 51 (D.D.C. 2012) .......... 26

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*,
No. 26-cv-1789-RJL, 2026 WL 1802997 (D.D.C. June 23, 2026) .......... 26

*City News & Novelty, Inc. v. City of Waukesha*,
531 U.S. 278 (2001) .......... 28, 29

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) .......... 11

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 11

*Ctr. for Food Safety v. Salazar*,
900 F.Supp.2d 1 (D.D.C. 2012) .......... 17

*Cummings v. Missouri*,
4 Wall. 277 (1866) .......... 1

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*,
85 F. Supp. 3d 250 (D.D.C. 2015) .......... 24

*Diffenderfer v. Central Baptist Church*,
404 U.S. 412 (1972) .......... 18

*DL v. D.C.*,
187 F. Supp. 3d 1 (D.D.C. 2016) .......... 17

**Endocrine Soc'y v. FTC*,
No. 26-cv-512-JEB, 2026 WL 1257289 (D.D.C. May 7, 2026) .......... *passim*

*Exxon Mobil Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) .......... 21

**FBI v. Fikre*,
601 U.S. 234 (2024) .......... 1, 25, 26, 29

**First Choice Women's Res. Centers, Inc. v. Davenport*,
146 S. Ct. 1114 (2026) .......... 24, 25, 34

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
528 U.S. 167 (2000) .......... 25

*FTC v. Gibson Prods. of San Antonio, Inc.*,
569 F.2d 900 (5th Cir. 1978) .......... 20

*Garnett v. Zeilinger*,
323 F. Supp. 3d 58 (D.D.C. 2018) .......... 24

*Giron v. Zeytuna, Inc.*,
597 F. Supp. 3d 29 (D.D.C. 2022) .......... 33

*Hartley v. Wilfert*,
918 F. Supp. 2d 45 (D.D.C. 2013) .......... 34

*Heritage Action for Am. v. Fed. Election Comm'n*,
682 F. Supp. 3d 62 (D.D.C. 2023) ........................................ 19

*In re Civ. Investigative Demand, No. 17-006*,
No. 5:18-mc-20, 2018 WL 3478903 (S.D. Miss. July 19, 2018) ........................................ 22

*In re Grand Jury Proc.*,
574 F.2d 445 (8th Cir. 1978) ........................................ 21

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
823 F. Supp. 3d 1 (D.D.C. 2026) ........................................ 26

*Jenner & Block LLP v. U.S. Dep't of Just.*,
784 F. Supp. 3d 76 (D.D.C. 2025) ........................................ 14, 15

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016) ........................................ 12

*Knox v. Serv. Emps. Int'l Union*,
567 U.S. 298 (2012) ........................................ 11, 14

*Kupperman v. U.S. House of Representatives*,
436 F. Supp. 3d 186 (D.D.C. 2019) ........................................ 22, 23

*Laird v. Tatum*,
408 U.S. 1 (1972) ........................................ 24

*Los Angeles Cnty. v. Davis*,
440 U.S. 625 (1979) ........................................ 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................ 24

*Moharam v. Transportation Sec. Admin.*,
134 F.4th 598 (D.C. Cir. 2025) ........................................ 29

*Morris v. Pruitt*,
308 F. Supp. 3d 153 (D.D.C. 2018) ........................................ 33

*NAACP v. Patterson*,
357 U.S. 449 (1958) ........................................ 36, 39

*Nat'l Black Police Ass'n v. District of Columbia*,
108 F.3d 346 (D.C. Cir. 1997) ........................................ 12

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ........................................ 13, 14, 36, 37

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........................................ 36

*NSTAR Elec. & Gas Corp. v. FERC*,
481 F.3d 794 (D.C. Cir. 2007) ........................................ 33

*PETA v. U.S. Dep't of Agric.*,
918 F.3d 151 (D.C. Cir. 2019) ........................................ 26

*Phillips v. Hillcrest Med. Ctr.*,
244 F.3d 790 (10th Cir. 2001) .......... 33

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) .......... 36

*Powell v. McCormack*,
395 U.S. 486 (1969) .......... 18

*Pub. Citizen, Inc. v. FERC*,
92 F.4th 1124 (D.C. Cir. 2024) .......... 28, 29

*Ray v. CLH New York Ave, LLC*,
No. 19-cv-2841-RCL, 2020 WL 5594064 (D.D.C. Sept. 18, 2020) .......... 22

*Reid v. Hurwitz*,
920 F.3d 828 (D.C. Cir. 2019) .......... 23

*Republican Nat'l Comm. v. Pelosi*,
No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) .......... 22

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .......... 36

*Samma v. Dep't of Def.*,
136 F.4th 1108 (D.C. Cir. 2025) .......... 29

*Schuler v. United States*,
617 F.2d 605 (D.C. Cir. 1979) .......... 11

*Senate Permanent Subcommittee on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) .......... 22

*Settles v. U.S. Parole Comm'n*,
429 F.3d 1098 (D.C. Cir. 2005) .......... 11

*Sparrow v. United Air Lines, Inc.*,
216 F.3d 1111 (D.C. Cir. 2000) .......... 11

*Spencer v. Kemna*,
523 U.S. 1 (1998) .......... 12

*Thorp v. D.C.*,
325 F.R.D. 510 (D.D.C. 2018) .......... 40

*Torrey v. Infectious Diseases Soc'y of Am.*,
86 F.4th 701 (5th Cir. 2023) .......... 28

*Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*,
884 F.3d 48 (1st Cir. 2018) .......... 17, 19

*United States v. Associated Press*,
52 F.Supp. 362 (S.D.N.Y. 1943) .......... 36

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 14

*United States v. Stevens*,
559 U.S. 460 (2010) ........................................ 26

*United States v. Vaught*,
No. 1:18-cv-00452, 2021 WL 2043067 (D. Idaho May 20, 2021) ........................................ 22

*Virginia v. Am. Booksellers Assn., Inc.*,
484 U.S. 383 (1988) ........................................ 24

*Waln v. Dysart School Dist.*,
54 F.4th 1152 (9th Cir. 2022) ........................................ 36

*Weinstein v. Bradford*,
423 U.S. 147 (1975) ........................................ 31

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........................................ 24

*Z.A. v. Blanche*,
No. 5:26-cv-04998, 2026 WL 1907181 (N.D. Cal. Jul. 2, 2026) ........................................ 30

*Zukerman v. United States Postal Serv.*,
961 F.3d 431 (D.C. Cir. 2020) ........................................ 11, 12, 14

**Statutes**

15 U.S.C.§ 44 ........................................ 17, 19, 20

15 U.S.C. § 46 ........................................ 19, 20

15 U.S.C. § 57b-1 ........................................ 19, 20

28 U.S.C. § 2201 ........................................ 18

**Rules**

Federal Rule of Civil Procedure 12 ........................................ 11

Federal Rule of Civil Procedure 15 ........................................ 39, 40

**Other Authorities**

Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ........................................ 3, 4

Exec. Order No. 14,187, 90 Fed. Reg. 8,771 (Jan. 28, 2025) ........................................ 4

## INTRODUCTION

In February 2026, the World Professional Association for Transgender Health ("WPATH") filed this lawsuit to challenge attempts by the Federal Trade Commission ("FTC") to intimidate and silence proponents of transgender healthcare in violation of the First Amendment. The FTC had issued a sweeping Civil Investigative Demand ("CID") to WPATH, which it described as "the very first step" of its investigation. ECF 35 at 18:6-7. This Court enjoined the FTC's overbroad CID, finding that WPATH was likely to succeed in showing that the FTC issued the CID in retaliation for WPATH's protected speech. Six weeks after this Court found that the FTC could not articulate *any* logical basis to even issue a CID to WPATH, the FTC filed its own suit in the Northern District of Texas, claiming that WPATH's Standards of Care, Version 8 ("SOC-8") and related statements violated the FTC Act, and withdrew the enjoined CID. The FTC now claims that this case is moot. But the FTC's further retaliation does not moot WPATH's retaliation claims—it proves them. The parties' dispute over the FTC's First Amendment retaliation and discrimination against WPATH rages across two federal courts' dockets. It is indisputably a live controversy.

The FTC attempts to avoid this Court's jurisdiction. But the "'Constitution deals with substance,' not strategies." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325 (1866)). The FTC declares that this lawsuit is moot, because it withdrew the CID (after this Court enjoined it) and "ended" its investigation (when it filed a retaliatory enforcement action). But this case seeks to address the ongoing chilling effect of not just the CID, but all the FTC's unconstitutional acts. The Court can enter declaratory and equitable relief to redress those unconstitutional acts, demonstrating that the parties have a live controversy and foreclosing any claim of mootness. And the FTC's own voluntary cessation of the investigation and withdrawal of the CID cannot moot this case, as it has not met its burden to show

that it will not simply reinstitute these same challenged acts if its gambit in Texas fails. The FTC has followed this same playbook before to try to avoid a ruling on the merits that it has abused its investigatory powers to silence organizations that it disagrees with, so this Court should exercise its jurisdiction because the challenged act is capable of repetition, yet evading review.

The FTC simultaneously moves to dismiss WPATH's complaint under Rule 12(b)(6) for failure to state a claim. But the Court has already found that WPATH has a likelihood of success on the merits of its First Amendment retaliation claim, based largely on WPATH's proof of the facts alleged in its complaint. ECF 41 at 6. The FTC does not consider that factual basis, let alone show that, contrary to the Court's prior finding, it fails to even plausibly state a claim. The FTC improperly attempts to invoke its allegations in a *separate* case, which are not contained in WPATH's complaint, to preemptively raise defenses. That effort defies the standard on a motion to dismiss. WPATH has stated a claim that the FTC's investigation and CID were retaliation and viewpoint discrimination, and that the FTC broadly violated its First Amendment rights. The Court should deny the FTC's motion.

