IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,

*Plaintiff*,

v.

FEDERAL TRADE COMMISSION, et al.,

*Defendants*.

Case No. 1:26-cv-0532 (JEB)

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction. ..... 3

A. The Complaint's Claims Are Moot Because the FTC Has Withdrawn the CID and Disclaimed Any Intent to Enforce It. ..... 3

B. The Complaint Features No Meaningful Allegations Beyond Those Pertaining to the Withdrawn CID. ..... 5

C. No Exception to Mootness Applies. ..... 11

1. The Exception for Voluntary Cessation Does Not Apply. ..... 12

a. The FTC has not manipulated this Court's jurisdiction ..... 12

b. There is no reasonable expectation that the conduct will recur. ..... 14

2. The Exception for Acts Capable of Repetition Yet Evading Review Does Not Apply. ..... 18

II. The Complaint Should Be Dismissed For Failure to State a Claim. ..... 20

A. WPATH's Procedural Quibbles Are Misguided. ..... 20

B. The Complaint Fails to Plausibly Allege a First Amendment Retaliation Claim (Count I). ..... 21

C. The Complaint's Other Claims Also Fail as a Matter of Law. ..... 23

1. The Complaint Does Not State a Claim for Viewpoint Discrimination (Count II). ..... 23

2. The Complaint Does Not State a First Amendment Claim for Violation of WPATH's Speech or Association Rights (Count III). ..... 24

D. WPATH's Request to Amend or Supplement Should Be Denied. ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska v. U.S. Dep't of Agric.*,
17 F.4th 1224 (D.C. Cir. 2021) .................... 12

*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) .................... 20

*Altschuld v. Raimondo*,
2025 WL 2400871 (D.D.C. Aug. 19, 2025) .................... 17

*Am. Bar Ass'n v. FTC*,
636 F.3d 641 (D.C. Cir. 2011) .................... 12, 17, 18

*Am. Forest Res. Council v. Williams*,
96 F.4th 417 (D.C. Cir. 2024) .................... 18, 19

*Amacher v. City of Tullahoma*,
179 F.4th 999 (6th Cir. 2026) .................... 21

*Blue Ribbon Quality Meats, Inc. v. FTC*,
560 F.2d 874 (8th Cir. 1977) .................... 9

*Campbell v. Clinton*,
203 F.3d 19 (D.C. Cir. 2000) .................... 19

*Chamber of Com. of U.S. of Am. v. NLRB*,
118 F. Supp. 3d 171 (D.D.C. 2015) .................... 6

*Cierco v. Lew*,
190 F. Supp. 3d 16 (D.D.C. 2016) .................... 11

*City of Houston v. HUD*,
24 F.3d 1421 (D.C. Cir. 1994) .................... 7

*Clarke v. United States*,
915. F.2d 699 (D.C. Cir. 1990) .................... 12

*Clean Fuels All. Am. v. EPA*,
169 F.4th 307 (D.C. Cir. 2026) .................... 4

*Coal. of Airline Pilots Ass'n v. FAA*,
370 F.3d 1184 (D.C. Cir. 2004) .................... 8

*Diffenderfer v. Cent. Baptist Church*,
404 U.S. 412 (1972) .................... 9

*Endocrine Soc'y v. FTC*,
832 F. Supp. 3d 1 (D.D.C. 2026) .................... 9, 22

*FBI v. Fikre*,
601 U.S. 234 (2024) .................... 15

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
146 S. Ct. 1114 (2026) ........ 6, 7

*FTC v. Texaco, Inc.*,
555 F.2d 862 (D.C. Cir. 1977) ........ 10, 24

*Gordon v. Lynch*,
817 F.3d 804 (D.C. Cir. 2016) ........ 15

*Grant v. Vilsack*,
892 F. Supp. 2d 252 (D.D.C. 2012) ........ 19

*Haase v. Sessions*,
835 F.2d 902 (D.C. Cir. 1987) ........ 6

*In re Chamber of Com. of U.S. of Am.*,
105 F.4th 297 (5th Cir. 2024) ........ 13

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........ 8, 11

*J.T. v. Dist. of Columbia*,
983 F.3d 516 (D.C. Cir. 2020) ........ 18, 19

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ........ 25

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ........ 11

*Kupperman v. U.S. House of Representatives*,
436 F. Supp. 3d 186 (D.D.C. 2019) ........ 3, 15

*Larsen v. U.S. Navy*,
525 F.3d 1 (D.C. Cir. 2008) ........ 9, 17

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) ........ 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 5, 6

*Maldonado v. Dist. of Columbia*,
61 F.4th 1004 (D.C. Cir. 2023) ........ 8

*Mass. Coal. for Immigr. Reform v. DHS*,
800 F. Supp. 3d 134 (D.D.C. 2025) ........ 18

*Matal v. Tam*,
582 U.S. 218 (2017) ........ 23

*Mehneh v. Rubio*,
164 F.4th 928 (D.C. Cir. 2026) ........ 12, 14, 18

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ........ 24

*Nat'l Black Police Ass'n v. Dist. of Columbia*,
108 F.3d 346 (D.C. Cir. 1997) .......... 19

*Nat'l Pub. Radio, Inc. v. Trump*,
827 F. Supp. 3d 48 (D.D.C. 2026) .......... 6

*Off. of Thrift Supervision v. Dobbs*,
931 F.2d 956 (D.C. Cir. 1991) .......... 17, 18

*PETA v. Gittens*,
396 F.3d 416 (D.C. Cir. 2005) .......... 19

*PETA v. U.S. Dep't of Agric.*,
918 F.3d 151 (D.C. Cir. 2019) .......... 12

*Pride v. U.S. Dep't of Agric.*,
2024 WL 3924579 (D.D.C. Aug. 23, 2024) .......... 12

*Pub. Citizen, Inc. v. FERC*,
92 F.4th 1124 (D.C. Cir. 2024) .......... 12

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
__ F.4th __, 2026 WL 2359440 (9th Cir. Aug. 14, 2026) .......... 2, 22, 23, 24

*Reid v. Hurwitz*,
920 F.3d 828 (D.C. Cir. 2019) .......... 6

*Republican Nat'l Comm. v. Pelosi*,
2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) .......... 15, 16, 17

*Resol. Tr. Corp. v. Thornton*,
41 F.3d 1539 (D.C. Cir. 1994) .......... 4, 7, 13

*Samma v. Dep't of Def.*,
136 F.4th 1108 (D.C. Cir. 2025) .......... 12

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) .......... 4, 17, 19, 20

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) .......... 25

*Spence v. U.S. Dep't of Veterans Affs.*,
109 F.4th 531 (D.C. Cir. 2024) .......... 21

*Truesdale v. Dist. of Columbia*,
2022 WL 951379 (D.D.C. Mar. 30, 2022) .......... 25

*Trump v. California*,
609 U.S. __, 2026 WL 2473573 (U.S. Aug. 24, 2026) .......... 5, 18