## BACKGROUND

### I. WPATH Engages in First Amendment-Protected Activities on Matters of Public Concern

WPATH is a 501(c)(3) nonprofit organization dedicated to promoting science-based guidance, education, research, public policy, and respect in transgender health. *See* ECF 1 ("Compl.") ¶ 10. With more than 3,000 members in diverse fields—including medicine, mental health, research, law, and public policy—WPATH serves as a hub for professionals committed to transgender healthcare and an internationally recognized authority on ethical, well-established, and science-based healthcare for transgender individuals. *See id.* ¶¶ 20, 30-35.

As part of its educational and academic activities, WPATH publishes and updates standards of care for transgender healthcare, which "articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender people." *Id.* ¶ 42; ECF 41 at 2. Those standards reflect and express WPATH's science-based belief that people can have "gender identities or expressions that differ" from the "sex assigned to them at birth." *See* E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 International Journal of Transgender Health 51, (Sept. 15, 2022). Most recently, WPATH oversaw the compilation and publication of Standards of Care, Version 8 ("SOC-8") in the *International Journal of Transgender Health* in September 2022. Compl. ¶ 46. SOC-8 is free to the public and provides detailed descriptions of sources, evidence, and methodologies used to create the publication. *See id.* It is intended to be used as clinical guidance for informed, but individualized decision-making on transgender healthcare, which may include varying interventions based on individual patient needs. *See id.*

WPATH is a non-profit, volunteer-run, charitable organization that uses its revenue (generated through membership dues, donations, and grants, not commercial transactions) to promote evidence-based healthcare for transgender individuals. *See id.* ¶¶ 22, 27-29. None of its activities are undertaken for the profit of its governing body or members. *See id.* ¶ 29.

### II. The Federal Government Targets WPATH Because of Its Protected Speech

The Trump Administration disagrees with the guidance provided in SOC-8 and with WPATH's view that individuals can have gender identities that differ from the sex assigned to them at birth. On January 20, 2025, President Trump's first day in office, he issued Executive Order No. 14168, titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025); Compl. ¶ 72. That Order announced a "policy of the United States to recognize two

sexes, male and female," which "are not changeable and are grounded in fundamental and incontrovertible reality." 90 Fed. Reg. 8,615. Eight days later, the President issued another Executive Order, titled "Protecting Children from Chemical and Surgical Mutilation." Exec. Order No. 14,187, 90 Fed. Reg. 8,771 (Jan. 28, 2025); Compl. ¶¶ 72-73. That Order specifically targeted WPATH, calling SOC-8 "junk science" that "lacks scientific integrity," and directing executive agencies to rescind and amend all policies that rely on WPATH's guidance. Exec. Order No. 14,187. It called on executive agencies to end "gender-affirming care," and referred to well-established medical treatments as "chemical and surgical mutilation," "maiming and sterilizing" children, and a "stain on our Nation's history." *Id.*

Following President Trump's Executive Orders, the federal government has launched a sustained assault on transgender healthcare. Compl. ¶¶ 82-87. In May 2025, the Department of Health and Human Services ("HHS") issued "Treatment for Pediatric Gender Dysphoria, Review of Evidence and Best Practices," a 400-page literature review that has been criticized for misrepresenting available research and relying on studies with flawed methodologies. *See* U.S. Dep't of Health and Human Servs., *Treatment for Pediatric Gender Dysphoria: Review of Evidence and Best Practices* (May 2025) (revised ed. Nov. 2025), https://opa.hhs.gov/gender-dysphoria-report ("HHS Report"); *see also* ECF 3-15; Compl. ¶ 45, n.6. The HHS Report contains an entire chapter largely dedicated to repeating misinformation about WPATH, including its allegedly "political" ideology. *See* HHS Report at 14, 157-87.

In April 2025, DOJ issued a memorandum directing prosecutors to "investigate and hold accountable medical providers" who offer transgender healthcare to minors. Compl. ¶ 85, n.40. That memorandum again attacked WPATH and directed DOJ personnel to "identify and purge all Department policies, memoranda, publications, and court filings based on WPATH's guidelines."

*Id.* In July 2025, DOJ issued more than 20 administrative subpoenas to organizations, doctors, and healthcare facilities promoting and/or providing healthcare for transgender minors, the vast majority of which have since been quashed. *Id.* ¶ 86.

### III. The FTC Investigates WPATH and Issues a Broad Civil Investigative Demand

The FTC also began targeting WPATH for investigation because of its views on transgender healthcare. Even before his appointment as the FTC's Chairman, Andrew Ferguson expressed his commitment to "[f]ight back against the trans agenda" and "[i]nvestigate" organizations and individuals who "pushed gender confusion." Compl. ¶ 91. In May 2025, the FTC proposed a workshop entitled "The Big Lie: The Dangers of Gender-Affirming Care for Minors" to further build on President Trump's executive orders. *Id.* ¶ 93. Over 140 FTC employees sent an anonymous Statement of Concern to Congress questioning whether the FTC had jurisdiction over these issues and asserting that FTC officials' "use of charged language suggests the Commission has already taken a position opposing gender-affirming care for minors." *Id.* ¶ 95. It noted that the "FTC has not historically intervened in the confidential, individualized advice given across a series of professional, consent-based appointments protected by the doctor-patient relationship." *Id.*

On July 9, 2025, the FTC held the invitation-only workshop, which it retitled, "The Dangers of 'Gender-Affirming Care' for Minors." *Id.* ¶ 96. That workshop occurred in Washington, D.C. *Id.* No legitimate medical experts in transgender health, medical organizations supporting transgender healthcare, or even transgender individuals spoke at the workshop. *See id.* ¶ 99. Instead, the FTC provided a platform solely to opponents of transgender healthcare, *id.* at 30, n.51 (incorporating the Workshop Transcript, ECF 3-28), who accused WPATH of engaging in "fraud," *id.* ¶ 102 (citing ECF 3-28 at 20-21). During the workshop, then-New York State

Assistant Attorney General Glenna Goldis recommended using FTC investigations as a mechanism to pressure medical associations, stating that:

> Just the act of conducting thorough investigations in the course of pursuing a prosecution and making that public will be really helpful in exposing the medical associations to the public and to themselves so that they see the road back because they're at the point where they're going to start losing members. Pediatricians are going to think, "You know what? This is not representing me well, this group. They're actually making me look bad. I don't like what they're doing. I'm not going to pay dues anymore." They could lose other revenue streams as well.

*Id.* ¶¶ 106-07 (citing ECF 3-28 at 81). The FTC later hired Ms. Goldis as a senior litigator to lead FTC investigations related to pediatric transgender healthcare. *See id.* ¶ 108.

On January 15, 2026, the FTC served a CID on WPATH, which WPATH received the next day. *Id.* ¶ 113. At that time, the FTC characterized the CID as a "preliminary investigative step" in investigating WPATH or potentially even third parties. ECF 35 at 20:25; ECF 41 at 8. It has since contradicted that claim, taking the position that its investigation specifically into WPATH began with the public workshop. ECF 53 at 4 ("Prior to issuing the CID to WPATH, the FTC had been investigating potential violations of the FTC Act by WPATH and others, including through holding a public workshop and public comment period.").

The CID contained fifteen interrogatories and thirteen document requests, broadly calling for WPATH to produce records relating to all aspects of its work and operations. *See* Compl. ¶ 114. It described the subject of the investigation as:

> Whether the Organization or any other Person . . . have made, or assisted others in making, false or unsubstantiated representations or engaged in unfair practices in connection with the marketing and advertising of Pediatric Gender Dysphoria Treatment . . . which, according to the Organization, purports to treat gender dysphoric or gender diverse minors, to consumers in violation of Sections 5 and 12 of the FTC Act . . . and whether FTC action to obtain monetary relief would be in the public interest.

*See id.* ¶ 115.

The CID sought production of every single "Covered Statement" that WPATH has made about "Pediatric Gender Dysphoria Treatment" ("PGDT"). *See id.* ¶¶ 117-23; *see also*, ECF 3-8 at 5. Its definition of "Covered Statement" included "any representation, whether express or implied," that: (1) "PGDTs are safe, including without limitation the representation that a treatment is safe for muscle, bone, or brain development;" (2) "PGDTs are proven effective, including without limitation the representation that PGDTs are supported by evidence-based science;" (3) "PGDTs improve mental health;" (4) "PGDTs reduce the incidence of suicide, including without limitation the representation that PGDTs are life-saving;" (5) "PGDTs are fully or partly reversible, including without limitation the representation that a treatment is only a pause or otherwise do not cause permanent physical changes;" and (6) "PGDTs have few side effects." ECF 3-8 at 7. The CID also sought the names, statements, and descriptions of WPATH's associates. *See, e.g.*, *id.* at 5. It envisioned production of not only information from the past, but also documents generated "until the date of full and complete compliance with this CID." ECF 3-8 at 4; Compl. ¶ 125. WPATH attempted in good faith to negotiate with FTC staff to narrow the CID. Compl. ¶¶ 127-29. The FTC refused. *See id.*

## IV. WPATH Files This Lawsuit and Obtains a Preliminary Injunction

On February 18, 2026, WPATH sued the FTC, Chairman Ferguson in his official capacity, and Commissioner Mark Meador in his official capacity, alleging that the investigation they had initiated (1) retaliated against WPATH for exercising its First Amendment rights; (2) discriminated against WPATH based on its viewpoint on transgender healthcare; (3) violated WPATH's First Amendment right to associate with its members; and (4) exceeded the FTC's investigatory power in violation of the Fourth Amendment. Compl. ¶¶ 131-53. WPATH's claims arose from its protected speech on transgender healthcare, including the publication of SOC-8, *id.* ¶¶ 30-57, the Trump Administration's whole-of-government effort to deny the existence of transgender

individuals and target WPATH for criticism, *id.* ¶¶ 70-87, the FTC's workshop on gender-affirming care and its proposal to investigate WPATH to deprive it of members, *id.* ¶¶ 88-112, and the exceptionally broad CID the FTC issued to WPATH seeking its every communication on pediatric transgender healthcare, *id.* ¶¶ 113-130.