*Trump v. New York*,
592 U.S. 125 (2020) .......... 10

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 9

*United States v. Neely*,
124 F.4th 937 (D.C. Cir. 2024) .......... 20

*Weinberger v. Hynson, Westcott & Dunning, Inc.*,
412 U.S. 609 (1973) .......... 9

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 7

**STATUTES & RULES**

15 U.S.C. § 44 .......... 9

D.D.C. Loc. Civ. R. 7 .......... 25

D.D.C. Loc. Civ. R. 15.1 .......... 25

Fed. R. Civ. P. 7 .......... 25

Fed. R. Civ. P. 15 .......... 25

**OTHER AUTHORITIES**

Memorandum in Support of Plaintiffs' Motion, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. July 2, 2026), ECF No. 34 .......... 14

Motion to Dismiss, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. July 28, 2026), ECF No. 53 .......... 4

Notice of Dismissal, *Disinformation Index, Inc. v. FTC*,
No. 1:25-cv-4137 (D.D.C. Apr. 24, 2026), ECF No. 38 .......... 14

Opposition to Venue Motion, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. Aug. 18, 2026), ECF No. 72 .......... 13

Stipulation of Dismissal, *Am. Acad. of Pediatrics v. FTC*,
No. 1:26-cv-0508 (D.D.C. Aug. 21, 2026), ECF No. 48 .......... 14

Stipulation of Dismissal, *Media Matters for Am. v. FTC*,
No. 1:25-cv-1959 (D.D.C. May 4, 2026), ECF No. 62 .......... 14

Venue Motion, *FTC v. WPATH*,
No. 4:26-cv-0748 (N.D. Tex. July 28, 2026), ECF No. 55 .......... 13

## INTRODUCTION

This case is straightforwardly moot. The only specific Commission action challenged in the complaint is the issuance of a CID to WPATH. That CID has been withdrawn and the Commission has disclaimed any intention to enforce it. Numerous courts have found mootness under just such circumstances.

As anticipated, WPATH seeks to avoid mootness by pointing to its inchoate challenge to the "investigation" as a whole. But WPATH's complaint does not identify any purportedly unlawful component of the investigation other than the CID, so its non-CID claims fail for lack of standing and ripeness. And in any event, the investigation is over, so WPATH's challenge to it is as moot as its challenge to the CID.

Also as anticipated, WPATH further seeks to avoid mootness by invoking the expansive relief sought in its complaint. This argument rests on a conceptual confusion. The question is not whether this Court could in principle grant any form of relief that would benefit WPATH in any way. If that were the test, mootness would be impossible to establish. The question is whether this Court could grant effectual relief *for the wrongs asserted in the complaint*. And because the complaint identifies no justiciable legal wrong, there is no effectual relief the Court could grant.

Ultimately, the relief WPATH seeks is not about this case at all. Despite this Court's denial of its TRO motion, WPATH still hopes to use this litigation to interfere with the FTC's separate enforcement action in Texas. It also wants this Court to help it avoid purely hypothetical future litigation involving the FTC or even state governments. But these expansive requests for relief are untethered from any legal wrong alleged in this case, and therefore they cannot forestall mootness.

WPATH's arguments for an exception to mootness fare no better. The voluntary-cessation exception is wholly inapplicable because the FTC has not manipulated this Court's jurisdiction.

WPATH's attempts to show otherwise only highlight the extreme nature of its position. For example, it invites the Court to infer manipulation from the fact that the FTC withdrew the CID. But by definition, the voluntary cessation of the challenged activity occurs in every potential voluntary-cessation case; it cannot in and of itself demonstrate manipulation. And at any rate, the FTC has already explained that it withdrew the CID because its investigation of WPATH had come to an end when it filed an enforcement action against WPATH. If that is manipulation, then everything is. Furthermore, even if voluntary cessation were potentially applicable, WPATH has no reasonable expectation that it will be subject to the same actions again. To the contrary, the Commission has made clear that it has no intention of enforcing the withdrawn CID.

As for the "capable of repetition yet evading review" exception, WPATH's argument fails at both prongs. As noted, there is no reasonable expectation that it would be subject to the same action again. And CIDs and investigations are not inherently too short-lived to be litigated.

If the Court were to reach the merits of WPATH's claims, it should dismiss them all for failure to state a claim. With respect to WPATH's central claim of First Amendment retaliation, WPATH does not purport to satisfy the applicable legal standard (lack of a reasonable basis for the CID) and its complaint fails to make the necessary allegations even under a less stringent but-for standard. Moreover, the FTC's complaint in the Texas enforcement action makes clear that there were ample nonretaliatory grounds for issuing the CID. And the Ninth Circuit's recent decision in *QueerDoc, PLLC v. U.S. Department of Justice*, __ F.4th __, 2026 WL 2359440 (9th Cir. Aug. 14, 2026), which rejected a subpoena challenge that closely resembles this one, further underscores the deficiencies in WPATH's retaliation theory. WPATH's other First Amendment claims are equally flawed, and it has abandoned its Fourth Amendment claim.

In short, WPATH has failed to state a claim. But there is no reason for the Court to reach that question because the case is plainly moot and should be dismissed for lack of jurisdiction.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

#### A. The Complaint's Claims Are Moot Because the FTC Has Withdrawn the CID and Disclaimed Any Intent to Enforce It.

This case is moot. The complaint focused on the FTC's issuance of the CID. But the CID has been withdrawn, and the FTC has "repeatedly disclaimed any intention to enforce it or seek information pursuant to it in the future." Dkt.61-1 ("Mot.") at 9; *e.g.*, Dkt.53 at 29. We cited numerous cases holding that a subpoena challenge was moot where the issuing entity withdrew the subpoena and stated that it would not reissue it or seek to enforce it. Mot. at 19–20. That's what happened here.

WPATH's counterarguments fail. It suggests that those cases are different because they involved requests to *quash* a withdrawn subpoena. Dkt.64 ("Opp.") at 28. But WPATH's complaint requests functionally identical relief: a permanent injunction against enforcement of the withdrawn CID. Dkt.1 at 44. Indeed, WPATH itself has repeatedly relied on cases involving motions to quash. *E.g.*, Dkt.3-1 at 14; Dkt.34 at 8; Dkt.45-1 at 10.

It is true that none of those cases involve a separate action to enforce the withdrawn subpoena. *See* Opp. at 28–30. But the same is true here. The FTC has withdrawn the CID, has not filed an action to enforce it, and has repeatedly represented that it will not seek to enforce it in the future. *E.g.*, Mot. at 9. That puts this case on all fours with *Kupperman v. U.S. House of Representatives*, which held that the case was moot when a House committee withdrew a subpoena and stated that it would not reissue it or seek to hold the recipient in contempt for not responding to it. 436 F. Supp. 3d 186, 191–94 (D.D.C. 2019).