On February 25, WPATH moved for a preliminary injunction barring the FTC from implementing or enforcing the CID it had issued and from taking any further actions to interfere with or retaliate against WPATH's exercise of First Amendment rights. ECF 3. WPATH explained that the FTC's CID, and its investigation more broadly, retaliated against WPATH for expressing its protected view on transgender healthcare. ECF 3-1 at 19-31. The FTC's violation of WPATH's constitutional rights irreparably harmed WPATH, and no governmental or public interest outweighed those harms. *Id.* at 36-39. The FTC challenged the Court's authority to hear pre-enforcement challenges to its CIDs, urged that WPATH had no cause of action, and contended that its investigation had no more effect on WPATH's First Amendment rights than any other investigation of potentially misleading statements. ECF 32 at 17-40.

On May 7, 2026, the Court granted WPATH's motion "in large part and preliminarily enjoin[ed] the FTC from implementing or enforcing its issued CID." ECF 41 at 11. It found WPATH likely to succeed on its First Amendment retaliation claim. It found that the FTC did not contest that WPATH had engaged in protected speech, that the CID had a "chilling effect" on that protected speech, and that the FTC's "articulated hostility towards proponents of gender-affirming care" established a causal link between WPATH's protected speech and the CID. *Id.* at 6-7. The Court went on to explain that the FTC's "attempted demonstration of a legitimate purpose" for the CID fell "flat." *Id.* at 8. The FTC "failed to offer a logical justification connecting WPATH to commercial representations and . . . supposed violators" of laws the FTC has authority to enforce.

*Id.* The Court then concluded that the "extensive evidence of animus" outweighed the FTC's "wafer-thin justifications lacking evidentiary support" and established WPATH's entitlement to a preliminary injunction. *Id.* at 9.

**V. The FTC Continues Its Investigation, Files Texas Action**

The investigation into WPATH did not end with the FTC's issuance of the CID to WPATH, or this Court's issuance of a preliminary injunction against its enforcement. After the CID issued, the FTC added at least three new staff to the investigation: Glenna Goldis, ECF 53-5, Michael Dingman, ECF 53-2, and R. Cooper Vaughn, ECF 53-1.

The FTC also "used its other investigative tools to investigate WPATH." ECF 53 at 5. The FTC issued at least four additional CIDs to health insurance corporations regarding their reliance on WPATH's standards of care: Aetna, Kaiser Foundation Health Plan, Cigna, and Elevance (formerly Anthem). Texas Action, ECF 46-1 ¶ 273 (unsealed Complaint). These are the same insurers identified in the HHS Report as referencing SOC-8 in their policies. *See* HHS Report at 160. It contacted individuals who had spoken at the workshop, as well as other high-profile opponents of transgender healthcare, for declarations "documenting their experiences." ECF 53 at 5-6. These individuals included Soren Aldaco, Cassidy Andrews (a.k.a. Claire Abernathy), Vanessa Sivadge, Elisabeth Bourne, and Gwen Turecki, among others. The FTC also reached out to other individuals who have long advocated against transgender healthcare, including Jonathan and Melissa Skinner, Clementine Breen, and Caroline Miller. Texas Action, ECF 1-4, 1-6–8.

According to the FTC, it also "reviewed publicly available information, including medical and academic publications, information and documents available on WPATH's website," and "information from other enforcement actions and private lawsuits involving WPATH." ECF 53 at 6. On WPATH's review of the FTC's complaint, the FTC likely also reviewed, and quoted, what appear to be public, unauthorized recordings of WPATH members' presentations. *See, e.g.*,

Texas Action, ECF 46-1 ¶ 236.

On June 17, 2026, the FTC, together with Alaska, Iowa, Nebraska, and Texas, sued WPATH in the Northern District of Texas (the "Texas Action"). *See FTC v. WPATH*, 4:26-cv-748, ECF 1, 46-1 (N.D. Tex. June 17, 2026). The FTC alleges that WPATH's statements in SOC-8 have "deceived many consumers into believing that its treatment guidelines are based on strong evidence derived from scientific methods." Texas Action, ECF 46-1 ¶¶ 8-10. According to the FTC, "[m]edical professionals have also been duped." *Id.* ¶ 11. The FTC alleges that it received hundreds of consumer complaints in response to the request for public comment it issued following its 2025 workshop. *Id.* ¶ 22; *but see* Compl. ¶ 111.

Revealing the motive behind the CID and the real purpose behind the Texas Action, the same day the FTC filed suit in the Northern District of Texas, it notified WPATH of its intention to withdraw the CID. ECF 43-1. The FTC stated that, "[d]ue to the filing of [its] complaint, the Commission no longer views compliance with the CID as necessary to its investigation." *Id.* The FTC simultaneously withdrew CIDs it had served on the Endocrine Society and the American Academy of Pediatrics ("AAP"). *See Endocrine Soc'y v. Federal Trade Commission*, No. 1:26-cv-00512-JEB, ECF 40 (D.D.C. June 22, 2026); *American Academy of Pediatrics v. Federal Trade Commission*, No. 1:26-cv-00508-CRC, ECF 40 (D.D.C. June 22, 2026). On June 30, 2026, counsel for WPATH met and conferred with the FTC regarding the withdrawal of the CID. ECF 47 ¶ 18. Counsel for WPATH asked the FTC whether it intended to seek the same information requested by the CID through discovery in the Northern District of Texas. *Id.* The FTC declined to offer any assurances that it would not do so. *Id.*

## LEGAL STANDARD

On a Rule 12(b)(1) motion, courts must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences

that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). A court may additionally "undertake an independent investigation" to examine "facts developed in the record beyond the complaint" as to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). Complaints need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**ARGUMENT**

## I. WPATH'S CLAIMS ARE NOT MOOT

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). A case is only moot if it is "impossible for a court to grant 'any effectual relief whatever.'" *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 444 (D.C. Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012)); *see also Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12-13 (1992) (a case is not moot if the court can award "*some* form of meaningful relief," including a "partial remedy" (emphasis in original)). When assessing mootness, courts first "defin[e] the wrong that the defendant is alleged to have inflicted." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc). Then, courts assess whether any

effective relief is still available. "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Zukerman*, 961 F.3d at 442 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

If the "voluntary conduct" of the defendant "is the only intervening event that even arguably renders the case moot, [courts] apply the two-part voluntary cessation test." *Id.* at 443. Under this test, defendant still bears the burden to show: "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (cleaned up). Even if the defendant satisfies the voluntary-cessation test, a court may retain jurisdiction to review the challenged action if it is "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

Far from mooting WPATH's claims, the FTC's withdrawal of the CID and initiation of the Texas action are simply the next steps in the same unconstitutional course of conduct alleged in the Complaint. The controversy between WPATH and the FTC rages, and this Court can still provide WPATH with relief. The Court can, for example, grant a declaratory judgment that WPATH falls outside of the FTC's regulatory jurisdiction and enjoin unconstitutional retaliation and discrimination, thereby continuing to protect the WPATH in this case. Under normal principles of res judicata and collateral estoppel, a declaratory judgment could also protect WPATH not just from the ongoing retaliation in the Northern District of Texas, but also future retaliatory actions the FTC might undertake elsewhere. And even assuming *arguendo* that the FTC's withdrawal of the CID and filing of the Texas action "concluded" the investigation—a claim the Court should no more credit than the FTC's prior claim that the CID was a "preliminary

investigative step," ECF 35 at 20:25—the FTC's voluntary cessation of its challenged conduct cannot moot this case, as that conduct has already harmed WPATH, and the FTC has provided *no* evidence that its conduct will not likely recur in the future. Finally, the FTC's retaliatory actions are likely to repeat, yet evade review. Since February 2025, the FTC has wielded its investigatory power to suppress and punish disfavored viewpoints on several occasions but has ended those investigations and withdrawn challenged CIDs before a non-preliminary ruling on the merits could be issued. Without this Court's review here, the FTC's constitutional violations will continue unchecked.

### A. This Case Presents a Live Controversy with Ample Available Remedies

#### *1. WPATH's Claims Are Not Moot.*

The FTC has not met its "heavy" burden to demonstrate mootness. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). WPATH brought this lawsuit to prevent and redress the FTC's flagrant violations of its First Amendment rights, and its violations, and WPATH's injury, are ongoing. The FTC contends that withdrawing the CID and filing its Complaint in the Texas Action moots WPATH's lawsuit. These actions have not ended the FTC's constitutional violations—they have escalated them. By filing the Texas action and voluntarily withdrawing the CID, the FTC simply made the "threat[s] of legal sanctions" that formed the basis of WPATH's injury into a reality. *See* Compl. ¶ 141 (quoting *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024)).