WPATH's attempt (at 29) to distinguish *Senate Permanent Subcommittee on Investigations v. Ferrer* also fails. There, the D.C. Circuit held that a challenge to a congressional subpoena was moot because the subcommittee "no longer [sought] to enforce any part of the subpoena" and had "completed its investigation." 856 F.3d 1080, 1085, 1088 (D.C. Cir. 2017). The court also noted that it lacked the power to order a congressional committee to return or destroy the documents. *Id.* at 1085–86. Here, too, the Court cannot issue such an order, for the simple reason that there's nothing to return. It is undisputed that "WPATH did not produce any information in response to the CID." Mot. at 13. WPATH accordingly does not even request such relief.

The existence of the enforcement action in Texas does not change matters. The Texas action is not an action to enforce the CID; instead, it seeks to enforce the FTC Act and state consumer protection laws. This Court has recognized as much, explaining that "the ongoing action in the Northern District of Texas … is not an attempt to enforce the CID, which the FTC has withdrawn." Dkt.58 at 3. Nor can it be described as a new phase of the FTC's investigation; instead, the complaint in that case is what *ended* the investigation. *See Resol. Tr. Corp. v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994).

Indeed, WPATH appears to recognize the point, suggesting that the FTC has "shifted" from its supposedly "retaliatory investigation" "to a new form of retaliation." Opp. at 25.[1] And "when one agency action 'has been superseded by a subsequent' one, a challenge to the original action is 'plainly moot.'" *Clean Fuels All. Am. v. EPA*, 169 F.4th 307, 311 (D.C. Cir. 2026). The bottom line is that, as this Court has explained, the Texas action is a "separate" proceeding, Dkt.58 at 2, and the pendency of a separate action in another court cannot give rise to a live controversy here.

[1] It is worth noting that WPATH's purportedly "robust" motion to dismiss the Texas action does not feature a retaliation theory. Opp. at 28; *see* Motion to Dismiss, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. July 28, 2026), ECF No. 53.

### B. The Complaint Features No Meaningful Allegations Beyond Those Pertaining to the Withdrawn CID.

**1.** The withdrawal of the CID mooted the case because the CID was the only specific action challenged in the complaint. As predicted, WPATH attempts to stave off mootness by pointing to vague allegations about the FTC's "broader investigation." Opp. at 22. These arguments fail.

WPATH does not meaningfully dispute that its complaint does not challenge *any* concrete aspect of the investigation other than the CID. It does assert (at 22) that the FTC gave short shrift to its allegations. But the only allegations it highlights are several versions of the bare statement that WPATH challenges "the investigation" as well as the CID. As WPATH itself recognizes, the FTC acknowledged and specifically addressed those allegations in its Motion. *See id.*; Mot. at 21.

That means WPATH lacks standing to challenge the non-CID aspects of the investigation. To state the obvious, without identifying any purportedly unlawful FTC actions, WPATH cannot show any certainly impending injury caused by such actions, or that the relief it seeks would remedy that injury. Mot. at 22–23; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). For the same reasons, WPATH also has not demonstrated ripeness. At most it has offered vague suggestions that the FTC *could* take some unspecified future action that *could* violate the law and *could* harm WPATH. *E.g.*, Opp. at 33–34. "Article III demands more certainty." *Trump v. California*, 609 U.S. __, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (per curiam); *see id.* at *4 ("Article III injury" cannot "rest[] on an 'attenuated chain of inferences.'"). Indeed, WPATH now admits that its Fourth Amendment claim—that "using an overbroad CID ... to the compel disclosure of protected materials ... violated the Fourth Amendment," Dkt.1 ¶ 4—"is not ripe as the FTC has not acted to enforce the CID," Opp. at 39 n.1. WPATH does not explain why this logic does not also extend to its First Amendment claims addressing wholly unspecified potential actions the Commission might take.

WPATH counters that it was impossible to make concrete allegations at the time of the complaint. Opp. at 23. But that is actually an admission that its claims are not justiciable. Both standing and ripeness are *assessed as of the time of the complaint*. *E.g.*, *Lujan*, 504 U.S. at 570 n.5 ("standing is to be determined as of the commencement of suit"); *Nat'l Pub. Radio, Inc. v. Trump*, 827 F. Supp. 3d 48, 78 n.4 (D.D.C. 2026) ("standing and ripeness ... are considered at the time suit was brought"); *Chamber of Com. of U.S. of Am. v. NLRB*, 118 F. Supp. 3d 171, 187 (D.D.C. 2015) ("Ripeness is to be determined at the time the complaint is filed."). And both "turn[] on the allegations in the complaint." *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987); *Reid v. Hurwitz*, 920 F.3d 828, 833 (D.C. Cir. 2019) ("[A] plaintiff must plead facts plausibly demonstrating standing."). If, at the time of the filing, WPATH was unable to make adequate allegations regarding any part of the investigation other than the CID, that simply means it failed to allege any justiciable claims except with respect to the CID.

WPATH's opposition also asserts in passing that the FTC has engaged in other investigative steps that were not addressed in the complaint, such as issuing CIDs to insurance companies, interviewing third parties, and perhaps reviewing public recordings of presentations by WPATH members. Opp. at 16. However, WPATH does not even specify which of those asserted actions it views as unlawful, if any, let alone explain why these novel assertions could retroactively create standing and ripeness (which, as noted, turn on the complaint's allegations).

WPATH also argues that the complaint's unelaborated references to "an investigation" are, in and of themselves, specific enough to create a justiciable controversy. Opp. at 31. But the primary case it relies on, *First Choice Women's Resource Centers, Inc. v. Davenport*, actually undercuts this argument. There, the plaintiff challenged a specific component of an investigation: the issuance of a subpoena. 146 S. Ct. 1114, 1122 (2026); *see White v. Lee*, 227 F.3d 1214, 1228–

29, 1238 (9th Cir. 2000) (evaluating the "manner in which" an investigation was carried out and the specific "measures the [defendants] took during its course"). And far from focusing solely on the decision to launch the investigation, the Supreme Court's justiciability analysis centered on the concrete consequences of the subpoena, which "commanded production ... of private donor information" in a manner that was "backed by a threat of court-ordered compliance." *First Choice*, 146 S. Ct. at 1128. That is the kind of specific allegation that WPATH has made with respect to the CID, but not with respect to *any* other component of the investigation.

Ultimately, WPATH's position is untenable. If it were correct, then the results in all the subpoena mootness cases we cited (*see* Mot. at 19–20) could have been flipped if the plaintiffs had simply intoned the magic phrase "and the investigation." Opp. at 28–29 (distinguishing cases on that basis). Those authorities are not so easily evaded. *See, e.g.*, *City of Houston v. HUD*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (where litigation had "focused almost exclusively on one specific agency action," passing allegations regarding broader agency "policy" were moot or unripe).