The FTC twists both law and WPATH's complaint to suit its arguments. Its conception of the mootness doctrine errs repeatedly, as it argues that "mootness is assessed by reference to the plaintiff's *claims*," as opposed to its requests for relief. ECF 61-1 at 16 ("Mot."). That is not the rule. Over and over, this Court has found that the mootness inquiry is centered on the ability of the Court to provide relief. *See, e.g.*, *Chafin*, 568 U.S. at 172 (cases "'become[] moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting

*Knox*, 567 U.S. at 307)). Framing the mootness inquiry around the viability of WPATH's claims "confuses mootness with the merits." *Id.* at 174.

The core dispute in this case is whether all the FTC's actions aimed at WPATH—including its investigation of WPATH and issuance of the CID—violate WPATH's First Amendment rights. In its Complaint, WPATH alleged that "[t]he FTC's investigation into WPATH, and its issuance of the CID" were retaliation against WPATH for its First Amendment protected activities, and that the FTC "continue[s] to violate" WPATH's First Amendment rights. Compl. ¶ 132. It alleged that "[t]he FTC is using its power to suppress WPATH's contrary viewpoint" and that its "investigation and issuance of the CID additionally violated, and continues to violate, the First Amendment's prohibition on viewpoint discrimination." *Id.* at ¶¶ 139-40. Further, WPATH alleged that "[t]he FTC has violated WPATH's First Amendment rights to speak and associate through its unlawful investigation and issuance of the CID." *Id.* at ¶ 146. And it alleged that the FTC had violated WPATH's First Amendment rights as well, as the CID and the investigation were "of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *Id.* ¶¶ 151-52 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). Read together, WPATH's Complaint alleges that the FTC has used its power to punish and suppress WPATH's protected speech, engaging in the "'scheme of informal censorship' that arises when government actors use the 'threat of invoking legal sanctions and other means of coercion to achieve the suppression of disfavored speech.'" *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 97 (D.D.C. 2025) (quoting *Vullo*, 602 U.S. at 188-89). Its harm, as alleged in the Complaint, is "ongoing."

WPATH has not received relief from these injuries. *See Zukerman*, 961 F.3d at 442 (finding a case justiciable where viewpoint discrimination continued under a different policy and

injury remained). Retaliation's "greatest danger lies in its prospective silencing effect[.]" *Jenner & Block*, 784 F. Supp. 3d at 97. When the government acts to retaliate or suppress speech, the chilling effect of its actions does not change when it switches tactics, especially when that switch escalates the retaliatory impact on the plaintiff.

The FTC revises WPATH's Complaint, cherry-picking its preferred allegations to argue that WPATH only actually challenges the CID the FTC has withdrawn. WPATH's allegations speak for themselves, and the FTC's mischaracterizations are demonstrably false. *Compare, e.g.*, Mot. at 10 ("WPATH's complaint alleges that the FTC's 'issuance of the CID' was 'unconstitutional retaliation' (Count 1)"), *with* Compl. ¶ 132 ("The FTC's investigation into WPATH, and its issuance of the CID, are unconstitutional retaliation"); Mot. at 10-11 ("that the 'issuance of the CID' constituted 'viewpoint discrimination' (Count II)"), *with* Compl. ¶ 139 ("The FTC's investigation and issuance of the CID additionally violated, and continues to violate, the First Amendment's prohibition on viewpoint discrimination"); Mot. at 11 ("[T]hat the 'issuance of the CID' violated 'WPATH's First Amendment rights' . . . (Count III)"), *with* Compl. ¶ 146 ("[T]he FTC has violated WPATH's First Amendment rights to speak and associate through its unlawful investigation and issuance of the CID"); Mot. at 11 ("[T]hat the 'the CID' 'violates WPATH's First and Fourth Amendment rights' . . . (Count IV)"), *with* Compl. ¶ 152 (specifying both "the CID" and "the investigation"). The FTC's characterization is further belied by its concession that the Complaint does, in fact, challenge its investigation of WPATH. *See* Mot. at 13. Only one of WPATH's requests for relief even mentions the CID. Compl. at 44.

WPATH's lawsuit challenges both the specific CID and the broader investigation into WPATH, as two concrete actions that the FTC took to silence and punish WPATH for its protected speech. The FTC's selective quoting of the Complaint does not change that fact. WPATH alleged

that the broader investigation improperly retaliated and discriminated, in violation of WPATH's First Amendment rights. The Complaint's specific concerns with the CID do not erase its allegations about the investigation or render them superfluous. It makes perfect sense that WPATH highlighted the CID in its Complaint. The FTC itself represented to this Court that the CID was the FTC's "*very first step* forward to gather information" about WPATH. ECF 35 at 18:6-7 (emphasis added); *id*. at 17:18-22 ("FTC needs to start somewhere."). When WPATH filed this lawsuit in February 2026, the CID was the only public detail about the FTC's investigation into WPATH specifically, as opposed to the prior investigatory steps that the FTC averred that it had taken as part of a broader investigation into transgender healthcare. ECF 32 at 25. WPATH alleged that the CID was the "initiating" step of the FTC's investigation. Compl. ¶ 4. It provided details regarding the CID as evidence of the unconstitutional nature of the FTC's *entire* investigation into WPATH. The FTC could not even "offer a logical justification connecting WPATH to commercial representations," ECF 41 at 8, for the document it once claimed initiated the investigation.

Similar conclusions can be drawn regarding the other steps it took to investigate and ultimately sue WPATH six weeks after this Court issued its preliminary injunction. WPATH has since received more information about additional steps that the FTC took in its investigation of WPATH, *see* pp. 9-10, *supra*, but it was not required to allege investigatory steps that *had not yet occurred* or nonpublic information that was solely in the FTC's possession. If, as the FTC now implies, Mot. at 13, the workshop and public comment process were indeed part of the investigation of WPATH, rather than transgender healthcare generally, WPATH's allegations would subsume those as well.

The FTC is still punishing WPATH for its protected speech. It is still using the collective

might of the agency to coerce WPATH into silence and to suppress its speech. And it is using the fruits of its unconstitutional investigation to continue to target WPATH. While a chilling effect on speech can (and did) occur pre-enforcement, the fact that the FTC followed through on its threats does not reduce or redress WPATH's ongoing injury.

This Court retains ample avenues to provide redress for WPATH's injuries. "For the purposes of mootness analysis, 'any effective relief whatever is expansively defined.'" *DL v. D.C.*, 187 F. Supp. 3d 1, 6 (D.D.C. 2016) (quoting *Ctr. for Food Safety v. Salazar*, 900 F.Supp.2d 1, 5 (D.D.C. 2012)). Any disagreement the FTC has with WPATH's legal theory is irrelevant, because courts "assum[e] the plaintiff prevails" when determining whether they can grant "any effectual relief whatever." *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019). A favorable decision would plainly allow the Court to provide some remedy for WPATH's ongoing injuries.

First, the Court can provide declaratory relief. WPATH seeks a declaratory judgment that the FTC's investigation of WPATH constitutes First Amendment retaliation, viewpoint discrimination, and otherwise violates WPATH's First Amendment rights. *See* Compl. ¶ 44. It further seeks a declaratory judgment that WPATH's statements, including SOC-8, are protected by the First Amendment. Finally, it seeks declaratory judgments that WPATH's activities, like SOC-8, do not constitute activities in or affecting commerce, and that WPATH is not a "corporation" as defined by 15 U.S.C.§ 44.

"A declaratory judgment is often a means to an end rather than an end in and of itself, as its purpose is to determine the rights and obligations of the parties so that they can act in accordance with the law." *Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 58 (1st Cir. 2018). A declaratory judgment "shall have the force and effect of

a final judgment or decree." 28 U.S.C. § 2201(a). It can "serve as the basis for issuance of a later injunction to give effect to the declaratory judgment and it may have res judicata effect in later actions." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1366 (D.C. Cir. 2023). Such relief can redress the chilling effect of the FTC's unconstitutional acts. A declaratory judgment from this Court would signal to WPATH, its members, and entities that associate with it that the FTC has acted unconstitutionally, lacks jurisdiction over WPATH, and that similar future actions can be expeditiously enjoined. It would indicate that WPATH's members and associates could not be targeted by the FTC just for their association with WPATH, and that WPATH's speech, from policy statements to SOC-8, is protected by the First Amendment. It could have collateral estoppel effect in the case the FTC filed in the Northern District of Texas and any future case the FTC may attempt to file against WPATH. As the FTC's campaign to silence and suppress WPATH has not ended, the chilling effect of the FTC's actions can be alleviated by such declaratory relief.

*Diffenderfer v. Central Baptist Church* is not to the contrary. 404 U.S. 412, 414-15 (1972). *Diffenderfer* involved a request for a declaratory judgment that a repealed statute violated the First Amendment. *Id.* But the Supreme Court remanded to allow the plaintiff to amend its complaint to "demonstrate that the repealed statute retains some continuing force or to attack the newly enacted legislation." *Id.* Here, the FTC has not repealed its retaliatory investigation. It has simply shifted to a new form of retaliation that is no less capable of being redressed by the declaratory relief WPATH seeks. The FTC's unconstitutional actions have "continuing force" and remain subject to "attack" by WPATH's claims. *Id.*

Moreover, a lawsuit for declaratory judgment cannot be moot where a favorable declaration "can then be used as a predicate to further relief." *Powell v. McCormack*, 395 U.S. 486, 499

(1969). The fact that WPATH must defend itself against the Texas Action, which arises out of and continues the FTC's unconstitutional investigation, is an injury unto itself. It is entirely proper for WPATH to seek declaratory relief that would enable it to defend itself in the Texas Action. *See Heritage Action for Am. v. Fed. Election Comm'n*, 682 F. Supp. 3d 62, 70 (D.D.C. 2023) (case not moot where declaratory relief would help in defending separate lawsuit). The FTC here is only one part of a whole-of-government attack on WPATH. Declaratory relief could also be used by WPATH in parallel or subsequent actions "to later obtain further relief" from similar violations, including damages. *Union de Empleados*, 884 F.3d at 58. A favorable declaratory judgment regarding whether WPATH's activities are protected by the First Amendment would enable it to obtain subsequent monetary relief from state actors' similar violations of WPATH's constitutional rights, under 42 U.S.C. § 1983. *See, e.g.*, *Am. Acad. of Pediatrics v. Uthmeier*, No. 26-cv-2401, 2026 WL 1552734, at *1 (N.D. Ill. June 2, 2026).