And even if WPATH had demonstrated standing or ripeness with respect to any non-CID element of the investigation, those claims would be moot. The investigation of WPATH ended when the FTC filed its complaint. Mot. at 23. WPATH offers no response to "the general principle that an investigation terminates once suit has been filed." *Thornton*, 41 F.3d at 1546.

**2.** Also as predicted, WPATH insists that the case is not moot because it supposedly can still obtain "effectual relief." As previewed in our motion (at 23–27), this argument is confused.

**a.** WPATH misunderstands the concept of "effectual relief." Opp. at 18. WPATH seems to believe that, so long as it could conceivably benefit from a ruling granting the relief it seeks, the case is not moot. But if that were the standard, virtually no case would ever be moot. It would be

sufficient for plaintiffs to ask for any kind of relief—regardless of how disconnected from its actual claims or any ongoing injury caused by defendant—that would benefit them in some respect.

In reality, courts assess whether it is possible to grant effectual relief by determining whether a plaintiff's *claims* make out a live (and thus remediable) dispute. *See* Mot. at 16 (citing cases). That is why in "assessing mootness," courts first 'defin[e] the wrong that the defendant is alleged to have inflicted." Opp. at 11 (quoting *Clarke v. United States*, 915. F.2d 699, 703 (D.C. Cir. 1990) (en banc)); *Maldonado v. Dist. of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) ("[T]o assess mootness," a court "must first define the 'wrong' alleged in the complaint 'in terms of the precise controversy it spawns.'"). This is also why courts "apply the mootness standard to each of the [plaintiff's] claims" individually. *Coal. of Airline Pilots Ass'n v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004); *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) ("The mootness inquiry is a 'claim-specific analysis.'"). Neither defining the wrong nor evaluating individual claims would be necessary if mootness were determined solely by the relief sought. Here, the alleged wrongs relate only to a withdrawn CID and a terminated investigation. Accordingly, they cannot support any prospective relief (which is all WPATH has requested in this case).

As we noted (at 23), and WPATH does not dispute, this line of argument by WPATH is reminiscent of its failed anti-suit injunction motion. There, it sought to use its expansive requests for relief to paper over the distinctions between this case and the Texas action; here, it attempts to use the same requests for relief to paper over the mootness of its underlying claims. This Court rejected the gambit once and it should do so again.

**b.** In light of the above, it is not necessary for the Court to consider WPATH's remedial arguments in detail. But at any rate, closer examination only makes it more evident that the various forms of relief WPATH points to are not designed to redress any wrongs asserted in this case.

*Declaratory relief.* WPATH's requests for declaratory relief are beyond the scope of its claims in this case. For example, it seeks declaratory judgments that it hopes "would enable it to defend itself in the Texas Action" or in potential "parallel or subsequent actions," or could help it obtain "monetary relief from state actors[]" who might violate its rights in the future. Opp. at 26.

Moreover, each of its specific requests suffers from additional fatal flaws. WPATH seeks a declaration that the FTC's *closed* investigation violated WPATH's rights, *id.* at 24, but a declaration about the legality of past actions would "amount[] to exactly the type of advisory opinion Article III forbids." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008); *see Diffenderfer v. Cent. Baptist Church*, 404 U.S. 412, 414–15 (1972) (plaintiff cannot receive declaratory judgment regarding legality of repealed statute). WPATH openly asks this Court to send a "signal" about the lawfulness of the FTC's actions. Opp. at 25. But any advisory opinion would send a "signal." That is why litigants sometimes seek them. But it is no reason for courts to issue them.

WPATH also seeks a declaration that it is not a "corporation" as defined by 15 U.S.C. § 44. Opp. at 24. But this remedy would be unavailable even if WPATH's claims were live, as it addresses the FTC's *enforcement* authority rather than its *investigatory* authority. *See* Mot. at 24.

WPATH insists that the FTC's investigatory authority is "clearly circumscribed" by the scope of its enforcement authority. Opp. at 26–27. It's mistaken. The FTC's "investigatory power ... reaches further than its regulatory power," *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 875–76 (8th Cir. 1977), and allows the FTC to "investigate merely on suspicion that the law is being violated," *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950). Indeed, the FTC has "[investigatory] jurisdiction to determine whether it has [enforcement] jurisdiction." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973); *see Endocrine Soc'y v. FTC*, 832 F. Supp. 3d 1, 18 (D.D.C. 2026) ("the FTC Act gives the FTC ample authority to

investigate" (quoting *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001)). Moreover, the D.C. Circuit has made clear that investigated parties may not challenge the investigation itself by making substantive arguments about the FTC's enforcement authority. *FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977) (en banc).

In short, a declaration that WPATH categorically is *not* an FTC Act corporation—which, at any rate, would be incoherent, Mot. at 26—would do nothing to redress any legal wrongs asserted in this case. The same is true of its other requests for relief, like a declaration that its statements are protected by the First Amendment. Opp. at 24. As we explained (Mot. at 26), WPATH's real hope is that these forms of relief will help it in *other* cases, such as the Texas litigation. *See* Opp. at 8 (asserting that the dispute in this case "rages across two federal courts' dockets"). But such hopes cannot create a live dispute in *this* case.

*Injunctive relief.* WPATH's discussion of injunctive relief (at 27–28) suffers from similar flaws. WPATH suggests that equitable relief "remain[s] available" because the FTC could take actions in the future that might violate WPATH's rights; for example, the FTC might engage in unspecified "conduct [in] the Texas Action" or take unspecified actions toward "third parties." Opp. at 27, 34–35. To begin, none of that implicates the conduct WPATH alleged in the complaint. Instead, WPATH seeks to remedy future, hypothetical wrongs from future, hypothetical FTC actions. This does not forestall mootness. And in any event, any claims pertaining to such future hypothetical actions would be unripe, because they are "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam).

Furthermore, the relief WPATH requests is not available. This Court cannot award *any* relief regarding how the FTC "will conduct the Texas Action." Opp. at 34. Indeed, this Court has

already rejected WPATH's similar request to "disrupt[] proceedings in a coordinate district." Dkt.58 at 3. Similarly, WPATH provides no basis for its speculation that this Court could require the FTC to return documents to third parties. Opp. at 27–28. The cases it cites (at 27) all concern the return of a party's own documents. But here, WPATH produced no documents. And WPATH does not even attempt to show that it has standing to challenge CIDs issued to third parties or to seek relief on behalf of third parties who complied with CIDs. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (A party generally "cannot rest his claim to relief on the legal rights or interests of third parties.").

Indeed, WPATH's complaint does not even seek any such relief for third parties. And its suggestion that the Court "could fashion" such relief on its own initiative only highlights the extreme nature of its position. WPATH claims to avoid mootness not only based on the expansive relief it sought, but also based on the even more expansive relief it did not even seek (but hopes the Court will provide anyway). Opp. at 27. That is not the law: plaintiffs cannot "keep [a] case afloat ... by envisaging what relief they might have sought—but did not—in their Complaint." *Cierco v. Lew*, 190 F. Supp. 3d 16, 26 (D.D.C. 2016).