A declaratory judgment from this Court that WPATH's associations and speech, including the publication of SOC-8, are protected by the First Amendment or that WPATH is not a "corporation" as defined by 15 U.S.C.§ 44 would all enable WPATH to obtain relief from the FTC's continuous targeting of its speech and associations regarding SOC-8. The FTC is an agency with limited investigative and enforcement authority. It may only investigate "persons, partnerships," or "corporations," meaning entities "organized to carry on business for [their] own profit or that of [their] members." 15 U.S.C. §§ 44-46. Its power to investigate under 15 U.S.C. § 46, and bring enforcement actions under § 45, is clearly circumscribed by the definitions in § 44 (and by the First Amendment). The FTC's reliance on 15 U.S.C. § 57b-1 is misplaced. While § 57b-1 permits the FTC to issue *requests* to nonprofit organizations in certain circumstances, the FTC has not limited itself to issuing requests. It now admits that it has been investigating WPATH

specifically and thus must exercise its limited powers under § 46, *not* § 57b-1. And even the FTC's broader power under § 57b-1 is limited by the First Amendment. The FTC thus cannot seriously contest that a declaratory judgment from this Court would limit its power to take further investigative and enforcement action concerning WPATH.

The FTC suggests that a declaration that WPATH is not a "corporation" under § 44 would apply only to the specific time period the Court considers. Mot. at 18. But that time period would, at a minimum, be the time period covered by the challenged investigation. The FTC's CID covered the time period from January 1, 2021, until the date of full compliance. ECF 3-8 at 4. A declaration covering that same period would plainly provide WPATH "effectual relief." It would prohibit the FTC from undertaking any enforcement action based on WPATH's conduct during a five-year period.

Injunctive and equitable relief also remain available. WPATH requested permanent injunctive relief against the FTC, barring it "from taking further or continuing action to hinder, interfere with, intimidate, or restrain WPATH's exercise of its constitutional rights[.]" Compl. at 44 ¶ (f). The FTC has many options to restrain or chill WPATH's exercise of its First Amendment rights, and it has failed to disclaim any one of those avenues. *See* pp. 27-28, *infra*. An injunction by this Court preventing such activities would prevent the injury that WPATH would incur from subsequent retaliation and viewpoint discrimination. Finally, this Court could fashion relief to prevent further harm arising out of the FTC's unconstitutional investigation. This Court could order the FTC to return any information obtained pursuant to its unconstitutional investigation to their original sources, even if the FTC obtained that information from third parties rather than WPATH. *See Church of Scientology*, 506 U.S. at 13; *FTC v. Gibson Prods. of San Antonio, Inc.*, 569 F.2d 900, 903 (5th Cir. 1978) (live controversy where "relief would be available by an order

requiring the FTC to return the subpoenaed documents and to forbid use of the material in the adjudicatory hearing"). This remedy would further redress the chilling effect on WPATH and harm to WPATH, as it would remedy at least one harm of the underlying investigation. For example, the FTC issued CIDs to medical insurance companies and obtained documents regarding their reliance on SOC-8. The Court could order the FTC to return or destroy those documents and prohibit the FTC from relying on them in future actions. Such relief would not be an advisory opinion. It would redress a real injury arising out of the FTC's unconstitutional acts alleged in this Complaint.

This case is entirely distinguishable from the FTC's cited cases, where the challenged action was mooted after it could not have a future effect on the parties. For example, in *Akiachak Native Cmty. v. United States Department of Interior*, 827 F.3d 100, 103 (D.C. Cir. 2016), the plaintiff and intervenor sought relief tied only to a challenged regulation, including declaratory relief regarding the regulation's validity or the state's compliance with the regulation. *Id.* When that regulation was rescinded, it no longer existed. *Id.* at 106. It had no effects, and could not have any future effects, on the parties, so the Court could not offer relief. *Id.* Similarly, in *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022), the Court could not provide any relief to the plaintiff, who sought only to enjoin an investigation and subsequent enforcement action, after both had concluded *in the plaintiff's favor*. *Id.*

The FTC cannot cite a single analogous case where a First Amendment challenge to an agency's investigation or subpoena was mooted through withdrawal of the subpoena *after* the agency had filed an enforcement action. The FTC cannot rely on cases where plaintiffs sought to specifically quash a request for information under statutory schemes that permitted that remedy alone. *See In re Grand Jury Proc.*, 574 F.2d 445, 446 (8th Cir. 1978) (mooting challenge to

contempt order for failure to comply with a grand jury subpoena following subpoena's withdrawal); *In re Civ. Investigative Demand No. 17-006*, No. 5:18-mc-20-DCB-MTP, 2018 WL 3478903, at *1 (S.D. Miss. July 19, 2018) (petition to quash Department of Justice CID under 31 U.S.C. § 3733(j) moot upon withdrawal of CID); *United States v. Vaught*, No. 1:18-cv-00452-DCN, 2021 WL 2043067, at *3 (D. Idaho May 20, 2021) (collecting cases that "have held that the withdrawal of an IRS summons moots *a petition to quash* that summons" brought under 26 U.S.C. § 7609) (emphasis added); *see also Ray v. CLH New York Ave, LLC*, No. 19-cv-2841-RCL, 2020 WL 5594064, at *4 (D.D.C. Sept. 18, 2020) (finding a *motion* to quash moot in a civil case); *cf. Republican Nat'l Comm. v. Pelosi*, No. 22-5123, 2022 WL 4349778, at *1 (D.C. Cir. Sept. 16, 2022) (granting "unopposed motion to dismiss on grounds of mootness"). *Senate Permanent Subcommittee on Investigations v. Ferrer* is even further afield, as the court based its decision in substantial part on the Speech or Debate Clause's protection of documents Congress had obtained. 856 F.3d 1080, 1086 (D.C. Cir. 2017). None of these cases involved a First Amendment challenge to an agency's entire investigation. Nor did any confront an agency's withdrawal of an allegedly retaliatory request for information only after it had initiated a substantially similar enforcement action that the claimant had challenged as falling outside the agency's jurisdiction. Those facts, taken together, permit this Court to award effectual relief upon a finding of First Amendment violations. *See* pp. 14, 17-21, *supra*.

Finally, *Kupperman v. U.S. House of Representatives* only underscores why this case is not moot. 436 F. Supp. 3d 186 (D.D.C. 2019). In *Kupperman*, the House not only withdrew its subpoena, but also "repeatedly stated" that it would not seek to hold Kupperman in contempt. *Id.* at 191-94. The Court was "hard-pressed to imagine a more unequivocal statement" that the subpoena would not reissue and found the prospect of a contempt action "extremely unlikely"

because the House had "*not* used its inherent contempt authority in nearly a century." *Id.* at 192, 194. Intervening events, including the publication of an impeachment report and the filing of draft articles of impeachment, made it even less likely that the subpoena would be reissued or enforced. *Id.* Here, in contrast, the FTC's investigation has already had concrete effects the Court can redress. *See, e.g.*, pp. 37-38, *infra*. And the threat of an enforcement action is not "extremely unlikely," because the FTC did not withdraw its CID until after it had initiated an enforcement action. That the enforcement action does not seek to enforce the CID, specifically, is irrelevant, because it still retaliates and discriminates in violation of WPATH's First Amendment rights, precisely as WPATH claimed. If anything, the retaliatory and discriminatory effect of the FTC's enforcement action is *greater* than that of an action to enforce the CID, because it imposes more severe consequences. Engaging in a more extreme form of the challenged conduct does nothing to moot the challenge to that conduct.

*2. WPATH Has Standing.*

The FTC next argues that WPATH's allegations regarding the investigation are insufficient to confer standing. Mot. at 14-15. Those arguments reiterate the FTC's previous assertion that a challenge to an investigation is not a cause of action. ECF 32 at 39-40. The Court has already decided that it is. *Endocrine Soc'y v. FTC*, No. 26-cv-512-JEB, 2026 WL 1257289, at *9 (D.D.C. May 7, 2026) ("Where, as here, that 'action' is a government investigation that inflicts a standalone injury by chilling protected speech, it falls under the prohibited umbrella and is actionable."). Nor is the FTC correct that analysis of this issue is limited to the factual allegations in WPATH's complaint about the investigation. *See Reid v. Hurwitz*, 920 F.3d 828, 833 (D.C. Cir. 2019) (rejecting the application of the *Twombly/Iqbal* standard to pleadings in a mootness inquiry). The Court can thus consider the FTC's investigative steps that were not public at the time of the Complaint when evaluating WPATH's standing and the relief available. *See* pp. 9-10, *supra*. Even

if WPATH were limited to the allegations in the Complaint, the Court would have to consider its standing "at the time the complaint was filed." *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 64 (D.D.C. 2018) (quoting *Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992). As of that filing, WPATH clearly had standing to challenge the FTC's investigation based on the then-pending CID and future actions that WPATH alleged the FTC contemplated. *See First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1122 (2026). Whether judged at the time WPATH filed its complaint or based on later revelations, WPATH has always faced an impending injury due to the FTC's violation of its First Amendment rights. That injury is directly traceable to the FTC's investigation and redressable several times over. *See* pp. 14, 17-21, *supra*.