In any event, as explained above there has never been a justiciable challenge in this case to any FTC action other than the CID. So even if this relief were available in principle, it would not redress any justiciable legal wrong.

### C. No Exception to Mootness Applies.

WPATH, as the party resisting mootness, "bears the burden of proving an exception applies." *J.D.*, 925 F.3d at 1307. WPATH has not carried its burden.

### 1. The Exception for Voluntary Cessation Does Not Apply.

#### a. The FTC has not manipulated this Court's jurisdiction.

**i.** As a threshold matter, the voluntary-cessation exception is inapplicable absent "arguable manipulation of [the court's] jurisdiction." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025). WPATH half-heartedly questions (at 35–36) this principle of law. But WPATH cannot deny that the D.C. Circuit has repeatedly applied it and does not identify any authorities disapproving it.

WPATH is also wrong in suggesting that courts have limited the manipulation requirement to the rare case where "the party whose actions mooted the case 'opposed a declaration of mootness.'" Opp. at 36; *see Samma*, 136 F.4th at 1113 (noting only that a "suggestion of manipulation is even less likely" in that scenario); *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128–29 (D.C. Cir. 2024) (articulating no such limitation). Instead, courts have repeatedly enforced this requirement in cases, like this one, where the government defendant seeks dismissal. *See Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1227 (D.C. Cir. 2021); *Mehneh v. Rubio*, 164 F.4th 928, 931 & n.* (D.C. Cir. 2026); *see also Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011); *Pride v. U.S. Dep't of Agric.*, 2024 WL 3924579, at *11 (D.D.C. Aug. 23, 2024).

**ii.** WPATH also purports to identify evidence of manipulation, but it is wrong again. Given "the presumption of legitimacy accorded to the Government's official conduct," the bar to show manipulative conduct is high. *PETA v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019); *see Clarke*, 915 F.2d at 705 ("At least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate ... to impute such manipulative conduct to a coordinate branch of government."). WPATH does not come close to clearing this bar.

*First*, it points to the "withdrawal of the CID" as an "attempt[] to avoid this Court's jurisdiction." Opp. at 36. But treating cessation itself as a sign of manipulation would make the

inquiry meaningless because (by definition) all voluntary-cessation cases involve cessation. At any rate, the FTC had a straightforward reason for withdrawing the CID: it had filed the Texas action and its investigation of WPATH was over. Mot. at 11; *Thornton*, 41 F.3d at 1546.

*Second*, WPATH points to the "FTC's filing of the Texas Action" and particularly its decision to file "in the Northern District of Texas." Opp. at 36–37. In other words, WPATH resurrects its argument that the FTC was required to file the enforcement action in this District. This Court has already rejected that argument, recognizing that "a plaintiff who files a pre-enforcement challenge to stop the FTC from obtaining information cannot then force the Commission to bring later enforcement actions as compulsory counterclaims in plaintiff's chosen forum." Dkt.58 at 4 (collecting cases).

In other words, the Texas action is a separate action in which the FTC as the plaintiff is entitled to its "choice of forum." *In re Chamber of Com. of U.S. of Am.*, 105 F.4th 297, 302 (5th Cir. 2024). The FTC's decision of where to file that separate enforcement action, therefore, simply cannot constitute manipulation of this Court's jurisdiction in this case. In any event, as the FTC has explained in the Texas action, the Northern District of Texas is an appropriate venue for that action. *See* Opposition to Venue Motion, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. Aug. 18, 2026), ECF No. 72. Notably, WPATH neglects to mention that it is incorporated in Texas. And even WPATH does not maintain that this Court was the *only* appropriate venue. To the contrary, it acknowledges at a minimum that the case could have been brought in the Northern District of Illinois, *see* Venue Motion, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. July 28, 2026), ECF No. 55 at 12, and perhaps also in the Western District of Texas, *see id.* at 8–9 & n.1.

*Third*, WPATH asserts that the FTC has a "pattern of avoiding final rulings." Opp. at 37. But it cannot make up for its inability to point to any manipulation in *this* case by making equally

baseless accusations regarding other cases. And the handful of cases WPATH has identified (at 37–38) are all similar to this one, in that the FTC withdrew the challenged CID because the information it sought was no longer necessary in light of the filing of an enforcement action. In three of the five cases identified, the plaintiff agreed to voluntary dismissal. *See* Stipulation of Dismissal, *Am. Acad. of Pediatrics v. FTC*, No. 1:26-cv-0508 (D.D.C. Aug. 21, 2026), ECF No. 48; Notice of Dismissal, *Disinformation Index, Inc. v. FTC*, No. 1:25-cv-4137 (D.D.C. Apr. 24, 2026), ECF No. 38; Stipulation of Dismissal, *Media Matters for Am. v. FTC*, No. 1:25-cv-1959 (D.D.C. May 4, 2026), ECF No. 62. WPATH's baseless accusations are not remotely sufficient "to impute ... manipulative conduct to a coordinate branch of government." *Mehneh*, 164 F.4th at 932 (rejecting allegation of "a nationwide pattern" to "tactically moot[]" cases).[2]

**b. There is no reasonable expectation that the conduct will recur.**

**i.** Even if this Court were to apply the voluntary-cessation exception, the FTC has comfortably demonstrated that "there is no reasonable expectation that [WPATH] will be subject to [the same actions] again." *Id.* at 931–32 & n.*.

As explained, "the Commission has repeatedly disclaimed any intention to enforce [the withdrawn CID] or seek information pursuant to it in the future." Mot. at 9; *see id.* at 17 ("[T]he Commission has represented that 'it has no plans to try to enforce [the CID]' or 'to obtain information pursuant to the CID.'" (quoting Dkt.53 at 29, 32)); Dkt.53 at 3 (The FTC has "cho[sen] to withdraw the CID and disclaim enforcement." (emphasis omitted)). The FTC has made the same representations in the Texas action. *See* Memorandum in Support of Plaintiffs' Motion, *FTC v. WPATH*, No. 4:26-cv-0748 (N.D. Tex. July 2, 2026), ECF No. 34 at 7; *see id.* at 19.

---

[2] WPATH's substantive assertions about two of those cases (at 34–35) are equally cursory and baseless.

Similarly, the Commission has stated unequivocally that its investigation into WPATH is over. *See* Mot. at 9 ("[T]he Commission has completed the investigation into WPATH."); *id.* at 17 ("The FTC's complaint thus marks the end of its investigation of WPATH."); *id.* at 18 ("Indeed, the Commission's investigation of WPATH has concluded, having culminated in the filing of the FTC's complaint against WPATH."); *see also id.* at 19, 20, 23, 28.