The Supreme Court held as much in *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1127 (2026), where the threat of legal action following the issuance of a subpoena was enough to create a present injury and controversy. *See id.* ("An objectively reasonable recipient of a demand like that would be induced, as well, to trim its protected advocacy knowing it now stands in the government's crosshairs."); *Virginia v. Am. Booksellers Assn., Inc.*, 484 U.S. 383, 393 (1988) (self-censorship in response to a "well-founded fear that the law will be enforced against them" is an injury in fact "that can be realized even without an actual prosecution"). WPATH is alleging that the FTC's specific, targeted investigation into WPATH chilled its protected speech and association. This is sufficient to create a justiciable First Amendment controversy. *See First Choice*, 146 S. Ct. at 1128 (Attorney General's decision to "target[ ] First Choice for investigation" was a "specific action" triggering non-hypothetical First Amendment harms) (quoting *Laird v. Tatum*, 408 U.S. 1 (1972)); *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) (finding that the "scope and manner" of an investigation in its totality was

unconstitutional retaliation); *Endocrine Soc'y*, 2026 WL 1257289, at *9.

The FTC's violations of WPATH's constitutional rights have escalated, not stopped, foreclosing any claim of mootness. And even if the Court limited its analysis to the FTC's past unconstitutional actions, it could still provide meaningful declaratory and equitable relief to WPATH.

### B. FTC's Voluntary Cessation Cannot Cause Mootness

The FTC's mootness argument also fails under the voluntary-cessation doctrine. It is well settled that the government cannot "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *Fikre*, 601 U.S. at 241 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "A defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000)). To meet this "formidable burden," the FTC must make "absolutely clear" that "the practice cannot 'reasonably be expected to recur.'" *Friends of the Earth*, 528 U.S. at 189-90. "Among other things, [the FTC] 'must prove no reasonable expectation remains that [it] will return to [its] old ways.'" *First Choice*, 146 S. Ct. at 1130 (quoting *Fikre*, 601 U.S. at 241). It has not done so.

The FTC has not even provided the *minimum* required to meet its burden: a declaration stating that it will not restart the challenged conduct. *Fikre*, 601 U.S. at 242 (finding that a declaration stating that the plaintiff "will not be placed on the No Fly List in the future based on the currently available information" was insufficient to show that past conduct would not recur). The FTC's statements in its briefing do not make up for this lack of a declaration, and the fact that the defendant is a government actor did not change the analysis in *Fikre* and should not do so here. The FTC argues that a "presumption of legitimacy" attaches, so there is "less concern about the

recurrence of objectionable behavior" where the defendant is a "government actor." Mot. at 19 (quoting *PETA v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019) and *Citizens for Resp. & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51, 61 (D.D.C. 2012), respectively). But the voluntary-cessation doctrine "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241. Regardless, the presumption of regularity can be rebutted. *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 10 (D.D.C. 2026). This Court previously found that the FTC was likely retaliating against WPATH in violation of its First Amendment rights. ECF 41 at 8-9. Having previously found that the FTC likely acted from a "retaliatory motive," *id.*, the Court should not simply credit unsworn promises that the FTC will not retaliate again. The First Amendment "does not leave [WPATH] at the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Moreover, the FTC's prior representations to this Court have proved incorrect. It previously informed the Court that the CID was merely "the very first step" of its investigation, ECF 35 at 18:6-7, only to backtrack after the CID was enjoined and declare that a preexisting investigation had "spawned" the CID and then "ended when the FTC filed its complaint," Mot. at 15, 20.

Even where Courts have credited such representations that conduct would not recur, they have required the government to make "clear, unconditional representations in its filings and before the Court." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, No. 26-cv-1789 (RJL), 2026 WL 1802997, at *4 (D.D.C. June 23, 2026). Here, the FTC says only that it "has no plans to try to enforce" the CID or to "obtain information pursuant to the CID" that was already enjoined by this Court. Mot. at 20. But that is simply a promise not to violate this Court's preliminary injunction. It offers no assurance that the FTC will not issue another retaliatory CID or take other types of future retaliatory action. And while it claims the investigation is over, it

makes that claim only because it filed the Texas Action. Mot. at 20. The FTC makes no representations about how it will conduct the Texas Action or what it will do if the Texas Action is dismissed. The FTC's reticence on these subjects makes sense. The FTC does not want to make any representation that might constrain its future actions in the Northern District of Texas or elsewhere. But such reservations of the right to take future action that WPATH will regard as unconstitutional retaliation and discrimination are exactly why this case is not moot.

The FTC's representations leave it free to open a new investigation into WPATH tomorrow or to issue a new CID to WPATH based on its prior assertion that it "is entitled to treat WPATH as a witness that may have relevant information to the broader investigation" into transgender healthcare. ECF 35 at 22:16-18. The FTC has not shied away from repeatedly targeting the same entities again and again. *See, e.g.*, *FTC v. Amazon.com*, No. 2:14-cv-01038 (W.D. Wash. 2014); *FTC v. Amazon.com*, No. 2:23-cv-01495 (W.D. Wash. 2023); *FTC v. Amazon.com*, No. 2:23-cv-0932 (W.D. Wash. 2023). The filing of one action is no guarantee that another investigation or action will not follow.

The FTC could also take further action that would fall within the scope of WPATH's claims by targeting third parties it views as affiliated with WPATH, as the FTC has done in past actions. Before the FTC issued the CIDs to WPATH and similar organizations, media research and analysis organizations sued the FTC for alleged violations of their First and Fourth Amendment rights through unconstitutional investigations. *E.g.*, *NewsGuard Technologies v. FTC*, 1:26-cv-353-DLF (D.D.C.); *Media Matters for Am. v. FTC*, 1:25-cv-1959-SLS (D.D.C.). The FTC followed a similar playbook in these lawsuits—it filed an enforcement action in the Northern District of Texas, and withdrew the CIDs issued to each media organization. The only difference is that, in the case of NewsGuard, the FTC sued third parties affiliated with NewsGuard and "settled" for an

agreement that those third parties not use NewsGuard's services. *NewsGuard*, No. 26-cv-00353, ECF 34 at 2-3. Such action by the FTC with respect to WPATH would clearly fall within the scope of WPATH's claim for violation of WPATH's associational rights. Compl. ¶¶ 145-149. The FTC's representations about its future conduct would leave it entirely free to investigate and sue third parties over their protected affiliation with WPATH. That too prevents mootness under the voluntary-cessation doctrine.

Nor is there any guarantee that the FTC's lawsuit in the Northern District of Texas will survive. WPATH has filed a robust motion to dismiss on various grounds, as well as a motion to dismiss for lack of venue. Texas Action, ECF 53, 55. Binding Fifth Circuit precedent precludes the FTC from basing deception claims on professional medical guidance that identifies the evidence supporting its recommendations. *See Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023) (publishing medical guidelines "even a hotly debated one—in a peer-reviewed journal cannot give rise to a misrepresentation claim"). The FTC's claims in the Texas Action also violate basic principles of federalism and the First Amendment. Texas Action, ECF 53 at 25-36. And the FTC's theory of venue is fatally defective. Texas Action, ECF 55. If the Texas Action is dismissed due to these deficiencies, as WPATH expects, then the FTC will almost certainly reopen its investigation into WPATH. The FTC has not provided any contrary representation.

Outside of its unsupported claims that its representations are sufficient, the FTC merely argues that the voluntary-cessation doctrine does not apply because there is no "arguable manipulation of [the Court's] jurisdiction." *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1129 (D.C. Cir. 2024) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)). Not all D.C. Circuit opinions apply this requirement—indeed, the Supreme Court's recent opinions

have not either. *See Fikre*, 601 U.S. at 240; *Aref v. Lynch*, 833 F.3d 242, 251 n.6 (D.C. Cir. 2016); *Moharam v. Transportation Sec. Admin.*, 134 F.4th 598, 607 (D.C. Cir. 2025). If this is a requirement, WPATH has more than met it. Courts apply the "arguable manipulation" exception where the party whose actions mooted the case "opposed a declaration of mootness" and "could gain nothing from our dismissal." *Pub. Citizen, Inc.*, 92 F.4th at 1129 (quoting *City News & Novelty, Inc.*, 531 U.S. at 284); *Samma v. Dep't of Def.*, 136 F.4th 1108, 1115 (D.C. Cir. 2025) ("DoD argues that it should be held to the heavy burden imposed by that doctrine, barring mootness."). The FTC gains substantially from dismissal for mootness and, in contrast to the defendants in *Public Citizen* and *Samma*, has actively sought dismissal on mootness grounds.

The FTC's filing of the Texas Action and its withdrawal of the CID prove that it attempts to avoid this Court's jurisdiction. A little more than a month before the FTC filed its lawsuit in the Northern District of Texas, the Court entered two preliminary injunctions finding a high likelihood of unconstitutional retaliation against WPATH and the Endocrine Society. The Court faulted the FTC for providing "no answers" to the question of why "the Society and other nonprofit organizations [such as WPATH] that sell no products and engage in no advertising [are] the current investigative targets[.]" *Endocrine Soc'y*, 2026 WL 1257289, at *12-13; ECF 41 at 1 (incorporating Endocrine Society by reference). While the FTC offered an "unsupported assertion" that some members of the nonprofit organizations "'may have a financial interest' in pediatric-gender-dysphoria treatment," this Court explained that only when "nonprofit entities exhibit signs of capture by a particular industry or are rife with conflicts of interest that steer them from a noncommercial posture" can the FTC "exercise authority over them." *Id.* at *13 (citing *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 767 (1999)). The FTC identified "no evidence, however, that any such conflict is at play here and has declined to give . . . any theory upon which it expects

to uncover concrete evidence of a third-party violator." *Id.*; ECF 41 at 9 (expressing "concern" about FTC's "tenuous path to uncovering violations"). Those concerns about the FTC's authority to investigate apply *a fortiori* to its authority to initiate an enforcement action and would likely have doomed any enforcement action before this Court. *Endocrine Soc'y*, 2026 WL 1257289, at *12. The FTC withdrew the enjoined CID and rushed to a different court precisely because it did not want this Court to finally adjudicate the issue of whether it has jurisdiction over WPATH. That is manipulation of this Court's jurisdiction.