**ii.** WPATH attempts to show that the FTC's representations are either formally or substantively insufficient. Its arguments are unpersuasive.

*Form of the representations.* WPATH claims (at 32) that a declaration was required. The cases say otherwise. Courts routinely rely on "promises by Government lawyers" in court filings or at oral argument to "determin[e] that a case is moot." *Kupperman*, 436 F. Supp. 3d at 193; *see, e.g.*, *Gordon v. Lynch*, 817 F.3d 804, 806–07 (D.C. Cir. 2016); *Republican Nat'l Comm. v. Pelosi*, 2022 WL 4349778, at *1 (D.C. Cir. Sept. 16, 2022) (per curiam); Opp. at 33 (acknowledging that "[c]ourts have credited such representations"). And the case WPATH cites held only that the particular representations in "the government's sparse declaration" were insufficient; it did not suggest that a declaration was required. *FBI v. Fikre*, 601 U.S. 234, 242 (2024).

WPATH argues that the "presumption of legitimacy" that attaches to government actions is "rebutted" due to this Court's preliminary injunction decision. Opp. at 33. But that preliminary ruling "was confined to the CID." Dkt.58 at 3. It did not hold that the presumption was rebutted as to all FTC actions or representations, present or future. *See* Dkt.58 at 5 (declining to "prejudge every permutation of the FTC's future actions"). To the contrary, it made clear that the FTC was

"free to deploy other investigative tools." Dkt.41 at 10; Dkt.58 at 3 ("[T]he Court's injunction did not protect WPATH from complying with all information-seeking processes.").[3]

WPATH also strangely asserts that the FTC has made "prior representations" to the Court which "incorrect[ly]" suggested that the CID was the initial step in the WPATH investigation. Opp. at 26. In reality, the FTC made clear from the outset that the CID was "just one piece of a larger investigation," and that it followed a workshop and a request for public comment. Dkt.35 at 17–18, 20; *see* Dkt.32 at 13, 21–28 (describing the sequence of the FTC's investigation). And the "representations" WPATH points to are really just one out-of-context phrase, which is best understood to mean that sending a CID to WPATH could be "the very first step forward to gather information" from other entities, like medical providers. Dkt.35 at 17–18.

WPATH's baseless charge does not remotely justify disregarding FTC counsel's representations. *See Pelosi*, 2022 WL 4349778, at *1 ("Despite its earlier [contradictory] statements, we take the Committee at its word."). And this is not the first time WPATH has made unsupported accusations of wrongdoing in this case. *See* Dkt.46-1 at 8 (claiming that "WPATH has raised 'significant questions' regarding the FTC's 'noncompliance' with the Court's preliminary injunction"); *see* Dkt.62 at 1 (withdrawing motion after the FTC filed its opposition).

In short, no declaration is needed. Nevertheless, if this Court would prefer that the FTC submit a declaration reiterating the statements from its briefing, the FTC is ready to provide one.

*Substance of the representations.* Contrary to WPATH's assertions (at 33–34), the FTC's representations amply demonstrate that the challenged conduct will not recur. Indeed, as WPATH acknowledges (at 33), those representations are at least as broad in scope as the interim relief

[3] For these reasons (among others, *see* Part II, *infra*) it is both speculative and presumptuous for WPATH to assert that an enforcement action before this Court would likely have been "doomed." Opp. at 37.

WPATH received in this Court's preliminary injunction order. *See* Dkt.40 at 1. And given that the only live dispute in this case concerned the CID, providing representations that are at least as broad as the preliminary injunction is necessarily adequate to prevent a likelihood of recurrence.

To be sure, WPATH would prefer that the FTC say more. In particular, it wants the FTC to specify "what it [would] do if the Texas Action [were] dismissed" and to represent that the FTC will not "open a new investigation into WPATH" or "issue a new CID to WPATH." Opp. at 33–34. But courts have not required such representations. *See, e.g.*, *Pelosi*, 2022 WL 4349778, at *1 (challenge to withdrawn subpoena was moot where congressional committee "promised not to renew it" even though a broader investigation continued). And rightly so, as speculation about other actions the government may take in the future does not defeat mootness.

As the D.C. Circuit has explained, "mere[] hypothetical possibilities ... regarding regulations and enforcement policies that do not presently exist"—even if WPATH "view[s] them as likely"—are "not enough to give rise to a live dispute." *Am. Bar Ass'n*, 636 F.3d at 647. Other decisions are in accord. *Larsen*, 525 F.3d at 4 ("the mere power to reenact a challenged [action] is not a sufficient basis ... [to] conclude that a reasonable expectation of recurrence exists"); *Ferrer*, 856 F.3d at 1088 ("theoretical possibility" that committee would "reopen its investigation and again issue a subpoena" was insufficient to prevent mootness); *Off. of Thrift Supervision v. Dobbs*, 931 F.2d 956, 958 (D.C. Cir. 1991) ("speculative concern" regarding "future attempts to enforce [a] subpoena" was moot); *Altschuld v. Raimondo*, 2025 WL 2400871, at *3 (D.D.C. Aug. 19, 2025) (court "cannot redress speculative concerns about possible future executive [actions]").

Here, WPATH offers nothing more than speculation about different actions the FTC could take in the future.[4] That is not enough.

**2. The Exception for Acts Capable of Repetition Yet Evading Review Does Not Apply.**

This case is also not "capable of repetition yet evading review." *Mehneh*, 164 F.4th at 931. Indeed, "an agency's decision to change course generally falls outside this exception because if the agency repeats the challenged conduct in the future, its action will be subject to review at that time." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 79 (D.D.C. 2026), *aff'd*, 2026 WL 1991571 (D.C. Cir. July 2, 2026); *see also Am. Bar Ass'n*, 636 F.3d at 648; *Off. of Thrift Supervision*, 931 F.2d at 958. But even assuming it applies, WPATH has failed to carry its burden with respect to either of the exception's two requirements. Mot. at 29–30; *J.T. v. Dist. of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) ("The party invoking the exception bears the burden to show that both elements are satisfied.").

*First*, "the challenged action[s]"—the FTC's investigation and CID—are not inherently "too short to be fully litigated." *Am. Forest Res. Council v. Williams*, 96 F.4th 417, 421 (D.C. Cir. 2024). Instead, they are of an "indefinite nature" and thus do not evade review. *Mass. Coal. for Immigr. Reform v. DHS*, 800 F. Supp. 3d 134, 143 (D.D.C. 2025).