Forum shopping is the only credible explanation for the FTC's decision to file in the Northern District of Texas. WPATH's headquarters, principal place of business, offices, operations, and officers are all located outside of Texas. Texas Action, ECF 55 at 4-5. Its "only contacts in Texas are in the Western District," where "WPATH's Texas registered agent is located." *Id.* at 4 n.1. Even there, WPATH has no office, employees, or activities. The only statements that the FTC identifies in the Northern District of Texas occurred eight years ago, before the publication of SOC-8, and consisted of statements by third parties, not WPATH. *Id.* at 6-7. The FTC is simply following in the footsteps of other agencies and filing as many cases as possible in what it views as a more favorable forum. *See, e.g.*, *Z.A. v. Blanche*, No. 5:26-cv-04998, 2026 WL 1907181, at *17 (N.D. Cal. Jul. 2, 2026) (finding that DOJ's decision to issue restyled administrative subpoenas from a grand jury located in the Northern District of Texas was "forum shopping" and that it was "hardly DOJ's first such ploy.").

Finally, the FTC's actions in this case follow a past pattern of avoiding final rulings on the merits in other cases that have challenged its investigations and CIDs for violating the First Amendment. *See Media Matters for America v. FTC*, No. 1:25-cv-01959, ECF Nos. 51, 56, 62 (D.D.C. April 2026) (withdrawing CID before motion to dismiss briefing ended, due to filing of

enforcement action in *Federal Trade Commission, et al. v. Dentsu US, Inc., et al.*, No. 26-cv-469 (N.D. Tex. 2026) and subsequent settlement); *NewsGuard Technologies, Inc. v. FTC*, No. 26-cv-00353, ECF 33 (D.D.C. Apr. 17, 2026) (same, but during pendency of appeal of denial of motion for a preliminary injunction); *Disinformation Index, Inc. v. FTC*, No. 1:25-cv-04137, ECF 37 (Apr. 21, 2026) (same, but during consideration of preliminary injunction); *Endocrine Soc'y v. FTC*, No. 26-cv-00512, ECF 40 (D.D.C. June 22, 2026) (withdrawing CID issued to the Endocrine Society after filing action against WPATH before motion to dismiss briefing); *Am. Academy of Pediatrics v. FTC*, 26-cv-00508, ECF 40 (D.D.C. June 22, 2026) (withdrawing CID issued to the American Academy of Pediatrics after filing action against WPATH before ruling on preliminary injunction or briefing of motion to dismiss). The FTC cannot deny that it is avoiding this Court's jurisdiction when it has repeatedly refused to litigate meritorious First Amendment claims to final judgment.

Viewing these circumstances together, the FTC's filing in the Northern District of Texas and its withdrawal of the CID show that it is far more than "arguable" that it voluntarily ceased the challenged conduct for the purpose of mooting this case. The voluntary cessation doctrine exists to address such actions, and the FTC has not met its burden of showing that it will not simply restart its challenged conduct.

### C. Capable of Repetition Yet Evading Review

Another mootness exception applies as well, as Defendants' First Amendment violations are quintessentially capable of repetition while evading review. This doctrine applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). "[O]rders of less than two years' duration ordinarily evade review." *Burlington Northern R. Co. v. Surface*

*Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996).

As described above, the FTC's actions are "capable of repetition." Indeed, the FTC has repeated its conduct of issuing a CID and withdrawing it in response to a First Amendment challenge at least six times in the past year alone. *See* pp. 30-31, *supra*. WPATH remains at risk of future CIDs and investigations as long as it stands by the protected viewpoint that caused the FTC to retaliate. WPATH will continue to promote science-based transgender healthcare, including by updating its SOC. With its expansive view of its CID and investigatory powers, the FTC will continue to target WPATH in the future absent this Court's intervention.

Moreover, the FTC's conduct is evading review. The FTC's investigations into entities are rarely public, and the period to challenge CIDs is short. If the FTC can simply end any inquiry into the constitutionality of its pre-enforcement challenges by filing an enforcement action and/or withdrawing the CID, it will avoid accountability for its First Amendment violations. This exact pattern has been demonstrated over the last two years, as each time the FTC has issued a CID that has been subject to a pre-enforcement challenge on First Amendment grounds, it has withdrawn the CID before a court could render a non-preliminary ruling on jurisdiction or the merits.

This Court should find that WPATH presents a live controvesy, and deny the FTC's Rule 12(b)(1) motion.

## II. WPATH HAS STATED A CLAIM UNDER RULE 12(B)(6)[1]

### A. The FTC Forfeits Many of Its Arguments

As a preliminary matter, the FTC has forfeited arguments throughout its brief by failing to

[1] While WPATH maintains that the FTC's voluntary withdrawal did not render it moot, WPATH accepts that its Fourth Amendment claim is not ripe, as the FTC has not acted to enforce the CID. WPATH requests that this Court dismiss the part of Count IV resting on the Fourth Amendment without prejudice to refiling should future actions by the FTC warrant it. However, the overbreadth and undue burden of the CID remain relevant to the FTC's violations of WPATH's First Amendment rights.

raise them properly. First, it attempts to incorporate arguments from its opposition to WPATH's motion for a preliminary injunction—briefed and argued under a different legal standard—into its motion to dismiss, without further explanation outside of restating its legal conclusions. *See* Mot. at 23. Such incorporation would require the Court to convert the FTC's arguments from one legal standard to another, ignore arguments based on extrinsic evidence not included in WPATH's complaint, and transpose any citation to WPATH's preliminary injunction evidence to WPATH's Complaint—essentially requiring this Court to make the FTC's argument for it. The FTC has forfeited these arguments. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019). If the Court concludes that incorporation was proper, WPATH requests that this Court incorporate WPATH's memorandum in support of its motion for a preliminary injunction, and its reply in support of its preliminary injunction, to rebut the FTC's incorporated claims. Alternatively, WPATH requests to address those arguments on sur-reply.

Second, the FTC makes several arguments in conclusory single-sentence statements with no explanation or cited authority. *See* Mot. at 24; *see Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 48 (D.D.C. 2022) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001)). It also asserts two arguments only in footnotes. *See* Mot. at 24 n.2, 27 n.3; *see Morris v. Pruitt*, 308 F. Supp. 3d 153, 174 (D.D.C. 2018) ("[A]n argument 'found in a single footnote . . . is not enough to raise an issue.'" (quoting *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 800 (D.C. Cir. 2007))). The FTC has forfeited these arguments as well.

**B. WPATH Has Stated a Claim for Retaliation**

WPATH has stated all three elements of its First Amendment retaliation claim: "(1) it

'engaged in conduct protected under the First Amendment'; (2) the Government's alleged retaliatory action was 'sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again'; and (3) there exists 'a causal link between' the protected speech and the retaliatory action." *Endocrine Soc'y*, 2026 WL 1257289 at *9 (quoting *Aref*, 833 F.3d at 258). This Court previously found that WPATH's evidence established a likelihood of success on the retaliation claim. ECF 41. WPATH's complaint is no less detailed. The Complaint alleges that WPATH engaged in substantial First Amendment-protected activities. Compl. ¶¶ 30-63; 133. The FTC has not contested these allegations. For the second prong, WPATH has alleged that the FTC's investigation (including, but not limited to, the CID) "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 53 (D.D.C. 2013) (quotation marks omitted); *see* Compl. ¶ 126. "Where an agency 'demands' a nonprofit's 'private member' information, it 'encourage[s] groups and individuals to cease or modify protected First Amendment [activity] the government disfavors.'" ECF 41 at 7 (quoting *First Choice*, 146 S.Ct. at 1125). It further discourages "people from associating with groups engaged in protected First Amendment advocacy." *First Choice*, 146 S. Ct. at 1125. This is a quintessential chilling effect. On the third prong, WPATH has also provided sufficient allegations that the FTC's retaliatory motive is the but-for cause of its investigation into WPATH and the issuance of the CID. *See* ECF 41 at 7-9; *see also*, Compl. ¶¶ 70-112, 122, 135-36. WPATH has stated a claim for retaliation.

The FTC does not truly argue that WPATH has failed to state a claim. Its only pleading-related argument is that WPATH did not specifically allege "that the CID would not have been issued but for the alleged retaliation." Mot. at 24. WPATH is not required to recite the magic words for the legal test so long as it states sufficient facts for the Court to conclude that it has

alleged a plausible basis for an element. *Chandler v. Berlin*, 691 F. Supp. 3d 118, 126 (D.D.C. 2023) ("A civil complaint is a notice pleading. 'So long as the basis for a claim is clear, a complaint need not plead law in specific detail.'") (quoting *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 18 n.5 (D.C. Cir. 2008)). WPATH has done so. Compl. ¶¶ 70-112, 122, 135-36. The FTC argues in a footnote that the standard this Court applied to the retaliation claim should actually be higher than but-for cause. Mot. at 24, n.2. This Court has already rejected this argument. *See Endocrine Soc'y*, 2026 WL 1257289, at *11. The FTC's citation to *Amacher v. City of Tullahoma, Tennessee*, 179 F.4th 999, 1002 (6th Cir. 2026), simply confirms this Court's reasoning, because it assessed a § 1983 claim that the Court held must meet the elements of a common law malicious prosecution claim, which has no application here.