WPATH's response is misconceived. It claims (at 39) that FTC CIDs and investigations evade review because the FTC could withdraw a CID or terminate an investigation. But a litigant's conduct is irrelevant to whether an action "is too short to be fully litigated." *Am. Forest Res. Council*, 96 F.4th at 421; *see Mass. Coal.*, 800 F. Supp. 3d at 143 ("If [plaintiff] means a future

[4] WPATH's concern about the consequences of a dismissal of the Texas action (at 35) is doubly speculative because it could come to fruition only if WPATH's motion to dismiss is granted. *E.g.*, *Trump*, 2026 WL 2473573, at *2 ("Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize.").

administration *could* terminate the [challenged policy] before litigation concludes, that misunderstands the test."). Instead, WPATH must show that the challenged actions are "inherently short-lived." *Grant v. Vilsack*, 892 F. Supp. 2d 252, 258 (D.D.C. 2012). In other words, the question is "whether the challenged activity is *by its very nature* short in duration." *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997). That's not the case here, *see* Mot. at 21, and WPATH makes no effort to show otherwise.

*Second*, there is no "reasonable expectation that [WPATH] would be subjected to the same action again." *Am. Forest Res. Council*, 96 F.4th at 421. As explained, the FTC's investigation into WPATH is complete and WPATH is now the subject of an enforcement action. *See Ferrer*, 856 F.3d at 1088 ("theoretical possibility" that a subcommittee would "reopen its investigation and again issue a subpoena to [plaintiff]" could not establish "a reasonable expectation" of recurrence). And given the fact-intensive nature of this Court's inquiry, *see* Mot. at 30, it is highly unlikely that any future investigative actions would present the same "legal questions," *PETA v. Gittens*, 396 F.3d 416, 422–24 (D.C. Cir. 2005); *see J.T.*, 983 F.3d at 524 (when a "legal controversy" is "sharply focused on a unique factual context," it will "rarely present 'a reasonable expectation that the same complaining party will be subject to the same action again'").

In response, WPATH argues that "the FTC's actions are 'capable of repetition'" because the FTC has issued and withdrawn a handful of CIDs to entities other than WPATH. Opp. at 39. The problem with this reasoning is that, as WPATH acknowledges, it must show that "the *same complaining party* would be subject to the same action again." Opp. at 38 (emphasis added); *Campbell v. Clinton*, 203 F.3d 19, 34 (D.C. Cir. 2000) (same). And WPATH has not asserted (and could not assert) that *any* of those entities were subject to "the same action again." Opp. at 38. The FTC withdrew those CIDs and has not reissued them. Multiplying examples of parties who

were subjected to an action *once* does nothing to suggest that any given party is likely to be subjected to it *twice* (if anything, it suggests the opposite). At bottom, WPATH has at most alleged a "theoretical possibility" of recurrence, which "is not sufficient." *Ferrer*, 856 F.3d at 1088.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In the alternative, WPATH's claims should be dismissed because each one fails to state a claim. *See* Mot. at 30–39.

### A. WPATH's Procedural Quibbles Are Misguided.

Instead of engaging substantively with the FTC's arguments, WPATH leads with a series of meritless procedural objections. Opp. at 39–40.

To begin, WPATH takes issue with the FTC's incorporation of certain arguments from the preliminary injunction briefing. *See* Mot. at 31. In reality, the FTC appropriately chose to avoid retreading familiar ground and focus on what had changed since the Court's initial ruling. *Al-Tamimi v. Adelson*, 916 F.3d 1, 7 (D.C. Cir. 2019) (allowing incorporation by reference where a party sought to avoid "repetitious submissions" and did not seek to "evade the word limit"); *see* Mot. at 39 (using only 31 of the 45 pages permitted under the Local Rules).

Similarly, WPATH argues that material in footnotes should be deemed forfeited. Opp. at 40. But WPATH itself has made arguments in footnotes. *See* Dkt.34 at 16 n.1, 24 n.2; Dkt.45-1 at 23 n.3, Dkt.54 at 22 n.1. And courts routinely consider arguments made in footnotes. *See, e.g.*, *United States v. Neely*, 124 F.4th 937, 946 n.1 (D.C. Cir. 2024).

Finally, WPATH suggests (at 40) that the FTC has failed to sufficiently explain "several [of its] arguments." Ironically, WPATH does not specify what those arguments are.

### B. The Complaint Fails to Plausibly Allege a First Amendment Retaliation Claim (Count I).

WPATH's retaliation claim fails to state a claim for several reasons, including because it does not adequately allege a causal link between WPATH's speech and the CID. Mot. at 31–34.

To prevail on its retaliation claim, WPATH must allege "that there was no reasonable basis for the CID." Mot. at 32 n.2. This is consistent with *Amacher v. City of Tullahoma*, which applied a parallel standard to "a First Amendment retaliation claim." 179 F.4th 999, 1001–04 (6th Cir. 2026). Contrary to WPATH (at 42), the two claims are analogous. As in *Amacher*, WPATH "challenges the 'wrongful institution of legal process,'" alleges that the defendant acted "for an 'improper, malicious purpose,'" and asserts retaliation for speech. 179 F.4th at 1001, 1003. Thus, just as in *Amacher*, "a common law malicious prosecution claim offers the best analogy" to WPATH's "retaliation claim," and WPATH must "disprove that probable cause supported the allegedly retaliatory action." *Id.* at 1002–03. WPATH does not argue that it has met that standard.

WPATH also fails to satisfy even the less stringent but-for causation standard. As WPATH does not dispute, its complaint did not even allege that the CID would not have been issued but for the alleged retaliation. Mot. at 32; Opp. at 41–42. While WPATH "need not plead law," Opp. at 42, the failure to allege a factual element of a claim is indisputably grounds for dismissal, *see Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 541 (D.C. Cir. 2024) (affirming dismissal of retaliation claim for failure to allege "the type of causation required to state a claim").

At any rate, the FTC's complaint in the Texas action further demonstrates that WPATH could not have plausibly alleged unconstitutional retaliation. As we explained, *see* Mot. at 32–34, WPATH must plausibly allege that a retaliatory motive was the but-for cause for the issuance of the CID. This Court found that position plausible at the preliminary injunction stage because the Court was unpersuaded that the Commission had reason to believe that WPATH might have

information relevant to violations of the FTC Act. But the complaint in the Texas action amply illustrates *why* the FTC believed WPATH might have possessed relevant information, and thereby reveals that WPATH's allegations of retaliation are not plausible.[5]

Another important recent development—which WPATH declines to address in its opposition—is the Ninth Circuit's decision in *QueerDoc, PLLC v. U.S. Department of Justice*, __ F.4th __, 2026 WL 2359440 (9th Cir. Aug. 14, 2026). *QueerDoc* confirms that WPATH's retaliation claim fails as a matter of law.

The district court in that case quashed an administrative subpoena based on its conclusion that agency officials issued the subpoena for the "improper purpose" of "eliminating gender-affirming care." *Id.* at *2. WPATH has repeatedly relied on that opinion, *see* Dkt.3-1 at 14; Dkt.34 at 8; Dkt.45-1 at 10, and this Court has cited it as well, *Endocrine Soc'y*, 832 F. Supp. 3d at 6, 17.