The FTC next points to the Texas Action, citing nearly the entirety of its own complaint, to "illustrate[s]" and "explain[]" why the FTC's investigation is not retaliatory. Mot. at 24-26. It is hornbook law that extrinsic evidence cannot be considered on a motion to dismiss—let alone the legal conclusions in a pleading in a separate action. *See* 5C *Wright & Miller's Federal Practice & Procedure* § 1363 (3d ed. 2026). If defendants could seek dismissal merely because they filed allegations that contradict a complaint, few cases would proceed to discovery. The FTC argues that the Texas complaint shows it has "reason to believe" WPATH has information concerning violations. Mot. at 25. But that is a factual assertion. To properly evaluate it, the Court would also need to consider WPATH's responses to the allegations in the Texas complaint. Texas Action, ECF 53, 55. Such evaluation would take the Court far beyond any permissible inquiry under Rule 12(b)(6). The Court should thus deny the FTC's motion.

### C. WPATH Has Stated a Claim for Viewpoint Discrimination

WPATH has stated a claim that the FTC's investigation and CID discriminate based on viewpoint. "[V]iewpoint discrimination is uniquely harmful to a free and democratic society."

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). The First Amendment "'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (quoting *United States v. Associated Press*, 52 F.Supp. 362, 372 (S.D.N.Y. 1943) (Learned Hand, J)). For this reason, while the government "'is entitled to say what it wishes' and 'select the views that it wants to express,'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68 (2009) (internal citation omitted), "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors," *Vullo*, 602 U.S. at 180. The government is presumed to be acting unconstitutionally when enforcing laws against speech if "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the [enforcement]." *Waln v. Dysart School Dist.*, 54 F.4th 1152, 1162 (9th Cir. 2022) (internal citation omitted); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."). In such circumstances, courts must "scrutinize" the "application of state power" to determine whether it is being used to silence a particular viewpoint. *Vullo*, 602 U.S. at 188 (quoting *NAACP v. Patterson*, 357 U.S. 449, 463 (1958)).

WPATH has stated a claim that the FTC's investigation and any actions emanating from that investigation discriminate based on viewpoint. "The President has made no secret of his disdain for the concept of gender dysphoria" and the Complaint "reflects acrimonious statements of Commission staff and leadership toward proponents of gender-dysphoria treatment that echo the Trump Administration's characterizations." *Endocrine Soc'y*, 2026 WL 1257289, at *3; Compl. ¶¶ 90-94, 103-112. The FTC had used intentionally inflammatory language and provided a one-sided forum for organizations and individuals who oppose transgender healthcare,

demonstrating that the FTC is targeting WPATH's speech with allegations of falsity simply because it disagrees with WPATH's perspective. Compl. ¶¶ 99-102. As 149 FTC employees observed, such "charged language" shows the FTC has "already taken a position opposing gender-affirming care for minors." *Id.* ¶ 95. No good-faith investigation begins by announcing what it will find.

The CID is evidence of the punitive nature of the FTC's investigation. It was designed to overwhelm and intimidate. It did not specify communications of concern. *Id.* ¶ 118. It demanded "all" communications about SOC-8, "[r]egardless of time period." *Id.* And the FTC issued similar CIDs to other organizations who have advanced the same viewpoint. *See Endocrine Soc'y v. FTC*, No. 1:26-cv-00512, ECF 1 (D.D.C. Feb. 17, 2026); *Am. Acad. of Pediatrics v. FTC*, 1:26-cv-00508, ECF 1 (D.D.C. Feb. 17, 2026). Such broad demands, served on one side of a debate, send the message that the government will target any proponent of the viewpoint that top officials have already promised to "fight" and "end." Compl. ¶¶ 85, 92. There is no question that the FTC and its leadership disagree with WPATH's viewpoint on transgender healthcare, but to target it with investigations in order to suppress and silence its contrary viewpoint is patently unconstitutional.

The FTC argues that "the Free Speech Clause does not apply 'when government officials are engaging in their own expressive conduct.'" Mot. at 26 (quoting *Vullo*, 602 U.S. at 187). But WPATH does not challenge the FTC's expression. It challenges the FTC's efforts to leverage its investigative power to intimidate, threaten, and harass the opposite viewpoint, which goes far beyond a mere government "expression." Compl. ¶ 4. "Government officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Vullo*, 602 U.S. at 180. WPATH has alleged, and this Court must take as true, that its speech and associational rights were chilled "while staring down the barrel of an FTC investigation, CID, and

potential future FTC enforcement actions." Compl. ¶ 126. WPATH's complaint described how the FTC's conduct chilled WPATH's speech by subjecting it to an impossible disclosure obligation so that WPATH and other organizations fear that the FTC will scrutinize them if they interact with, or even support WPATH. *Id.* ¶¶ 118-125.

The FTC next argues that WPATH has not adequately alleged a restriction on its speech, as "nothing about the Commission's investigation or its CID ever prevented WPATH from continuing to promote its views[.]" Mot. at 27. That argument cannot be reconciled with the Complaint's allegations. As WPATH alleged, the threat of legal sanctions and an enforcement action resulting from the FTC's investigation chilled WPATH's speech and would reasonably chill the speech of others. Compl. ¶¶ 124-126. WPATH also alleged a key player in the FTC's investigation, Glenna Goldis, proposed using investigation to silence and suppress speech and association during the workshop. *Id.* ¶ 107. The FTC then followed through on that course of action, using the threat of enforcement, and legal sanctions, to chill a disfavored viewpoint. *Id.* ¶¶ 113-130. That is sufficient to meet WPATH's obligations at the pleading stage.

The FTC knew and intended that its investigation would suppress speech. It has repeatedly deployed this playbook against other speech it disfavors. *See, e.g.*, *Media Matters II*, 805 F. Supp. 3d at 129-31; *NewsGuard*, No. 26-cv-00353, ECF 1. That context further underscores that the FTC sought to suppress speech rather than investigate.

### D. WPATH Has Stated a Claim for Additional First Amendment Violations

WPATH's complaint also plausibly alleges a violation of its First Amendment associational rights. Compl. ¶¶ 145-149. The FTC's investigation creates a threat that the FTC will learn of and target WPATH's affiliates, thereby deterring third parties from associating with WPATH. *Id.* ¶¶ 125, 129. The Supreme Court has long held that "'compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of

association as other forms of governmental action.'" *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quoting *NAACP*, 357 U.S. at 462). The investigation creates a threat of exactly this disclosure. Indeed, the CID specifically sought documents that would identify virtually everyone who associated with WPATH. Compl. ¶ 118. Such demands are subject to "exacting scrutiny" and violate the First Amendment absent a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Bonta*, 594 U.S. at 607 (internal quotation marks and citation omitted). The FTC's bare assertion that its restriction on WPATH's rights was "no more 'restrictive' than necessary," Mot. at 28-29, defies the Complaint's factual allegations. The Complaint alleges that "WPATH's speech is not commercial, and WPATH is a non-profit," such that the "FTC has no right to investigate at all." Compl. ¶ 143. The FTC cannot have any "government interest" in investigating entities and conduct outside its jurisdiction, much less a "sufficiently important" interest. Without such an interest, any restriction on WPATH's associational rights is greater than necessary. The FTC's investigation has thus chilled WPATH's speech and associations, and violates the First Amendment. *Bonta*, 594 U.S. at 616.

### E. In the Alternative, WPATH Requests Leave to Amend or Supplement Its Complaint

If the Court has any doubt about the viability of WPATH's claims, WPATH respectfully requests leave to amend its complaint under Federal Rule of Civil Procedure 15(a) or supplement it under Rule 15(d). Much has happened since WPATH filed its complaint on February 18, 2026. The FTC has taken further actions that WPATH could not have alleged at the time and which provide further support of its First Amendment claims, including continuing its investigation without having jurisdiction to do so, issuing CIDs to health insurance entities that apparently rely on WPATH's SOC-8, and filing the Texas Action.

Supplementation under Rule 15(d) would be particularly appropriate under these circumstances. "Federal Rule of Civil Procedure 15(d) allows the Court, 'on motion and reasonable notice . . . and on just terms,' to permit a party to serve a supplemental pleading setting forth events that have happened since the filing of its complaint . . . . The Rule thus 'promotes as complete an adjudication of the dispute between the parties as is possible.'" *Thorp v. D.C.*, 325 F.R.D. 510, 513 (D.D.C. 2018) (quoting 6A *Wright & Miller's Federal Practice & Procedure* § 1504 (3d ed. 2018)). WPATH does not anticipate adding new claims if this Court permits supplementation. Rather, it would add facts detailing the further acts and steps that the FTC has taken to violate WPATH's constitutional rights that were unknown to WPATH when it initially filed. In the event that the Court permits supplementation, WPATH does not believe it would require a new answer deadline, as all of the facts that would be alleged are already known to the FTC. 6A *Wright & Miller's Federal Practice & Procedure* § 1509 (3d ed. 2018).

**CONCLUSION**

For the foregoing reasons, WPATH respectfully requests that this Court deny the FTC's motion to dismiss the Complaint.

Dated: August 18, 2026

Respectfully Submitted,

*_/s/ Abbe David Lowell_*
Abbe David Lowell [Bar No. 358651]
Caleb Hayes-Deats [Bar No. 1643213]
Schuyler J. Standley (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com
*Attorneys for WPATH*