The Ninth Circuit reversed. Its reasoning closely matches the retaliation arguments that the FTC has made in this litigation, and squarely rejects the arguments made by WPATH. The panel held that the agency established a prima facie case for enforcement by showing that the subpoena was statutorily authorized and that its requests were relevant to the investigation, including because the subpoena recipient "may itself" be violating the law or "may possess information" about other potential violators. 2026 WL 2359440, at *8–10. In evaluating relevance, the Ninth Circuit held that it would be improper to demand that an agency "prove what, at this stage, [it] can do no more than suspect," and refused to entertain arguments about the scope of the agency's substantive enforcement jurisdiction, finding them "premature." *Id.* at *10–11.

[5] WPATH misses the point, therefore, when it suggests the FTC is treating the complaint as "extrinsic evidence." Opp. at 42. As explained, the FTC is using it merely for illustrative purposes.

The Ninth Circuit also rejected the argument that "the Administration's general opposition to gender-affirming care" rendered "subpoenas to providers of such care" "improper." *Id.* at *12–13. The panel explained that "there is nothing improper about a President having policy preferences and directing the Executive Branch to enforce federal law in a manner consistent with those preferences." *Id.* at *12. Similarly, the court held that "political advocacy statements made by government officials ... cannot taint an otherwise valid government investigation," particularly given "the presumption of regularity." *Id.* at *14. Finally, the court also rejected arguments that the subpoena's scope and supposed incongruence with the objectives of the investigation suggested an "improper purpose." *Id.* at *16. The same reasoning applies here.

### C. The Complaint's Other Claims Also Fail as a Matter of Law.

WPATH now acknowledges that its Fourth Amendment claim is unripe, Opp. at 39 n.1, and its arguments in support of its remaining First Amendment claims miss the mark.

#### 1. The Complaint Does Not State a Claim for Viewpoint Discrimination (Count II).

WPATH's viewpoint-discrimination claim is deficient for two basic reasons.

*First*, the complaint fails to allege a speech restriction. Mot. at 35. WPATH neither disputes that requirement nor asserts that any such restriction occurred here. *See* Opp. at 45. And WPATH cites no authority for its assertion that a purported chill from non-restrictions on speech or from "the threat of" hypothetical future restrictions suffices to state a claim. *Id.*

*Second*, the complaint depends on the incorrect premise that government officials cannot express viewpoints contrary to those of WPATH. *See* Mot. at 35 n.3. WPATH's opposition only underscores that error, attempting to state a claim by pointing to purportedly "one-sided" views expressed by the President and by FTC officials. Opp. at 43–44. Government officials need not maintain "viewpoint-neutrality" in their comments, *Matal v. Tam*, 582 U.S. 218, 234 (2017), and

it is error to infer "bad faith from political advocacy statements made by government officials," *QueerDoc*, 2026 WL 2359440, at *14; *see Mullin v. Doe*, 146 S. Ct. 2121, 2138–39 (2026).

**2. The Complaint Does Not State a First Amendment Claim for Violation of WPATH's Speech or Association Rights (Count III).**

WPATH's First Amendment association claim also fails as a matter of law. Mot. at 36–37. As we explained, WPATH cannot allege an infringement of its association rights "because neither the CID nor the investigation 'impose[d] penalties' on or 'withh[e]ld benefits' from WPATH, compelled disclosure of WPATH's membership in an anonymous group, or 'interfere[d] with' WPATH's 'internal organization or affairs.'" Mot. at 36 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622–23 (1984)). WPATH does not argue otherwise.

Instead, it points to a purported "threat of ... compelled disclosure." Opp. at 45–46. But we've already explained that any claims relying on such a threat are "fatally premature." Mot. at 37. WPATH offers no response other than to *concede* that its Fourth Amendment claim—which also rested on "compel[led] disclosure," Dkt.1 ¶ 151—"is not ripe" and should be dismissed, Opp. at 39 n.1. The same is true of WPATH's association claim.

Because WPATH has not suffered any infringement of its association rights, its argument that the FTC lacks a sufficient interest in investigating potential violations of the FTC Act is irrelevant. Opp. at 46. It's also wrong, as WPATH again misconstrues the scope of the FTC's investigatory jurisdiction. *See supra* at 9–10. Besides, such questions are "premature" in this case, which does not concern an enforcement action. *Texaco*, 555 F.2d at 879; *QueerDoc*, 2026 WL 2359440, at *11.

**D. WPATH's Request to Amend or Supplement Should Be Denied.**

As a last resort, WPATH asks for permission to amend or supplement its complaint. Opp. at 46–47. That request is both improper and futile.

If WPATH seeks relief from this Court, it must file a motion; it cannot piggyback on the FTC's motion. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); Fed. R. Civ. P. 15(d) (supplementation permitted only "[o]n motion"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1170 (6th Cir. 2022) (requesting leave to amend "in an opposition to a motion to dismiss ... does not constitute a motion within the contemplation of Rule 15(a)."); *see also Truesdale v. Dist. of Columbia*, 2022 WL 951379, at *3 n.2 (D.D.C. Mar. 30, 2022) (same).

WPATH's request also violates Local Rules 7(i) and 15.1, both of which require that a request to amend "be accompanied by ... the proposed pleading as amended." *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994) (affirming denial of leave to amend where plaintiff "failed to tender a proposed complaint"). This Court should not countenance WPATH's doubly improper request.

At any rate, WPATH's proposed additions are futile. Notably, WPATH could have amended the complaint as of right when it received the FTC's motion to dismiss, Fed. R. Civ. P. 15(a)(1)(B), but it opted not to do so. And this is no surprise. The only additional allegations WPATH proposes to make are either moot (because they pertain to the FTC's closed investigation) or irrelevant (because they pertain to the separate Texas action). Opp. at 46–47.

Finally, it is nonsensical for WPATH to suggest that any supplemental pleading should not trigger a new answer deadline because "all of the facts that would be alleged are already known to the FTC." Opp. at 47. Because WPATH violated the applicable rules and failed to submit a proposed supplemental pleading, there is currently no basis to assess whether the contemplated new allegations are facts at all, let alone facts that are known to the FTC.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss the complaint.

Dated: September 1, 2026

Respectfully submitted,

JONATHAN COHEN
*Acting Deputy Director*, Bureau of Consumer Protection
D.C. Bar No. 48344

R. COOPER VAUGHAN
*Senior Counsel to the Director*
Virginia Bar No. 92580

*/s/ Ethan D. Beck*
ETHAN D. BECK
*Counsel to the General Counsel*
D.C. Bar No. 90024619

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2110
ebeck@ftc.gov

*Attorneys for the Defendants*

OF COUNSEL:

LUCAS CROSLOW
*General Counsel*

ALEX POTAPOV
*Acting Principal Deputy General Counsel*

CHRISTOPHER MUFARRIGE
*Director*, Bureau of Consumer Protection

KATHERINE WHITE
*Principal Deputy Director*, Bureau of Consumer Protection